NO.: _____

IN THE COURT OF CRIMINAL APPEALS

FOR THE STATE OF TEXAS, IN AUSTIN

(PD-0238-11: and, WR-80, 739-01 & 02)

This document contains some pages that are of poor quality at the time of imaging.

*********************************************************

FROM THE SIXTH COURT OF APPEALS

FOR THE STATE OF TEXAS, IN TEXARKANA

(NO.(S): 06-09-00225-CR & PD-0238-11)

RECEIVED IN
COURT OF CRIMINAL APPEALS
MAR 17 2015
Abel Acosta, Clerk

*********************************************************

RE: NO.(S):  CR16,079 & (A/B)

IN THE 76th DISTRICT COURT

FOR TITUS COUNTY, TEXARKANA, TEXAS

*********************************************************

IN RE TIMOTHY LEE ROBINSON

RELATOR

*********************************************************

RELATOR'S ORIGINAL PETITION FOR WRIT OF MANDAMUS

TO THE HONORABLE COURT OF CRIMINAL APPEALS:

RELATOR files this ORIGINAL PETITION FOR WRIT OF MANDAMUS for the ambiguous MEMORANDUM OPINION with MANDATE ISSUANCE by the SIXTH COURT OF APPEALS, reaching a decision so arbitrary and unreasonable to amount to a clear and prejudicial error of law and it clearly fails to correctly analyze or apply the law (See, In Re Kimberly – Clark Corp., 228 SW3d 480, 484 (Tex App – Dallas 2007), totally ignoring this COURT OF CRIMINAL APPEALS' PETITION FOR DISCRETIONARY REVIEW OPINION FOR REMAND, NO. PD-0238-11, and in part through a dereliction of duty from both: RETAINED ATTORNEY CHARLES VAN CLEEF under contract to complete the entire legal process but allowed, by the 76th DISTRICT COURT, to withdraw sometime in JULY / AUGUST 2011 without answering and/or advising RELATOR of the STATE'S PETITION FOR DISCRETIONARY REVIEW submitted to attorney of record by U.S. mail FEBRUARY 14, 2011; and, sometime in SEPTEMBER / OCTOBER 2011, the 76th DISTRICT COURT'S APPOINTMENT of ATTORNEY CHARLES MAC COBB who failed to FILE ANY FORM OF ANSWER TO "APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND" delivered VIA HAND DELIVERY as certified NOVEMBER 19, 2012, clearly failing to analyze and apply law.

RELATOR further files this ORIGINAL PETITION FOR WRIT OF MANDAMUS for the clear abuse of discretion by: 76th DISTRICT COURT'S denial to reopen SUPPRESSION HEARING (See Black v STATE OF TEXAS, 362 SW3d 626 (Tex Crim App 2012)); and both, the STATE PROSECUTOR'S

1

and 76th DISTRICT COURT'S failure to answer RELATOR'S 11.07 APPLICATION by complying with TEXAS CODE CRIMINAL PROCEDURES (TCCP, herein) ART. 11.07, Sec.3 (c) & (d), addressing grounds on ATTORNEY'S OF RECORD denial to effective assistance guaranteed under the SIXTH AMENDMENT of the UNITED STATES CONSTITUTION, ART. I, § 10 of the TEXAS CONSTITUTION, and ART. 1.051, Sec. d (1 - 4) of TCCP, INTER - ALIA, arbitrarily unreasonable, a clear and prejudicial error of law.

RELATOR in support of the aforementioned clear abuse of discretion for said WRIT ISSUANCE would show the following:

I

RELATOR in the aforementioned ABUSES OF DISCRETION has no adequate remedy at law, nor appeal process (See, In Re Kimberly Clark, supra, Id..), therefore it is incumbent for this COURT OF CRIMINAL APPEALS to impose ORIGINAL JURISDICTION in this cause.

II

RELEVANT FACTS REVISITED

RELATOR, on AUGUST 25, 2008, upon DETECTIVE CESAR MUNOZ receiving an anonymous tip that RELATOR was coming home from DALLAS with a large amount of drugs, was subjected to an incomprehensible traffic stop for alleged failure to apply a turn signal where NINTH STREET ends and "MERGES" into MARGARET STREET. However, there was "NO TRAFFIC TICKET OR CITATION ISSUED FOR SAID VIOLATION."

DETECTIVE MUNOZ, a TRAINED NARCOTICS OFFICER, while in his personal vehicle(unmarked vehicle, i.e., NO OVERHEAD LIGHTS, NO SIREN, NO POLICE DECALS, etc.), in an assumed attempt to make the alleged traffic stop, follows RELATOR to the driveway of a residence at 511 MARGARET STREET, MT. PLEASANT, TEXAS where OFFICER SIMON PORTER moments later had arrived with RELATOR handcuffed and in custody being detained by DETECTIVE MUNOZ who had:

1) removed RELATOR at gunpoint from drivers side of the vehicle and is placed into custody and detained with handcuffs for an assumed UNCOMPLIANT BEHAVIOR, then kept at a distance from the vehicle on the drivers side, evidenced through OFFICER PORTER'S "DASH CAMERA VIDEO" entered into evidence at trial, with RELATOR "NOWHERE IN SIGHT;" (MUNOZ'S PERSONAL VEHICLE also caught on the video evidencing NO OVERHEAD LIGHTS, NO POLICE DECALS, etc., see STATE'S EXHIBIT 3, DVD).

Upon arrival of OFFICER PORTER and assisting officers, the following transpires:

2) RELATOR handcuffed already is detained and questioned by OFFICER PORTER per orders of DETECTIVE MUNOZ, while MUNOZ has assisting officers remove passengers;

## II

RELEVANT FACTS REVISITED

3) RELATOR'S passengers – his brother and brother's girlfriend – are removed from the passengers side of the vehicle, handcuffed and searched, remaining in the passenger area detained in custody;

4) WITHOUT PROBABLE CAUSE OR WARRANT TO SEARCH OR ARREST, DETECTIVE MUNOZ obstinately assumes to obtain PROBABLE CAUSE TO SEARCH through the mulish accusation of smelling marijuana and observing paraphernalia in PLAIN VIEW, HOWEVER, NOTHING WAS CONFISCATED, NOR PRODUCED AT ANY TIME FOR CONFIRMATION OF SAID PROBABLE CAUSE;

5) MUNOZ continues his claim for a "LAWFUL SEARCH," claiming to have ask, and was granted consent to search the vehicle, PRODUCING, NO SIGNED CONSENT TO SEARCH FORMS;

6) RELATOR has continually, from time of placement of handcuffs to detain in custody, remained at a distance from the vehicle on the drivers side, with the passengers handcuffed detained in custody on the passengers side of the vehicle, now, DETECTIVE MUNOZ assisted by OFFICER PORTER (BOTH, NARCOTICS OFFICERS), make an 11 minute search of the vehicle, yielding NOTHING, NOT EVEN MARIJUANA OR ASSUMED PARAPHERNALIA (EVIDENT FROM OFFICER PORTER'S DASH CAMERA VIDEO, ENTERED AT TRIAL);

7) NO ONE, ASSISTING OFFICER'S, ESPECIALLY, DETECTIVE MUNOZ and OFFICER PORTER, TRAINED NARCOTIC OFFICER'S, "SEARCHING FOR 'ANY' CONTRABAND NOTICES A 'GALLON – SIZED," CLEAR BAGGIE OF CRACK COCAINE" on the ground in the morning light – on the passengers side of the car, the other side of the car from where RELATOR had been hand cuffed detained in custody several feet from the drivers side since the inception (off the video produced at trial before, during, and after the search) – until after an 11 minute search yielding nothing, coincidently, "AT THE LAST MINUTE OFFICER MUNOZ FINDS AND PRODUCES THIS ASSUMED EVIDENCE;"

8) NO ONE, AT ANY TIME – not officers, passengers, tipsters, nor anyone else – saw RELATOR IN ACTUAL CARE CUSTODY, CONTROL, NOR HAS THERE BEEN PRODUCED EVIDENCE TO RELATOR'S PERSONAL KNOWLEDGE OF ANY PARAPHERNALIA / CONTRABAND, NOR WAS THE BAGGIE FINGERPRINTED TO THE KNOWLEDGE OF EVIDENCE PRESENTED AT TRIAL;

9) RELATOR is arrested without warrant under an assumed PROBABLE CAUSE accusation for the SMELL OF MARIJUANA AND PLAIN VIEW PARAPHERNALIA, PRODUCING NO EVIDENCE THEREOF, after which MUNOZ claims to have requested and was granted CONSENT TO SEARCH, and again, PRODUCES NO EVIDENCE OF A "CONSENT TO SEARCH FORM SIGNED BY RELATOR. However, RELATOR ARRESTED and PASSENGERS KEPT IN DETAINED CUSTODY; with all transported for further questioning;

10) OFFICER PORTER, during transport, confirmed to RELATOR that Lakeshia Williams, the front passenger, detained on the passenger side of vehicle confessed drugs are hers;

II

RELEVANT FACTS REVISITED

On SEPTEMBER 15, 2009, the trial court holds a SUPPRESSION HEARING, with the STATE introducing "ONLY ONE WITNESS," DETECTIVE CESAR MUNOZ, leaving the question as to why OFFICER PORTER is not also called, who gave his opinion as to whether the "ENDING OF NINTH STREET AND THE BEGINING OF MARGARET STREET LAWFULLY QUALIFY AS AN INTERSECTION REQUIRING USE OF A TURN-SIGNAL." (See, NINTH STREET / MARGARET STREET / MUNOZ POSITION, DIAGRAM ATTACHED; see also, CITY MAP, introduced by DEFENSE ATTORNEY, REPORTER'S RECORD, volume 5, EXHIBIT DX -1).

1) MUNOZ assumedly observes RELATOR "TURN" the vehicle he was driving from NINTH STREET that continues as MARGARET STREET and failed to use a turn signal;

2) It is "MUNOZ'S BELIEF THAT NINTH STREET ENDING INTO MARGARET STREET BEGINING IS AN INTERSECTION," thereby, based on belief it is an assumed traffic violation to drive one's vehicle from NINTH STREET to MARGARET STREET without signaling the turn;

3) Based on "MUNOZ'S BELIEF THAT NINTH STREET ENDING INTO MARGARET STREET BEGINING IS AN INTERSECTION" and failing to use a turn signal to "TURN FROM NINTH STREET TO MARGARET STREET" is an assumed violation of law, WHILE DRIVING HIS PERSONAL VEHICLE, MUNOZ, "HAVING NO OVERHEAD LIGHTS, POLICE DECALS, QUESTIONING SIREN EQUIPTED, ETC.," assumedly makes an attempt to make a TRAFFIC STOP on RELATOR for the assumed violation of law (EVIDENCED PERSONAL VEHICLE OF MUNOZ FROM DASH CAMERA OF OFFICER PORTER);

4) MUNOZ in his PERSONAL VEHICLE follows RELATOR into a driveway at 511 MARGARET, MT. PLEASANT, TEXAS, moments before the arrival of OFFICER PORTER in his DEPARTMENT VEHICLE "EQUIPTED WITH AUDIO / VIDEO CAPABILITY," where MUNOZ had already removed RELATOR from the vehicle at gunpoint and had handcuffed and detained in custody on the drivers side, evidenced from OFFICER PORTER'S AUDIO / VIDEO RECORDING UPON ARRIVAL WITH RELATOR "NOWHERE IN THE FRAMES OF THE RECORDING, and NO REPEATED COMMANDS FROM OFFICER PORTER UPON ARRIVAL," evidenced from AUDIO RECORDING OF OFFICER PORTER'S RECORDING EQUIPTMENT introduced at trial;

5) Upon entering the driveway of the residence, Lakeshia Williams, the front passenger, had got out on the passenger's side of the vehicle;

6) With the arrival of OFFICER PORTER, MUNOZ has OFFICER PORTER take control of RELATOR, "IMMEDIATELY CLAIMING TO SMELL MARIJUANA," yet at trial testifies RELATOR DID NOT SEEM TO BE UNDER THE INFLUENCE OF ANYTHING, "CLAIMS TO OBSERVE DRUG PARAPHERNALIA IN PLAIN VIEW," but produced "NO EVIDENCE OF EITHER," and "CLAIMS THIS ASSUMED SMELL AND PLAIN VIEW OBSERVATION GIVES HIM PROBABLE CAUSE TO SEARCH, BUT ASSUMEDLY ASK FOR, AND ASSUMEDLY GIVEN PERMISSION TO SEARCH;"(PRODUCED NO SIGNED CONSENT FORM TO SEARCH).

## II

### RELEVANT FACTS REVISITED

On SEPTEMBER 15, 2009, the trial court holds a SUPPRESSION HEARING, (CONTINUED):

7) Tracy Harris, in the back seat on the passengers side was removed from the vehicle prior to the search, and remained on the passengers side of the vehicle (evidenced from TRIAL VIDEO PRODUCED);

8) MUNOZ then searched the vehicle for 11 minutes and found nothing in the vehicle, however, after search of the vehicle turned up NO CONTRABAND, NOT EVEN MARIJUANA OR PARAPHERNALIA IN PLAIN VIEW, MUNOZ NOW CLAIMS TO FIND A GALLON - SIZED BAGGIE FULL OF CRACK COCAINE UNDER THE VEHICLE ON THE "PASSENGERS SIDE" WITH RELATOR FROM THE CONTINUATION OF THE STOP HAS BEEN HANDCUFFED DETAINED IN CUSTODY ON THE "DRIVERS SIDE" OF THE VEHICLE AS EVIDENT "RELATOR IS NOWHERE IN THE TRIAL INTRODUCED VIDEO;"

9) MUNOZ now ARREST AND HAS RELATOR TRANSPORTED BY OFFICER PORTER, WHO HAD CONFIDED WITH RELATOR THAT LAKESHIA WILLIAMS HAD CONFESSED TO THE DRUGS BEING HERS, and she along with Tracy Harris were being transported as well for further questioning;

10) MUNOZ "NEVER ISSUED A TRAFFIC TICKET / CITATION FOR THE ASSUMED TRAFFIC VIOLATION, SPECIFICALLY, MUNOZ'S BELIEF THAT THE NINTH STREET ENDING INTO MARGARET STREET BEGINING IS AN INTERSECTION AND FAILING TO USE A TURN SIGNAL TO 'TURN' FROM NINTH STREET TO MARGARET STREET IS A VIOLATION OF TRAFFIC LAW," thereby questions the "REASONABLENESS OF THE STOP TO SEARCH THE VEHICLE (See, KOTHE v STATE, 152 SW3d 54, 62 (TEX CRIM APP 2004));

11) MUNOZ claimed that the PROBABLE CAUSE TO SEARCH THE VEHICLE (in the absnece of consent) would have been the SMELL OF MARIJUANA. The information from the anonymous source was a factor for the stop to obtain a search. Therefore, MUNOZ acknowledged that there was no way to test the reliability or credibility of the anonymous informant except by finding contraband, and CLEARLY NO WAY OF FINDING CONTRABAND WITHOUT A SEARCH WARRANT OR PROBABLE CAUSE, EXCEPT TO MAKE A TRAFFIC STOP;

12) That concluded the testimony and the court determined "THAT PROBABLE CAUSE EXISTED FOR THE TRAFFIC STOP" and the RELATOR consented to the search of the vehicle. However, the court indicated it would prepare FINDINGS OF FACT AND CONCLUSION OF LAW IN THE CASE, BUT WAS NOT DONE UNTIL CASE ABATED BY THE COURT OF APPEALS.

The RELATOR was immediately arraigned; he pled not guilty. He pled true to the enhancement paragraph. All of the other, then pending, defense pretrial motions were granted. Trial presentation was scheduled to begin the next morning at 8;45 AM.

## II

### RELEVANT FACTS REVISITED

### THE EVIDENCE AT TRIAL

The issue of the legality of the initial traffic stop was re-litigated during the RELATOR'S jury trial. The jury heard "THE RELEVANT FACTS REVISITED," listed herein at pages 2 - 5, inter-alia, and especially MUNOZ'S "INCONSISTENT STATEMENTS (TEX PEN CODE (TPC) § 37.06) WITH THE INTENT TO DECEIVE AND WITH KNOWLEDGE OF THE STATEMENTS MEANING HE MADE THE FALSE STATEMENT UNDER OATH (TPC § 37.02, PERJURY), and THE FALSE STATEMENT WAS MADE DURING AND IN CONNECTION WITH AN OFFICIAL PROCEEDING, SPECIFICALLY THIS TRIAL, AND WAS MATERIAL. THE STATEMENT WAS MATERIAL, REGARDLESS OF THE ADMISSIBILITY OF THE STATEMENT UNDER THE RULES OF EVIDENCE, AS IT HAS AFFECTED THE COURSE AND OUTCOME OF THESE OFFICIAL PROCEEDINGS, SPECIFICALLY, PRE - TRIAL SUPPRESSION HEARING, JURY TRIAL, COURT OF APPEALS - APPEAL, PETITION FOR DISCRETIONARY REVIEW - COURT OF CRIMINAL APPEALS, AND COURT OF APPEALS ON REMAND(TPC § 37.03, AGGRAVATED PERJURY; see also, TPC § 37.04, MATERIALITY). WHETHER A STATEMENT IS MATERIAL IN A GIVEN FACTUAL SITUATION IS A QUESTION OF LAW (ID., AT TPC § 37.04)."

MORE SPECIFICALLY:

### THE SUPPRESSION HEARING TESTIMONY

MUNOZ, under oath, testifies RELATOR "DOES NOT SIGNAL A TURN AT THE ALLEGED INTERSECTION" where NINTH STREET "ENDS INTO" MARGARET STREET AS HE CONTINUES TO FOLLOW THE "CURVE INTO MARGARET STREET WHERE NINTH STREET ENDS," thereby, "ONE STREET 'MERGES' INTO THE OTHER FROM EITHER DIRECTION (See, NINTH STREET / MARGARET STREET / MUNOZ POSITION, DIAGRAM ATTACHED; see also, "COMPARE," CITY MAP, introduced by DEFENSE ATTORNEY, REPORTER'S RECORD, volume 5, EXHIBIT DX - 1)."

### RE - LITIGATED SUPPRESSION TESTIMONY AT TRIAL

MUNOZ, under oath, testifies and admits NINTH STREET and MARGARET DRIVE "MERGE" at THEIR "INTERSECTION." When asked whether there were "ANY TRAFFIC SIGNS OF ANY KIND" at "THE INTERSECTION," MUNOZ responded, "I don't believe. It's just a -- it's 'AN INTERSECTION.'"

The SIXTH COURT OF APPEALS, CAUSE NO. 06-09-00225-CR, MEMORANDUM OPINION, concedes "The record also contains evidence that the traffic from NINTH STREET 'DOES MERGE ONTO (SHOULD STATE "INTO") MARGARET DRIVE.' The defense introduced a map which suggests 'NINTH STREET MERGES WITH MARGARET DRIVE.' The defense exhibit appears to be photocopied from a commercial atlas (See, SIXTH COURT OF APPEALS, MEMORANDUM OPINION, at page 10, Id..)."

6

## II

### RELEVANT FACTS REVISITED

### CONFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT

"At the SUPPRESSION HEARING, the defense showed MUNOZ a map, which MUNOZ described as incorrect. When asked, '[D]oes NINTH STREET CURVE INTO MARGARET DRIVE ?' MUNOZ responded, 'YES, IT DOES, but the way that indicates is incorrect to the actual way the street is. That's incorrect.' MUNOZ admitted THERE WERE NOT ANY TRAFFIC SIGNS AT 'THE INTERSECTION,' BUT TESTIFIED, '[Ninth Street] DOESN'T CONTINUE ONTO MARGARET though there is 'AN INTERSECTION.'"(MEMORANDUM OPINION, supra, pg. 10, Id..).

"At TRIAL, ...The defense introduced a map which suggests NINTH STREET MERGES WITH MARGARET DRIVE... According to MUNOZ, the defense exhibit was incorrect '[b]cause in [the defense exhibit], EAST EIGHTH does not run into MARGARET, and then you've got EAST NINTH, and they run parallel to each other.'" (Id.).

APPELLANT'S BRIEF is confusing in that the "REPORTER'S RECORD (RR, herein)" is mentioned at the beginning of "B. SUPPRESSION HEARING" and "C. TRIAL TESTIMONY" in the first paragraphs, pages 10 & 13, and VOLUME NUMBER, thereafter listing "ONLY PAGE NUMBER WITHOUT A LINE NUMBER (P, FOR PAGE NUMBER, herein, for comparison).

APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND, however, lists "REPORTER'S RECORD (RR)" throughout, listing VOLUME NUMBER (V), LINE NUMBER (L), and, PAGE NUMBER (P).

APPELLANT'S [RELATOR'S] BRIEF CLEARLY REVEALS THE STATE [APPELLEE] upon presentation to the jury removed the alleged evidence from the [STATE'S EXHIBIT 2] ENVELOPE "TO SHOW TO THE JURY ALONG WITH THE ALLEGED WRITTEN STATEMENT." At this moment, defense attorney "MADE AN OBJECTION TO THE EVIDENCE, AND TO THE STATEMENT AS 'HEARSAY.'" **SPECIFICALLY:**

"Also, the State was once again allowed to place the alleged written statement of the appellant **AND EVIDENCE DESPITE DEFENSE COUNSEL'S OBJECTION (HEARSAY);** the statement was read for the jury. Ibid. at (RR, V 3, P) 23, 24 - 25. **THE ENVELOPE** in which the **SUSPECTED COCAINE WAS PLACED (STATE'S EXHIBIT 2)** and a DVD (State's Exhibit 3) **WERE ALSO ADMITTED,** without objection. Ibid. at (RR, V 3, P) 28 - 29.(APPELLANT'S BRIEF, Id. at C. TRIAL TESTIMONY, page 13).

"The following witness was Detective Ray Yokel, a **'CHAIN OF CUSTODY WITNESS.'** Ibid. at (RR, V 3, P) 105.

"The next witness was Karen Shumate, A Texas Department of Public Safety Crime Lab employee who **'TESTIFIED ABOUT THE NATURE OF THE CONTRABAND.'**Ibid. at (RR, V 3, P) 109. She **'TESTIFIED THAT THE CONTRABAND WEIGHED 294.64 g.'"** Ibid. at (RR, V 3, P) 112. (APPELLANT'S BRIEF, NO. 06-09-00225-CR, supra, Id. at C. TRIAL TESTIMONY, page 16).

RELEVANT FACTS REVISITED

CUNFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT

(CONTINUED)

### [STATE'S EXHIBIT 2]

STATE'S EXHIBIT 2 at the point of introduction into evidence was **"THE ENVELOPE"** that was introduced at the same time as STATE'S EXHIBIT 3 **"THE DVD"** without objection. (APPELLANT'S BRIEF, supra, Id. at C. TRIAL TESTIMONY [RR, V 3, P 23, 24-25] pg. 13).

STATE'S EXHIBIT 2 **"THE ENVELOPE"**:the purpose of Detective Ray Yokel's testimony is to establish **"THE CHAIN OF CUSTODY"** through the sealing and initialing / coding of **"THE ENVELOPE"** to be sent to the CRIME LAB.

STATE'S EXHIBIT 2 **"THE ENVELOPE"**:the purpose of Karen Shumate's testimony is to establish the procedures in **"THE CHAIN OF CUSTODY UPON RECEIPT OF 'THE ENVELOPE'"** with the ways and means upon which she checks the sealing, opening, and resealing of **"THE ENVELOPE."** She also **"TESTIFIED ABOUT THE NATURE OF THE CONTRABAND,"** and **"THAT THE CONTRABAND WEIGHED 294.64 g.** (APPELLANT'S BRIEF, supra, Id. at C. TRIAL TESTIMONY [RR, V 3, P 105, 109, 112] pg. 16).

DEFENSE ATTORNEY'S, was precisely, **"NO OBJECTION TO STATE'S EXHIBIT 2, 'THE ENVELOPE' AS PERTAINING TO CHAIN OF CUSTODY, NATURE OF THE CONTRABAND, AND WEIGHT OF CONTRABAND,"** Id., supra.

HOWEVER, in a DELUSIONAL MISCHARATERIZATION OF THE **"NO OBJECTION STATED AT THIS POINT IN THE TRIAL,"** the STATE INTENTIONALLY MISLEADS THE COURT OF APPEALS INTO BELIEVING RELATOR HAS WAIVED ANY APPELLATE REVIEW OF HIS MOTION TO SUPPRESS BECAUSE OF THE STATE'S **"MISREPRESENTATION OF THE AFOREMENTIONED TESTIMONY AS THE STATE'S INTRODUCTION OF THE EVIDENCE, WHEN IN FACT, AS AFOREMENTIONED, THE STATE'S PRESENTATION IS 'THE CHAIN OF CUSTODY PROCEDURES, THE TESTIMONY ABOUT THE NATURE OF THE CONTRABAND, AND THE CONTRABANDS WEIGHT, ALL OF WHICH DEFENSE ATTORNEY HAS NO OBJECTION.'"**

APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND, NO. 06-09-00225-CR, Id. at pg. 7, THE STATE CATEGORIZES IT THIS WAY:

"Subsequently, the State offered as State's Exhibit 2 the controlled substance, the subject of Robinson's objection in his motion to suppress. RR V 3, P 110, L 22 - P 112, L 8. With the benefit of Munoz's characterization of the intersection, counsel for Robinson asserted, "No objection[,]" to the admission of State's Exhibit 2. RR V 3 P 112, L 10. The evidence was received. RR V 3, P 112, L 11. At that point Robinson waived any complaint about the admissibility of the controlled substance."

**STATE'S EXHIBIT 2 AT THIS POINT "IS THE ENVELOPE BEING ADMITTED, CHAIN OF CUSTODY."**

II

REVELANT FACTS REVISITED

CONFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT

(CONTINUED)

**[MISCHARACTERIZATION OF INTERSECTION DEFINITION]**

DETECTIVE CESAR MUNOZ and OFFICER SIMON RAY PORTER take an oath upon entering the MOUNT PLEASANT POLICE DEPARTMENT to uphold the laws and ordinances of MOUNT PLEASANT, TEXAS as well as the STATE OF TEXAS. Therefore, if any person is in violation of the laws and/or ordinances of MOUNT PLEASANT and/or THE STATE OF TEXAS these officer's have a duty and obligation to uphold said laws and/or ordinances. It would thereby, be an unlawful act for the DETECTIVE and/or OFFICER'S to ARREST SOMEONE IN VIOLATION OF SAID LAWS AND/OR ORDINANCES.

HOWEVER, THIS IS PRECISELY WHAT HAS HAPPENED IN THIS CASE THROUGH THE MISCHARACTER-IZATION OF THE TURN WHERE NINTH STREET **"ENDS TURNING INTO"** MARGARET DRIVE AND **"BEING AN INTERSECTION"** in direct violation to, "CITY CODES OF MOUNT PLEASANT, TEXAS CODE OF ORDINANCES, SECTIONS 70.01 AND 71.030  (APPENDIX, TAB A., Id., attached hereto.), **THEREBY, THE EVIDENCE OBTAINED AS A RESULT OF THE ILLEGAL DETENTION IS TAINTED BY THE UNLAWFUL POLICE ACTIONS AND IS TRADITIONALLY BARRED AS "FRUITS OF THE POISONOUS TREE."** SEE, SEGURA v UNITED STATES, 468 U.S. 796, 804 (1984); WONG SUN v UNITED STATES, 371 U.S. 471 (1963). The DETENTION was ILLEGAL, and there is a clear casual connection between the detention and the discovery of the drugs. The State has not alleged that the discovery of the drugs or RELATOR'S subsequent confession was sufficiently attenuated from the illegal detention to purge the taint of the illegal detention. BROWN v ILLINIOS, 422 U.S. 590 (1975); BELL v STATE, 724 SW 3d 780 ( TEX CRIM APP 1986).

First, for clarity, the characterization of NINTH STREET "ENDING AND TURNING INTO" MARGARET DRIVE and "BEING AN INTERSECTION" looking like a "Y" or even a "U" is a complete and utterly misconceived characterization of the "STREETS."

The "STREETS" are better characterized as a person standing in a "BOOT." (See, NINTH STREET / MARGARET DRIVE / MUNOZ POSITION, DIAGRAM ATTACHED; see also, CITY MAP, introduced by DEFENSE ATTORNEY, REPORTER'S RECORD, VOLUME 5, EXHIBIT DX - 1).

The MENTAL PICTURE is to illustrate the "CURVE / MERGE" of NINTH STREET'S "END INTO" MARGARET STREET'S "BEGINNING." SPECIFICALLY, as with a "BOOT" starting NINTH STREET at YOUR TOES coming across the top of your foot to the ankle, there being the end of NINTH STREET, curving up your leg, there being the beginning of MARGARET DRIVE, and this continues to your crotch, as MARGARET DRIVE. Of course, at your ankle you could turn, thereby, going into the heal of the "BOOT," or a DEAD END PORTION OF MARGARET DRIVE.

II

RELEVANT FACTS REVISITED

CONFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT

(CONTINUED)

**[MISCHARACTERIZATION OF INTERSECTION DEFINITION]**

Second, keeping the MENTAL PICTURE IN MIND, NINTH STREET and MARGARET DRIVE are a two way street, two lanes, one lane going one direction, the other lane going the opposite direction. Clearly, with RELATOR coming down NINTH STREET, from the "TOE OF THE BOOT ACROSS THE TOP OF THE FOOT TOWARD THE ANKLE," in the single lane that as you make "THE CURVE TURNING," as does the ankle heading up the leg toward the crotch, "INTO MARGARET DRIVE WHERE THERE IS 'NO INTENTION TO TURN THE VEHICLE FROM THE DIRECT COURSE OF THE STREET, CHANGE LANES, START FROM A PARKED POSITION (TEX. TRANSP. CODE(S) §§ 545.104(a), 545.106; MAHAFFEY v STATE, 316 SW 3d 633, 639 (TEX CRIM APP 2010)), NOR, IS THERE ANY OTHER TRAFFIC BEING AFFECTED BY SUCH MOVEMENT, OR CONFLICT WITH ANY OTHER VEHICLES TRAVELING UPON DIFFERENT STREETS JOINING AT ANY OTHER ANGLE (CITY OF MOUNT PLEASANT, TEXAS, CODE OF ORDINANCES §§ 70.01, at "INTERSECTION;" 71.030, at "STOPPING AND TURNING SIGNALS;" attached hereto, APPENDIX, TAB A).'"

Finally, in **'MUNOZ'S OPINION"** a traffic infraction had occurred when RELATOR, traveling from NINTH STREET to MARGARET DRIVE, **"CONTINUED TO THE RIGHT WITHOUT TURNING HIS TURN SIGNAL ON[,]"** WHICH THE RELATOR HAD **"A DUTY"** TO DO AT THE **"INTERSECTION."** EVEN THOUGH, **"MUNOZ ACKNOWLEDGED"** THAT THERE ARE **"NO TRAFFIC SIGNALS OR SIGNS AT 'THIS INTERSECTION;'"** however, MUNOZ did not waver from his position that, **"ALTHOUGH THE FLOW OF TRAFFIC AT THIS JUNCTURE 'COULD BE CHARACTERIZED AS SIMPLY FOLLOWING' THE ROADWAY AROUND ONTO MARGARET DRIVE, TO 'TURN' OR 'CONTINUE' ONTO MARGARET DRIVE FROM NINTH STREET WITHOUT A SIGNAL 'IS A VIOLATION OF THE LAW.'"** (COURT OF CRIMINAL APPEALS, Slip. Op., PD-0238-11; see also, CITY OF MOUNT PLEASANT, TEXAS, CODE OF ORDINANCES §§ 70.01, at INTERSECTION; and 71.030, at STOPPING and TURNING SIGNALS, APPENDIX TAB A). MUNOZ, AS AN OFFICER OF THE MOUNT PLEASANT, TEXAS, POLICE DEPARTMENT, **"WAS OF THE OPINION THAT A TRAFFIC INFRACTION HAD OCCURRED IT WAS HIS DUTY AND/OR OBLIGATION TO ESTABLISH THE ENFORCEMENT OF ANY VIOLATION, EITHER BY THE ISSUANCE OF A CITATION AND/OR TRAFFIC TICKET, THEREBY, ESTABLISHING THAT AN ACTUAL INFRACTION HAS OCCURRED."**

Otherwise, as RELATOR'S **MOTION TO SUPPRESS** argued, inter-alia, that the traffic stop, purportedly for the failure to signal a turn **"AT AN INTERSECTION, WAS A PRETEXT TO JUSTIFY AN ONGOING INVESTIGATION OF THE RELATOR."**

The UNITED STATES SUPREME COURT has repeatedly held that the unsupported assertions or beliefs of an officer does not satisfy the PROBABLE CAUSE REQUIREMENT. SEE, ILLINOIS v GATES, 462 US 213,571, 76 L Ed 2d 527, 103 S Ct 2317, reh den (US) 77 L Ed 2d 1453,

## II

RELEVANT FACTS REVISITED

CONFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT

(CONTINUED)

**[MISCHARACTERIZATION OF INTERSECTION DEFINITION]**

104 S Ct 33, orig cites omitted).

The two MOUNT PLEASANT POLICE OFFICER'S, DETECTIVE CESAR MUNOZ and OFFICER SIMON RAY PORTER, had no basis in experience for confidence in the reliability of the anonymous caller at 6:00 a.m.; one has to assume he has never before given information. And yet they acted upon this information. The UNITED STATES SUPREME COURT has held that identification of the suspect **BY A RELIABLE INFORMANT** may constitute PROBABLE CAUSE for ARREST where the information given is sufficiently accurate to lead officers directly to the suspect. DRAPER v UNITED STATES, 358 US 307.

It is conceded that the officers made **NO ATTEMPT** to obtain **A WARRANT** for RELATOR'S **ARREST.** The simple fact is that on the sparse information by **AN ANONYMOUS INFORMANT** at the officers command, **NO ARREST WARRANT** could have been **ISSUED** consistently with Rules 3 and 4 of the FEDERAL RULES OF CRIMINAL PROCEDURES, NOR, TEXAS CODE OF CRIMINAL PROCEDURES CHAPTERS 15 and 18. GIORDENELLO v UNITED STATES, 357 US 480, 486.

The UNITED STATES SUPREME COURT noted in GIORDENELLO that Rules 3 and 4, just as TEXAS CODE OF CRIMINAL PROCEDURES CHAPTERS 15 and 18, provide that an ARREST WARRANT SHALL ISSUE **ONLY** upon a SWORN COMPLAINT setting forth "the essential facts constituting the offense charged," and showing "that there IS **PROBABLE CAUSE TO BELIEVE** that an offense has been commited and **THAT THE DEFENDANT HAS COMMITTED IT....**"THE FOURTH AMENDMENT, from which the requirements of the RULES / CHAPTERS derive, provide that... no WARRANT SHALL ISSUE, but upon PROBABLE CAUSE, supported by Oath or Affirmation, and **PARTICULARLY DESCRIBING...** the persons or things to be seized. Id.

The ARREST WARRANT PROCEDURE serves to insure that the deliberate, impartial judgement OF A JUDICIAL OFFICER **WILL BE INTERPOSED** between the citizen and the police, **TO ASSESS THE WEIGHT AND CREDIBILITY OF THE INFORMATION WHICH THE COMPLAINING OFFICER ADDUCES AS PROBABLE CAUSE.** Cf. JONES v UNITED STATES, 362 US 257, 270. **TO HOLD THAT AN OFFICER MAY ACT IN HIS OWN, UNCHECKED DISCRETION** UPON INFORMATION TOO **VAGUE** AND FROM TOO **UNTESTED A SOURCE** TO PERMIT A JUDICIAL OFFICER TO ACCEPT IT AS PROBABLE CAUSE FOR AN ARREST WARRANT WOULD SUBVERT THIS FUNDAMENTAL POLICY. Id.

A contrary holding here would mean that a vague suspicion could be **TRANSFORMED INTO PROBABLE CAUSE FOR ARREST** BY REASON OF AMBIGUOUS CONDUCT WHICH THE ARRESTING OFFICERS themselves have prevoked. Cf. HENRY v UNITED STATES, 361 US 98. That result would have

## II

RELEVANT FACTS REVISITED

CONFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT

(CONTINUED)

### [MISCHARACTERIZATION OF INTERSECTION DEFINITION]

the same essential vice as a proposition the UNITED STATES SUPREME COURT has consistently REJECTED --- THAT A SEARCH UNLAWFUL AT ITS INCEPTION MAY BE VALIDATED BY WHAT IT TURNS UP. BYARS v UNITED STATES, 273 US 28; UNITED STATES v Di Re, 322 US 581, 595.

In order to make effective the fundamental constitutional guarantees of sanctity of the home and inviolability of the person, BOYD v UNITED STATES, 116 US 616, the UNITED STATES SUPREME COURT held nearly a century ago that evidence seized during an unlawful search could not constitute proof against the victim of the search. WEEKS v UNITED STATES, 232 US 383. The EXCLUSIONARY PROHIBITION extends as well to the indirect as the direct products of such invasions. SILVERTHORNE LUMBER CO. v UNITED STATES, 251 US 385. MR. JUSTICE HOLMES, speaking for the COURT in that case, in holding that the government might not make use of information obtained during an unlawful search to subpeona from the victims the very documents illegally viewed, expressed succinctly the policy of the BROAD EXCLUSIONARY RULE:

> The essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the COURT, but that it shall not be used at all. Of course, this does not mean that the facts thus obtained become sacred and inaccessible. If knowledge of them is gained from an independent source, they may be proved like any others, but the knowledge gained by the GOVERNMENT'S OWN WRONG CANNOT BE USED by it in the way proposed. 251 US at 392.

The EXCLUSIONARY RULE has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion. It follows from the UNITED STATES SUPREME COURT holding in SILVERMAN v UNITED STATES, 365 US 505, that the FOURTH AMENDMENT may protect against the overhearing of verbal statements as well as against the more traditional seizure of "PAPERS AND EFFECTS." Similarly, testimony as to matters observed during an unlawful invasion has been excluded in orde to enforce the basic constitutional policies. MC GINNIS v UNITED STATES, 227 F 2d 598. Thus, verbal evidence which derives so immediately from an unlawful entry and/or unauthorized arrest as the officers' action in the present case is no less the "fruit" of official illegality than the more common tangible fruits of the unwarranted TRAFFIC

## II

## RELEVANT FACTS REVISITED

### CONFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT
(CONTINUED)

### [MISCHARACTERIZATION OF INTERSECTION DEFINITION]

STOP. See KAMISAR, ILLEGAL SEARCHES OR SEIZURES AND CONTEMPORANEOUS INCRIMINATING STATEMENTS: A Dialogue on a Neglected Area of Criminal Procedure, 1961 U. of Ill. Law Forum 78, 84 – 96. But compare MARGUIRE, Evidence of Guilt (1959) 187 _190. **NOR DO** the policies underlying the **EXCLUSIONARY RULE INVITE ANY LOGICAL DISTINCTION BETWEEN PHYSICAL AND VERBAL EVIDENCE.** Either in terms of deterring lawless conduct by federal (and/or MOUNT PLEASANT, TEXAS) officers, REA v UNITED STATES, 350 US 214, or of closing the doors of the (DISTRICT and/or) federal courts to any evidence unconstitutionally obtained, ELKINS v UNITED STATES, 364 US 206, the danger in relaxing the **EXCLUSIONARY RULES** would seem too great to warrant introducing such a distinction.

For reasons stated herein the **WRONGFUL MISCHARACTERIZATION OF INTERSECTION DEFINITION** by the COURT OF APPEALS in this case has allowed the ignorance of MOUNT PLEASANT'S own CITY CODE OF ORDINANCES, PRECISELY, GENERAL PROVISIONS, § 70.01 DEFINITIONS at **INTERSECTION** and § 71.030 **STOPPING AND TURNING** at (A) General (1), and by DEFINITION, **RELATOR WAS NOT IN VIOLATION OF SAID CITY CODES,** THEREFORE, THE **ARREST IS UNLAWFUL.** Id. at APPENDIX, TAB A.

### [THE ARREST / DETAINMENT AT GUNPOINT]

RELATOR, at gunpoint, had been handcuffed and questionably detained, to be shortly afterwards arrested by an assumed probable cause of a plain view "hallowed out cigar and marijuana residue," none of which **HAS EVER BEEN PRODUCED.** Under such circumstances, it is unreasonable to infer that RELATOR'S RESPONSES were sufficiently an act of free will to purge the primary taint of the UNLAWFUL TRAFFIC VIOLATION ARREST.
SEE, LORD DEVLIN'S comments:

> It is probable that, even today, when there is less ignorance about these matters
> than formerly, there is still a general belief that you must answer all questions
> put to you by a policeman, or at least that it will be the worse for you if you do
> not.
> DEVLIN, The Criminal Prosecution in England (1958) 32.
> Even in the absence of such oppressive circumstances, and where an EXCLUSIONARY
> RULE RESTS principally on NONCONSTITUTIONAL GROUNDS, **THE UNITED STATES SUPREME COURT**
> has sometimes refused to differentiate between voluntary and involuntary declarations.

## II

RELEVANT FACTS REVISITED

CONFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT
(CONTINUED)

**[THE ARREST / DETAINMENT AT GUNPOINT]**

See Hogan and Snee, The McNabb - Mallory Rule: Its Rises, Rationale and Rescue, 47 Geo.L.J. 1, 26 - 27 (1958). For illustrative situations where a voluntary act of the accused has been held insufficient to cure the otherwise unlawful acquisition of evidence, SEE BYNUM v UNITED STATES, 262 F2d 465 (holding inadmissable finger - prints made by defendant after unlawful arrest); UNITED STATES v WATSON, 189 F.SUPP. 766 (excluding narcotics voluntarily surrendered by accused in the course of an unauthorized search). The Ninth Circuit Court of Appeals has recognized in an analogous context, that "all declarations and statements under compulsion of the things so seized, are affected by the vice of primary illegality....." TAKAHASHI v UNITED STATES, 143 F2d 118, 122.

The prosecutor, and through the testimony of DETECTIVE CESAR MUNOZ, candidly told the trial court that "On August 25, 2008, after receiving **AN ANONYMOUS TIP** that ROBINSON was coming home from Dallas with a large amount of drugs, DETECTIVE CESAR MUNOZ set up surveillance near TIMOTHY ROBINSON'S home." RR V 2, P 14, L 20 - P 15, L 22; V 2, P 17, L 12 - 16; V 3, L 25 - P 32, L 5. Hence, this was not to be a case envisioned by the COURT'S where the **EXCLUSIONARY RULE** has no application because the Government learned of the evidence **"FROM AN ANONYMOUS INDEPENDANT SOURCE,"** SILVERTHORNE LUMBER CO. v UNITED STATES, 251 US 385, 392; nor is this a case in which the connection between the lawless conduct of the police and the discovery of the challenged evidence has "become so attentuated as to dissopate the taint." NARDONE v UNITED STATES, 308 US 338, 341. The COURT'S need not hold that all evidence is "FRUIT OF THE POISONOUS TREE" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by EXPLOITATION OF THAT ILLEGALITY or instead by means sufficiently distinguishable to be purged of the primary taint. MAGUIRE, EVIDENCE OF GUILT 221 (1959).

RELATOR thinks it is clear that the DRUGS were "COME AT BY THE EXPLOITATION OF THE TRAFFIC VIOLATION ILLEGALITY, NOT IN VIOLATION OF CITY CODES, NO EVIDENCE PRODUCED SUPPORTING PROBABLE CAUSE, NO TRAFFIC TICKET / CITATION TO SUPPORT TRAFFIC VIOLATION BELIEF OF OFFICER, NO CORROBORATION OF ANONYMOUS INFORMANT AND/OR CREDIBILITY, INTER - ALIA, and hence that they were not to be used against RELATOR.

## II

RELEVANT FACTS REVISITED

CONFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT

(CONTINUED)

### [THE ARREST / DETAINMENT AT GUNPOINT]

It is a settled principle of the administration of criminal justice in the federal courts that a conviction must rest upon firmer ground than the uncorroborated admission or confession of the accused.

Moreover, the UNITED STATES SUPREME COURT held in OPPER v UNITED STATES, 348 US 84, 92, that even where exculpatory statements are voluntary and thus clearly admissible, they require at least the degree of corroboration required of incriminating statements.

The UNITED STATES SUPREME COURT observed in SMITH v UNITED STATES, 348 US 147, 153, that the requirement of corroboration is rooted in a long history of judicial experience with confessions and in the realization that **SOUND LAW ENFORCEMENT REQUIRES POLICE INVESTIGATION WHICH EXTEND BEYOND THE WORDS OF THE ACCUSED.**

Again, in OPPER v UNITED STATES, supra, Id. at 89 - 90, the COURT elaborated the reasons for the requirement:

> In our country, the doubt persists that the zeal of the agencies of prosecution to protect the peace, the self - interest of the accomplice, the maliciousness of an enemy or the aberration or weakness of the accused under the strain of suspicion may tinge or warp the facts of the confession. Admissions, retold at a trial, are much like hearsay, that is statements not made at the pending trial. They had neither the compulsion of the oath nor the test of cross - examination.

In SMITH v UNITED STATES, supra, the UNITED STATES SUPREME COURT held it is true, that although "corroboration is necessary for all elements of the offense established by admissions alone," extrensic proof was sufficient which "merely fortifies the truth of the confession, without independently establishing the crime charged..." 348 US at 156.

Where a crime involves no tangible corpus delicti, the UNITED STATES SUPREME COURT has said that "the corroborative evidence must implicate the accused in order to show that a crime has been committed." 348 US at 154. Id.

Finally, the UNITED STATES SUPREME COURT has said that one uncorroborated admission by the accused does not, standing alone, corroborate an unverified confession. UNITED STATES v CALDERON, 348 US 160, 165. Id.

While probable cause must be based on more than mere suspicion, HENRY v UNITED STATES, 361 US 98, 104 (1959), it does not require proof sufficient to establish guilt.

## II

## RELEVANT FACTS REVISITED

### CONFUSIVE TESTIMONY FROM HISTORICAL STANDPOINT

### (CONTINUED)

#### [THE ARREST / DETAINMENT AT GUNPOINT]

DRAPER v UNITED STATES, 358 US 307, 312 (1959). The sole requirement heretofore has been that the knowledge in the hands of the officers at the time of the arrest must support a "man of reasonable caution in the belief" that the subject had committed narcotic offenses (see RELATORS CASE). CARROLL v UNITED STATES, 267 US 132, 162 (1925). The decision is faced initially not in the courtroom, but at the scene of arrest, where the totality of circumstances facing the officer is weighed against his split – second decision to make arrest.

In WONG SUN v UNITED STATES, 371 US 471, 497-98, 83 S Ct 407, 9 L Ed 2d 441 (1963), (As in RELATORS CASE), MR. JUSTICE DOUGLAS, concurred stating:

While I join the Court's opinion, I do so because nothing the Court holds is inconsistent with my belief that there having been time to get a warrant, probable cause alone could not have justified the arrest of petitioner (RELATOR) Toy (ROBINSON) without a warrant.

I adhere to the views I expressed in JONES v UNITED STATES, 362 US 257, 273. What I said in the JONES case had been earlier stated by MR. JUSTICE JACKSON, writing for the Court in JOHNSON v UNITED STATES, 333 US 10 (another narcotics case):

The point of the FOURTH AMENDMENT, which often is not grasped by zealous officers, is not that it denies law enforcement the support of usual inferences which reasonable men draw from evidence. Its protection consist in requiring that those inferences be drawn by a nuetral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the AMENDMENT to a nullity and leave people's homes (cars, effects, inter alia) only in the discretion of **police officers.** Pp. 13 – 14. And see CHAPMAN v UNITED STATES, 365 US 610, 615 – 616.

The Court finds it unnecessary to reach that constitutional question. I mention it only to reiterate that the **[83 S Ct 423]** JOHNSON case represents the law, and is in no way eroded by what we fail to decide today.

Clearly RELATOR'S case should be given this same standard of consideration.

## II

## RELEVANT FACTS REVISITED

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RELATOR does not, nor has he ever, had access to the record in this case. Therefore, the "RELEVANT FACTS REVISITED" are, from personal recollection, and/or paraphrased from the RENDITIONS of the COURT OF CRIMINAL APPEALS, SIXTH COURT OF APPEALS, APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND, APPELLEE'S PETITION FOR DISCRETIONARY REVIEW, APPELLEE'S ORIGINAL BRIEF ON APPEAL, and APPELLANT'S (RELATOR'S) ORIGINAL BRIEF ON APPEAL to the 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## III

## 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

## THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

A. The failure to grant the defense motion to suppress:

The record reveals DETECTIVE CESAR MUNOZ, and other STATE'S witnesses, expressed what amounts to nothing more than an anonymous phone call that RELATOR was coming into town with a large amount of drugs. Instead of going to a MAGISTRATE, as that would require PROBABLE CAUSE, TO OBTAIN AN ARREST WARRANT (TEX CODE CRIM PROC CHAPTER 15) or A SEARCH WARRANT (TEX CODE CRIM PROC CHAPTER 18), MUNOZ decides he will call a fellow officer (SIMON RAY PORTER) and they'll make an ARREST WITHOUT WARRANT (TEX CODE CRIM PROC CHAPTER 14) as they position themselves to await RELATOR'S arrival.

Coincidently, MUNOZ assumedly observes RELATOR drive down NINTH STREET that turns into MARGARET DRIVE, similar to any curve in a road, merely following the direct course of the road, without using a turn signal. This is MUNOZ'S **PRETEXT TO STOP AND ARREST**. However, this assumed offense is neither one classified as a FELONY, nor AGAINST THE PUBLIC PEACE (TEX CODE CRIM PROC ART. 14.01 (a); see also, ART. 14.03 (a)(1-5),(b-g)). Therefore, MUNOZ needs PROBABLE CAUSE for the initial SEARCH, which he says he smells marijuana; likely story with the exception, of course, he did not recover any marijuana, take any photographs of marijuana, conduct any testing on suspected marijuana, have any of the officers on the scene witness and/or testify to the smell or PLAIN VIEW discovery of said marijuana, nor did he take any steps that one would expect the trained narcotics officer to take, questioning NOT ONLY THE SEARCH BUT THE ARREST, as NO PROBABLE CAUSE FOR EITHER PRODUCED.

Finally, MUNOZ never cited nor ticketed RELATOR for a traffic violation as it was NO MORE THAN A MERE **PRETEXT TO SEARCH AND ARREST WITHOUT WARRANTS AND/OR PROBABLE CAUSE.**

## 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

### THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

A. The failure to grant the defense motion to suppress: (continued)

The STANDARD FOR DETERMINING WHETHER PROBABLE CAUSE EXIST **TO ARREST WITHOUT WARRANT** are at least as stringent as the standards required when a MAGISTRATE determines PROBABLE CAUSE before ISSUING A WARRANT. WILSON v STATE, 621 SW 2d 799 (TEX CRIM APP 1981). In order to ESTABLISH PROBABLE CAUSE **TO ARREST** the officer **MUST** demonstrate that he had enough information to warrant a man of reasonable caution in believing that a **FELONY HAD BEEN COMMITTED**. WILSON, supra.

MERE SUSPICION that a person arrested committed a crime is not sufficient to justify a **WARRANTLESS ARREST**. GILL v STATE, 134 Tx. Cr. R.363, 115 SW 2d 923 (App 1938).

When an ARREST IS MADE ILLEGALLY, evidence discovered pursuant to THAT ARREST **IS NOT ADMISSIBLE AT TRIAL**. WILSON, supra at 805.

AN ARREST FOR ONE CRIME **IS NOT** to be used as **A PRETEXT TO SEARCH FOR EVIDENCE OF ANOTHER**. BELL v STATE, 724 SW 2d 780 (TEX CRIM APP).

When **AN ARREST IS USED AS A PRETEXT. IT IS AN ILLEGAL ARREST AND EVIDENCE DISCOVERED AS A RESULT OF IT MAY NOT BE USED AT TRIAL**. UNITED STATES v LEFKOWITZ, ___US___, 52 S Ct 420, 76 L Ed 877 (1932).

This present case is but a type and shadow of the case PIERCE v STATE, 32 SW 3d 247 (TEX CRIM APP 2000) REVERSED AND REMANDED, EN BANC. **SPECIFICALLY:** Defendant was convicted in the County Criminal Court No. 10, Dallas County, Marshall Gandy, JUDGE, of DWI. She appealed. The Dallas County Court of Appeals affirmed, 1999 WL 956301. Defendant filed a PDR. The Court of Criminal Appeals, Womack, J., held that trial judges ruling on objection to the illegally obtained evidence was not rendered moot by guilty verdict from jury that was instructed to disregard illegally obtained evidence, abbrogating JOHNSON, 855 SW 2d 578.

The decision of a jury that is not trained in this difficult task is simply not reliable enough to provide DUE PROCESS OF LAW. Id. at 252.

A defendant likewise has a right, entirely apart from guilt and innocence, not to be convicted with illegally obtained evidence. This right is based in part on the 4th and 14th AMENDMENTS of the UNITED STATES CONSTITUTION, See MAPP v OHIO, 376 US 643, 81 S Ct 1684, 6 L Ed 2d 1081 (1961), and in part on Art. 38.23, a statute enacted by TEXAS LEGISLATURE and GOVERNOR in 1925 and reenacted 4 times thereafter. The decision of a Judge is necessary for a defendant to have a fair hearing and a reliable determination of the legality with which evidence was obtained. The jury is given a role to be "a backup protection against erroneous judicial rulings," that have admitted evidence,

III

## 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

## THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

A. The failure to grant the defense motion to suppress: (continued)

not to supplant them. Just as the task of determining the voluntariness of a confession without being distracted by its reliability is too difficult to be left to the jury alone, so is the task of determining the legality of the means by which evidence was obtained without being distracted by its probative value. Id., at 253.

Unlike this present case, although factually was required under simular circumstance, precisely; The Courts charge authorized the jury to convict if it found that: Deputy Miller (or DETECTIVE MUNOZ), "whether acting as an officer or as a person who was not an officer ('an other person,' in the terms of the statute), had placed the defendant under arrest without a warrant for an offense that was a felony **OR AGAINST THE PUBLIC PEACE.**" Id.

**"NO OFFENSE COMMITTED IN MILLER'S (or DETECTIVE MUNOZ'S) PRESENSE OR VIEW WAS A FELONY,"** and "**THE JURY WERE INSTRUCTED THAT TRAFFIC VIOLATIONS WERE NOT OFFENSES AGAINST THE PUBLIC PEACE, SO THE ONLY OFFENSE FOR WHICH MILLER (or MUNOZ WAS USE OF 'NO TURN SIGNAL') LEGALLY COULD HAVE ARRESTED THE APPLICANT WAS DRIVING WHILE INTOXICATED (MUNOZ COULD NOT HAVE LEGALLY ARRESTED RELATOR FOR NOT USING A TURN SIGNAL, TRAFFIC VIOLATION, IS NOT A FELONY NOR AGAINST THE PUBLIC PEACE, THEREFORE ILLEGAL / UNLAWFUL ARREST).** Id.

**"BEFORE HE STOPPED HER (HIM), MILLER (MUNOZ HAD MERE SUSPICION FROM UNKNOWN ANONYMOUS UNRELIABLE INFORMANT, ASSUMEDLY) HAD 'NO EVIDENCE' THAT APPLICANT WAS INTOXICATED.** Id.

"If, as the Court of Appeals said, '[b]y its verdict of guilt, thejury found MILLER (or any other person) LEGALLY STOPPED APPLICANT,' and under the Courts instruction the STOP COULD HAVE ONLY BEEN LEGAL IF IT WERE FOR DWI (OFFENSE OF FELONY OR AGAINST THE PUBLIC PEACE), the jury's **FINDING MUST HAVE BEEN BASED ON EVIDENCE OF INTOXICATION** that MILLER **OBTAINED AFTER HE MADE THE STOP. SUCH EVIDENCE COULD NOT JUSTIFY THE STOP.**" Id.

As in PIERCE, supra, "there was NO PROOF that DEPUTY MILLER (or DETECTIVE MUNOZ) witnessed a violation of the TRAFFIC LAWS," nor was there PROOF PRESENTED FOR ASSUMED PROBABLE CAUSE TO SEARCH OR ARREST WITHOUT WARRANT (TEX CODE CRIM PROC ART 14.01), and RELATOR AT VERY MINIMAL WAS ENTITLED TO A SIMILAR CHARGE AND/OR REVERSAL AND REMAND. THE STOP, hereto in present case, HAS NOT BEEN JUSTIFIED, **AS NO PROOF PRESENTED FOR: TRAFFIC VIOLATION** (i.e. TRAFFIC TICKET, CITATION, VIDEO OF VIOLATION, **NOTHING**); or **PROBABLE CAUSE** and had there been **PROBABLE CAUSE, NOT JUST UNSUPPORTED ASSERTIONS OR BELIEFS,** the OFFICER'S MUNOZ AND PORTER CLEARLY WOULD HAVE IMMEDIATELY WENT BEFORE A MAGISTRATE TO LAWFULLY OBTAIN A WARRANT FOR ARREST AND/OR SEARCH, HOWEVER, IN NOT DOING

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

A. The failure to grant the defense motion to suppress: (continued)

SO STRONGLY SUGGEST THEY WERE OUT TO **MAKE AN ARREST AND/OR SEARCH AND SEIZURE** through the ANONYMOUS UNKNOWN UNRELIABLE INFORMANT BY **"ANY MEANS NECESSARY WITHOUT SAID WARRANTS, TO ARREST, SEARCH, AND/OR SEIZE, THROUGH UNCORROBORATED HEARSAY MADE BY AN ASSUMED ANONYMOUS INFORMANT."**

Furthermore, the UNITED STATES SUPREME COURT, in ILLINOIS v GATES, 462 US 213, 76 L Ed 2d 527, 103 S Ct 2317, reh. den. (US) 77 L Ed 2d 1453, 104 S Ct 103, consistently recognized the value for corroboration of detail **OF AN INFORMANT'S TIP BY INDEPENDENT POLICE WORK.** Id., at 530.

In JONES v UNITED STATES, 362 US, at 269, 4 L Ed 2d 679, 80 S Ct 725, 78 ALR 2d 233, they held "that an affidavit relying on hearsay 'is not to be deemed insufficient on that score, SO LONG AS a substantial basis for crediting the hearsay is presented.'" They "went on to say that **EVEN MAKING A WARRANTLESS ARREST AN OFFICER 'MAY RELY UPON INFORMATION RECEIVED THROUGH AN INFORMANT,** RATHER THAN UPON DIRECT OBSERVATIONS, **SO LONG AS THE INFORMANT'S STATEMENT IS REASONABLY CORROBORATED BY OTHER MATTERS WITHIN OFFICERS KNOWLEDGE,'" Ibid,** Likewise, they "recognized the probative value of corroborative efforts of police officials in AGUILAR – the source of the '2 – pronge test' – by observing that **IF THE POLICE HAD MADE SOME EFFORT TO CORROBORATE THE INFORMANTS REPORT AT ISSUE, ' AN ENTIRELY DIFFERENT CASE'** WOULD HAVE BEEN PRESENTED. AGUILAR, 378 US, at 109. n. 1, 12 L Ed 2d 723, 84 S Ct 1509." GATES, SUPRA, at 550 -551, Id.

"Yet, such tips, particularly when supplemented by INDEPENDENT POLICE INVESTIGATION, frequently contribute to the solution of otherwise 'perfect crimes.' While a conscientious assessment of the **BASIS FOR CREDITING SUCH TIPS IS REQUIRED BY THE FOURTH AMENDMENT, A STANDARD THAT LEAVES VIRTUALLY NO PLACE FOR ANONYMOUS CITIZEN INFORMANTS IS NOT.**" GATES, supra, at 548.

The UNITED STATES SUPREME COURT has repeatedly held THAT UNSUPPORTED ASSERTIONS OR BELIEF OF AN OFFICER DOES NOT SATISFY THE PROBABLE CAUSE REQUIREMENT. GATES, supra, at 570 – 571 (citings omitted).

They further state, In order to emphasize the magistrate's role as an independent arbiter of PROBABLE CAUSE and to **ENSURE THAT SEARCHES AND SEIZURES ARE NOT EFFECTED ON LESS THAN PROBABLE CAUSE,** THE COURT HAS INSISTED THAT POLICE OFFICERS PROVIDE MAGISTRATES WITH THE UNDERLYING **FACTS AND CIRCUMSTANCES THAT SUPPORT THE OFFICERS CONCLUSIONS.** In NATHANSON v UNITED STATES, 290 US 41, 78 L Ed 159, 54 S Ct 11 (1933),

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

A. The failure to grant the defense motion to supress: (continued)

The COURT held INVALID THE SEARCH WARRANT that was BASED ON A CUSTOMS AGENT'S **"MERE AFFIRMATION OF SUSPICION AND BELIEF** WITHOUT **ANY STATEMENT OF ADEQUATE SUPPORTING FACTS,"** Id., at 46, 78 L Ed 159, 54 S Ct 11. **THE COURT STATED: [U]NDER THE FOURTH AMENDMENT,** AN OFFICER MAY NOT PROPERLY ISSUE A WARRANT TO SEARCH A PRIVATE DWELLING UNLESS HE CAN FIND PROBABLE CAUSE THEREFOR FROM **FACTS OR CIRCUMSTANCES** PRESENTED TO HIM **UNDER OATH OR AFFIRMATION. MERE AFFIRMATION OF BELIEF OR SUSPICION IS NOT ENOUGH."** GATES, supra, Id., at 572 - 573.

"In GIORDENELLO v UNITED STATES, 357 US 480, 486, 2 L Ed 2d 1503, 78 S Ct 1245 (1958), the Court reviewed an ARREST WARRANT issued under the FEDERAL RULE CRIMINAL PROCEDURE based on A COMPLAINT **SWORN TO BY** A FEDERAL BUREAU OF NARCOTICS AGENT. Id., at 481, 2 L Ed 2d 1503, 78 S Ct 1245. BASED ON THE AGENT'S TESTIMONY **AT THE SUPPRESSION HEARING,** THE COURT NOTED THAT **'UNTIL THE WARRANT WAS ISSUED...[THE AGENT'S] SUSPICION** OF PETITIONERS **GUILT DERIVED ENTIRELY FROM INFORMATION GIVEN HIM** BY LAW ENFORCEMENT OFFICERS AND OTHER PERSONS IN HOUSTON, NONE OF WHOM EITHER APPEARED BEFORE THE COMMISSIONER OR SUBMITTED AFFIDAVITS.' Id., at 485, 2 L Ed 1503, 78 S Ct 1245. The COURT FOUND IT **UNNECESSARY TO DECIDE WHETHER A WARRANT COULD BE BASED SOLEY ON HEARSAY INFORMATION,** FOR THE COMPLAINT WAS **'DEFECTIVE IN NOT PROVIDING A SUFFICIENT BASIS UPON WHICH A FINDING OF PROBABLE CAUSE COULD BE MADE.'** Ibid. IN PARTICULAR, THE COMPLAINT CONTAINED **NO AFFIRMITIVE ALLEGATION THAT THE AGENT SPOKE WITH PERSONAL KNOWLEDGE** NOR **DID IT INDICATE ANY SOURCES FOR THE AGENT'S CONCLUSION.** Id. at 486, 2 L Ed 2d 1503, 78 S Ct 1245. The COURT **EXPRESSLY REJECTED THE ARGUMENT** that these deficiencies COULD BE CURED BY 'the COMMISSIONER'S RELIANCE UPON **PRESUMPTION** THAT THE COMPLAINT **WAS MADE ON PERSONAL KNOWLEDGE OF THE COMPLAINING OFFICER.'** Ibid. GATES, supra, Id.

"As noted, the COURT **DID NOT DECIDE THE HEARSAY QUESTION** LURKING IN GIORDENELLO. The USE OF HEARSAY TO SUPPORT THE ISSUANCE OF A WARRANT **PRESENTS SPECIAL PROBLEMS** BECAUSE INFORMANTS, UNLIKE POLICE OFFICERS, **ARE NOT REGARDED AS PRESUMPTIVELY RELIABLE OR HONEST.** Moreover, the basis for an informants conclusions is not always clear from an affidavit that merely reports those conclusions. If the **CONCLUSORY ALLEGATIONS OF A POLICE OFFICER ARE INSUFFICIENT TO SUPPORT A FINDING OF PROBABLE CAUSE, SURELY THE CONCLUSORY ALLEGATIONS OF AN INFORMANT SHOULD A FORTIORI BE INSUFFICIENT.** GATES, Id.

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

A. The failure to grant the defense motion to suppress: (conclusion)

The aforementioned in mind, the RELATOR CONCLUDES:

These are the LEGAL STANDARDS by which a COURT OF LAW is to abide in determining **LAWFUL ARREST, SEARCHES, AND SEIZURES** for admissibility of evidence, anything less is **AN ABUSE OF DISCRETION BY THE COURT, "WHICH PRECISELY IS WHAT THE 76th JUDICIAL DISTRICT COURT HAS BEEN ALLOWED TO DO."**

For the reasons stated herein, and to follow, RELATOR should be ACQUITTED, ACTUAL INNOCENCE IMPOSED AS THE **EVIDENCE DOES NOT SUPPORT THE COMMISSION OF A CRIME BY RELATOR.**

B. The refusal to revisit the pre-trial ruling on MOTION TO SUPPRESS in light of
   RE-LITIGATED TRIAL EVIDENCE:

A MOTION TO SUPPRESS can be RE-LITIGATED and TRIAL EVIDENCE used to review the trial court's pre-trial ruling, RACHAL v STATE, 917 SW 2d 799, 809 (TEX CRIM APP 1996). When the LEGALITY OF THE SEIZURE is relitigated at trial, **HOWEVER,** consideration of relevant testimony is appropriate in the COURT OF APPEALS REVIEW. Id. In this case, the issue was relitigated at trial and RELATOR REQUESTED THE TRIAL COURT TO RECONSIDER ITS PRIOR RULING.

In BLACK v STATE, 362 WS 3d 626 (TEX CRIM APP 2012) the issue is detailed as follows: When APPELLATE COURTS are asked to determine whether the TRIAL COURT ERRED IN OVERRULING a pre-trial MOTION TO SUPPRESS the general rule is that the APPELLATE COURT considers only evidence adduced at hearing on the motion and does not resort to testimony subsequently elicited at trial because the ruling in issue was not based on the latter. **BUT** where the ground of error complains of the admission of the evidence at trial, and the issue has been consensually relitigated by the parties during trial on the merits, consideration of the relevant trial testimony is appropriate. (See, APPELLANTS BRIEF, at C. TRIAL TESTIMONY, pg. 13, "Also, the State was once again allowed to place the alleged **WRITTEN STATEMENT** of the appellant **AND EVIDENCE DESPITE DEFENSE COUNSEL'S OBJECTION (HEARSAY);"**...(RR V3, **P 23, 24-25**); **NOW SEE,** APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND, ARGUMENT, ISSUE 1, pg. 7 of 12, "Subsequently, the State offered as, **STATE'S EXHIBIT 2 THE CONTROLLED SUBSTANCE,** the subject of Robinson's objection in his motion to suppress." (RR V 3, **P 110, L** 22 - **P 112, L** 8); NOW APPELLANT'S BRIEF, SUPRA, pg. 13, **"THE ENVELOPE** in which the **SUSPECTED COCAINE WAS PLACED (STATE'S EXHIBIT 2)**and a DVD (STATE'S EXHIBIT 3) were **ALSO ADMITTED,** without objection. Ibid. at 28-29." ). **CLEAR OBJECTION TO WRITTEN STATEMENT AND EVIDENCE SOME 87 PAGES PRIOR TO APPELLEE'S CLAIM OF "NO OBJECTION" WHICH WAS ENTERED AT CHAIN OF CUSTODY TESTIMONY. STATE'S EXHIBIT 2 THE ENVELOPE.**

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

B. The refusal to revisit the pre-trial ruling on MOTION TO SUPPRESS in light of RE-LITIGATED TRIAL EVIDENCE: (continued)

PRECISELY, (See, APPELLANT'S BRIEF, at C. TRIAL TESTIMONY, pg. 16) STATING:

"The following witness was Detective Ray Yokel, A CHAIN OF CUSTODY WITNESS, Ibid. at 105. (This is RR V 3, P 105)

"The next witness was Karen Shumate, A Texas Department of Public Safety Crime Lab employee WHO TESTIFIED ABOUT THE NATURE OF THE CONTRABAND. Ibid. at 109 (This is RR V 3, P 109). SHE TESTIFIED THAT THE CONTRABAND WEIGHED 294.64 g. Ibid. at 112 (This is RR V 3, P 112)."

TO THIS PRECISE TESTIMONY DEFENSE COUNSEL HAD "NO OBJECTION," AS STATED BY DEFENSE BY WRITTEN BRIEF (See, APPELLANT'S BRIEF, at C. TRIAL TESTIMONY, pg. 13, SPECIFYING "OBJECTION TO 'WRITTEN STATEMENT AND EVIDENCE,'" located at RR V 3, P 23, 24-25).

APPELLANT'S BRIEF, WRITTEN BY APPELLATE COUNSEL CLEARLY REVEALS THE STATE'S MISCHARACTERIZATION FOR "NO OBJECTION," AS CHARACTERIZED IN APPELLANT'S BRIEF "STATE'S EXHIBIT 2" IS "THE ENVELOPE." (See, RR V 3, P 23, 24-25; 28-29; and, 105-112).

BLACK, supra, specifies, "...where the ground of error 'COMPLAINS OF THE ADMISSION OF EVIDENCE AT TRIAL, AND THE ISSUE HAS BEEN CONSENSUALLY RELITIGATED BY THE PARTIES DURING TRIAL ON THE MERITS, CONSIDERATION OF THE RELEVANT TRIAL TESTIMONY IS APPROPRIATE.'"

IT IS CLEARLY ESTABLISHED IN BRIEFS AND OPINIONS OF THE COURT'S THERE WAS A CONSENSUAL RELITIGATION IN THE PRESENT CASE. TRIAL COURT ABUSE OF DISCRETION ?

BLACK, supra continues, HAD THE TRIAL COURT NOT ABUSED ITS DISCRETION; The procedure generally distills to the defendant's choice because the admissibility of an arrest, search, confession, and the like, are not material issues on which the State bears the burden of proof at trial - UNLESS RAISED BY THE DEFENDANT. THEREFORE, ANY ATTEMPT BY THE STATE TO FIRST INTERJECT EVIDENCE RELEVANT ONLY TO SUCH ISSUES MAY BE FOILED BY A PROPER OBJECTION BY DEFENSE. (See, APPELLANT'S BRIEF, at pg 13, RR V 3, P 23, 24-25). BUT IF STATE RAISES THE ISSUE AT TRIAL EITHER WITHOUT OBJECTION OR WITH SUBSEQUENT PARTICIPATION IN THE ENQUIRY BY THE DEFENSE, THE DEFENDANT HAS MADE AN ELECTION TO REOPEN THE EVIDENCE. "DEFENSE MADE THIS SUBSEQUENT PARTICIPATION AND ELECTED TO REOPEN THE EVIDENCE."

In determining whether a trial court's decision to deny a MOTION TO SUPPRESS is supported by the record, the APPELLATE COURT generally considers only evidence adduced at the SUPPRESSION HEARING because the ruling was based on it rather than evidence introduced later. HOWEVER, this GENERAL RULE is INAPPLICABLE WHERE THE SUPPRESSION

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

B. The refusal to revisit the pre-trial ruling on MOTION TO SUPPRESS in light of RE-LITIGATED TRIAL EVIDENCE: (continued)

ISSUE HAS BEEN **CONSENSUALLY RELITIGATED** BY THE PARTIES DURING TRIAL ON THE MERITS. Where the STATE raises the issue at trial **EITHER WITHOUT OBJECTION** OR **WITH SUBSEQUENT PARTICIPATION** in the inquiry by the defense, **THE DEFENDANT HAS MADE AN ELECTION TO REOPEN THE EVIDENCE,** and **CONSIDERATION** OF THE **RELEVANT TRIAL TESTIMONY IS APPROPRIATE** IN THE APPELLATE COURT'S REVIEW. BLACK, supra.

The STATE may argue that the general rule identified in HARDESTY v STATE and RACHAL v STATE speaks only to a limitation on what is available for APPELLATE REVIEW of a trial court's ultimate ruling on a pre-trial SUPPRESSION MOTION, and not the trial court's own authority to reopen the SUPPRESSION HEARING itself TO EXPAND THE RECORD. Evidence adduced before the fact finder at trial may not be taken into account in an APPELLATE REVIEW of the propriety of the trial court's ruling on a MOTION TO SUPPRESS, the STATE could readily concede, absent consent of the parties. **BUT** that does not mean that the trial court lacked authority to later REOPEN THE SUPPRESSION HEARING, outside the jury's presence, to ENTERTAIN ADDITIONAL EVIDENCE RELEVANT TO A REVISITATION OF THE CORRECTNESSOF TIS INITIAL RULING. **AND IF** the trial court exercises its authority (not doing so in present case was an ABUSE OF AUTHORITY)to permit additional evidence in the context of A RENEWED SUPPRESSION HEARING, the REVIEWING COURT (IN THIS PRESENT CASE SHOULDHAVE CONSIDERED) MUST CONSIDER that additional evidence in determining the propriety of the trial court's ULTIMATE RULING on the MOTION TO SUPPRESS. Therefore, the STATE could argue, this was the essence of the holding in MONTALVO v STATE. BLACK, supra.

There is found no LEGISLATIVE INTENT that the STATUTORY AVAILABILITY of an INTERLOCUTORY APPEAL should have foreclosed the RELATOR'S ATTORNEY form opting to seek RECONSIDERATION at the trial court level on a RULING THAT THE RELATOR'S ATTORNEYREGARDED AS MISTAKEN. **HOWEVER, FAILING TO DO SO IS INEFFECTIVE ASSISTANCE.** BLACK, supra.

It has been held, if anything, TEX CODE CRIM APP (TCCP, herein) Art. 36.02 should be interpreted to BE BROAD ENOUGH to PERMIT THE TRIAL COURT within its DISCRETION TO REOPEN A SUPPRESSION HEARING if it APPEARS NECESSARY TO THE DUE ADMINISTRATION OF JUSTICE (AS IT WAS WITH PERJURED TESTIMONY OF DETECTIVE MUNOZ, **BY INCONSISTENT STATE-MENTS**). After all a MOTION TO SUPPRESS IS NOTHING MORE THAN A **SPECIALIZED OBJECTION TO EVIDENCE,** which may be – but is not required to be – resolved, under TCCP ANN. Art. 28.01 § 1 (6) prior to trial. This applicability of TCCP ANN. Art. 36.02 should not

III

## 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

## THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

B. The refusal to revisit the pre-trial ruling on MOTION TO SUPPRESS in light of RE-LITIGATED TRIAL EVIDENCE: (continued)

rest upon whether the trial court opts to conduct a pre-trial hearing on the MOTION TO SUPPRESS or instead to carry the MOTION over for trial. Ohter jurisdictions have held that the trial court has the DISCRETIONARY POWER TO RECONSIDER RULINGS ON **SUPPRESSION HEARINGS**, even in the absense of a statute such as Art. 36.02. BLACK, supra.

In essence, a pre-trial MOTION TO SUPPRESS EVIDENCE is **NOTHING MORE THAN A SPECIALIZED OBJECTION** to THE ADMISSABILITY OF THAT EVIDENCE. A PRE-TRIAL RULING on such A MOTION IS INTERLOCUTORY IN NATURE. **AS SUCH, IT SHOULD BE REGARDED AS JUST AS MUCH THE SUBJECT OF RECONSIDERATION AND REVISION AS ANY OTHER RULING ON THE ADMISSABILITY OF EVIDENCE** UNDER TEX RULES EVIDENCE (TRE) 104, which a trila court may revisit at its discretion at any time during the course of a trial. To the extent that TCCP ANN Art. 36.02 may be said to circumscribe a trial court's authority to reopen a hearing on a MOTION TO SUPPRESS, it should be construed according to its terms. By this reckoning, Art. 36.02 restricts the trial court's discretion to reopen a hearing on a MOTION TO SUPPRESS ONLY TO THE EXTENT that it PROHIBITS FURTHER EVIDENCE OF ANY KIND ONCE the parties have concluded their arguments of the cause – that is to say the trial its self. This conclusion is bolstered by case law from other jurisdictions that have concluded that a trial court retains the authority to reopen a SUPPRESSION HEARING AND REVISIT ITS PRE-TRIAL RULING thereon during the course of trial. BLACK, supra.

**IN RELATOR'S CASE** when the STATE RESTED. "The defense made a motion for instructed verdict that was denied. Ibid. at (RR V 3, P) 115. The basis for the motion was that the EVIDENCE MERELY ESTABLISHED THE DEFENDANT'S PRESENCE, **BUT NOT OWNERSHIP OR CONTROL OF THE CONTRABAND.** Ibid. (RR V 3, P) 116; see also, APPELLANT'S BRIEF, at C. TRIAL TESTIMONY, pg. 16.

Indeed, TRE 104 (b) clearly contemplates that the trial court MAY BE REQUIRED TO REVISIT THE QUESTION OF ADMISSABILITY OF CERTAIN EVIDENCE long after it has DECLARED THE EVIDENCE AT LEAST CONTINGENTLY ADMISSABLE. The court has seen NO REASON why a trial court SHOULD LACK THE AUTHORITY likewise to revisit a preliminary determination with respect to THE ADMISSABILITY OF EVIDENCE UNDER RULE 104 (a), **IF REQUESTED TO DO SO FOR SUFFICIENT CAUSE BY ONE OF THE PARTIES** (See IN RELATOR'S CASE, supra) – at its discretion, of course, and subject to TCCP ANN Art 36.02 (ABUSE OF DISCRETION IN RELATOR'S CASE ?). BLACK, supra.

## III

### 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

### THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

B. The refusal to revisit the pre-trial ruling on MOTION TO SUPPRESS in light of
   RE-LITIGATED TRIAL EVIDENCE: (continued)

Case Law Holds: INTER ALIA, ... The trial court has discretion to revisit
INTERLOCULATORY PRE-TRIAL RULING on MOTION TO SUPPRESS. The fact that the STATE could
appeal a pre-trial order granting A MOTION TO SUPPRESS did not deprive the trial court
of authority to reopen SUPPRESSION HEARING AND CHANGE ITS RULING. The trial court has
discretion to reopen hearing on MOTION TO SUPPRESS regardless of whether **THE EVIDENCE
IS NEWLY DISCOVERED OR MERELY OMITTED AT THE INITIAL PROCEEDING.** BLACK, supra.

A trial court's decision to SUPPRESS EVIDENCE is an INTERLOCUTORY ORDER AND MAY BE
RECONSIDERED by the trial court's OWN MOTION or UPON MOTION BY THE PARTIES. A trial
court's discretionary powers are continuos and it may RECONSIDER EARLIER RULING ON
MOTION TO SUPPRESS. A MOTION TO RECONSIDER OR REOPEN PROOF at SUPPRESSION HEARING is a
matter of trial court's discretion. THE TRIAL COURT **HAS BROAD DISCRETION** IN DECIDING
WHETHER TO **"REOPEN"** HEARING ON PRE-TRIAL MOTION TO SUPPRESS. A pre-trial RULING ON
MOTION TO SUPPRESS **IS INTERLOCUTORY** AND TRIAL COURT HAS INHERENT **POWER TO REVISE IT
ANYTIME BEFORE FINAL JUDGEMENT IN THE CASE.** THE TRIAL COURT **HAS BROAD DISCRETION TO
REVISIT PRE-TRIAL RULINGS ON MOTIONS TO SUPPRESS "AND SHOULD DO SO LIBERALLY."** BLACK,
supra.

The COURT OF CRIMINAL APPEALS holding that a trial court has the authority to reopen
the hearing on a MOTION TO SUPPRESS EVIDNECE even after trial has begun is easily
harmonized with HARDESTY v STATE and RACHAL v STATE. Neither HARDESTY nor RACHAL
purported to decide the trial courts authority, vel non, to reopen a SUPPRESSION HEARING
during the course of a trial; THEY **MERELY SET OUT A GENERAL RULE THAT GOVERNS APPELLATE
REVIEW OF RULINGS ON PRE-TRIAL MOTIONS TO SUPPRESS,** WITH **AN EXCEPTION** THAT BROADENS THE
**PERMISSABLE SCOPE OF THAT APPELLATE REVIEW UNDER CIRCUMSTANCES IN WHICH FURTHER EVIDENCE
IS ADMITTED** DURING THE COURSE OF TRIAL, **AT THE WILL OF THE PARTIES,** THAT **PERTAINS TO
THE PROPRIETY OF THE EARLIER RULING.** Neither the GENERAL RULE NOR THE EXCEPTION to it
even addresses, MUCH PRECLUDES, a trial court itself from hearing additional evidence
and either revising or reiterating its initial ruling. BLACK, supra.

**THE GENERAL RULE** in cases in which the TRIAL COURT **IS NEVER ASKED,** OR **IS ASKED BUT
DECLINES, TO EXERCISE ITS DISCRETIONARY AUTHORITY** TO REOPEN THE **SUPPRESSION HEARING,
APPELLATE REVIEW** OF ITS RULING ON THE MOTION TO SUPPRESS **IS ORDINARILY LIMITED** TO THAT
EVIDENCE PRESENTED AT THE PRE-TRIAL HEARING – the evidence that was before the court

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

B. The refusal to revisit the pre-trial ruling on MOTION TO SUPPRESS in light of RE-LITIGATED TRIAL EVIDENCE: (continued)

at the time of its dicision. **THE EXCEPTION:** If the parties consensually broach the suppression issue again before the fact-finder at trial in gauging the propriety of the trial court's ruling on the MOTION TO SUPPRESS. **FINALLY,** the **COROLLARY RULE:** If at any point before the conclusion of final arguments at trial, the trial court should exercise its discretionary authority to reopen the SUPPRESSION HEARING, **THE REVIEWING COURT SHOULD ALSO CONSIDER WHATEVER ADDITIONAL EVIDENCE MAY BE SPREAD ON THE RECORD BEARING ON THE PROPRIETY OF THE TRIAL COURT'S ULTIMATE RULING ON THE MOTION TO SUPPRESS.** BLACK, supra.

Accordingly, it is clear from the record of; the trial court; court of appeals; and, the court of criminal appeals, the parties in RELATOR'S case CONSENSUALLY BROACHED THE SUPPRESSION ISSUE AGAIN BEFORE THE FACT-FINDER AT TRIAL IN GAUGING THE PROPRIETY OF THE TRIAL COURT'S RULING. Therefore, based on the record and the law specified herein the trial court has clearly abused its discretion, as well as the court of appeals in its present ruling issuing a mandate to affirm judgement of the trial court for these same reasons and to follow.

For the reasons stated herein, and to follow, RELATOR should be ACQUITTED, ACTUAL INNOCENCE IMPOSED AS THE **EVIDENCE DOES NOT SUPPORT THE COMMISSION OF A CRIME BY RELATOR, NOR DID DEFENSE COUNSEL RENDER A "NO OBJECTION" TO THE "CONTROLLED SUBSTANCE,"** AS **MISCHARACTERIZED IN APPELLE'S SUPPLEMENTAL BRIEF ON REMAND** (pg 7 of 12, at RR V 3, P 110, L 22 - P 112, L 10), THE **"NO OBJECTION"** WAS ENTERED UPON THE **"STATE'S EXHIBIT 2" THE ENVELOPE IN A "CHAIN OF CUSTODY"** TESTIMONY BY DETECTIVE RAY YOKEL AND KAREN SHUMATE, WHO ALSO TESTIFIED ABOUT THE NATURE OF THE CONTRABAND AND ITS WEIGHT (See herein at pg. 23, at B. **PRECISELY;** see also APPELLANT'S BRIEF, at C. TRIAL TESTIMONY, pg. 13, and, herein at pg. 22, **SPECIFYING STATE'S "EXHIBIT 2" WAS/IS ENTERED AS "THE ENVELOPE",** AND THE **"NO OBJECTION" IS TO THE TESTIMONY OF THE "CHAIN OF CUSTODY" A DISCUSSION OF THE PROCEDURES FOR SEALING "THE ENVELOPE" AND RECEIVING "THE ENVELOPE", STATE'S EXHIBIT 2).**

Therefore, RELATOR **DID AND HAS PRESERVED HIS FIRST POINT OF ERROR** ALLEGING THE TRIAL COURT ERRED IN FAILING TO SUPPRESS ALL EVIDENCE OBTAINED DURING AND SUBSEQUENT TO **AN ILLEGAL TRAFFIC STOP.**

WITH FURTHER REASONING TO FOLLOW.

## III

### 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

### THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

C. Refusal to comply with TEXAS CODE CRIMINAL PROCEDURE (TCCP) Art. 38.22 in **ABATED FINDINGS OF FACT AND CONCLUSION OF LAW,** and the ERROR IS NOT MOOT, NOR AS SUCH WAS IT TO BE OVERRULED BY THE SIXTH COURT OF APPEALS:

The record reveals the trial court refused to enter a **FINDINGS OF FACT AND CONCLUSION OF LAW,** nor is RELATOR aware from the record as **ABATED IN THE COURT OF APPEALS,** pursuant to Art. 38.22 TCCP, with; A. STATEMENT OF FACTS; B. ARGUMENT AND DISCUSSION; for said violation presented in APPELLANT'S BRIEF, at pgs. 28 - 30, specifying Art. 38.22 TCCP "requires the trial court to make **"WRITTEN FINDINGS OF FACTS AND CONCLUSIONS OF LAW"** were a question is raised as to the voluntariness of the statement of accused. Ibid. at sec. 6. 'The court **MUST** enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with specific **FINDINGS OF FACT** upon which **THE CONCLUSION WAS BASED,** which **ORDER SHALL BE FILED AMONG THE PAPERS OF THE CAUSE.'** Ibid. Such was not done in this case." Nor was it done in the **ABATED WRITTEN FINDINGS OF FACTS AND CONCLUSIONS OF LAW OF THE RECORD, NOR HAS IT BEEN RULED ON OTHER THAN THE APPELLATE COURT'S FINDING AS "MOOT."** APPELLANT'S BRIEF, supra. (See also, SIXTH COURT OF APPEALS, ORIGINAL OPINION, NO. 06-09-00225-CR, at pg. 2, F.N. 1, Id.).

FURTHERMORE, AS OPINED IN THE COURT OF CRIMINAL APPEALS (at F.N. 3, slip opin.) : "...the court of appeals later abated the case to the trial court to enter written findings of fact and conclusion of law. After remand, the only finding relevant to the traffic stop stated: '1. The Court FINDS that on August 25, 2008, Timothy Lee Robinson was stopped by Mt. Pleasant Police Department officers for a traffic violation.' **There** were **NO SPECIFIC FINDINGS OF FACT** relating to the appellant's use of his turn signal or **THE CHARACTER OF THE ROADWAY.** The trial court also **DID NOT MAKE A CREDIBILITY DETERMINATION AS TO MUNOZ'S TESTIMONY.** Moreover, **THERE WAS NO SPECIFIC CONCLUSION OF LAW** relating to the underlying question **WHETHER MUNOZ HAD THE NECESSARY REASONABLE SUSPICION TO STOP THE APPELLANT FOR A TRAFFIC VIOLATION."** (COURT OF CRIMINAL APPEALS, SLIP OPINION, PD - 0238 - 11, at F.N. 3, Id.).

"In a recent opinion in STATE v MENDOZA, we (COURT OF CRIMINAL APPEALS) observed that, in reviewing a trial court's ruling on a motion to suppress, **APPELLATE COURTS SHOULD NOT HAVE TO 'PRESUME, ASSUME, OR GUESS'** WHAT historical facts a trial judge found **IN MAKING HIS OR HERS WRITTEN FINDINGS AND CONCLUSIONS WHEN THOSE FACTUAL FINDINGS ARE INCOMPLETE OR AMBIGUOUS.** 365 SW 3d 666, 671 (Tex Crim App 2012). Id.

Yet this is PRECISELY WHAT THE SIXTH COURT OF APPEALS HAS ACCOMPLISHED.

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

D. The ABATED. "FINDINGS OF FACT AND CONCLUSION OF LAW" omitting material facts relevant to the testimony given by MOUNT PLEASANT DETECTIVE CESAR MUNOZ AND POLICE OFFICER SIMON RAY PORTER questioning the lawfulness of RELATOR'S CONVICTION, **PRECISELY:**

In a most recent opinion the COURT OF CRIMINAL APPEALS observed that in reviewing a trial court's ruling on a MOTION TO SUPPRESS, appellate courts should not have to "PRESUME, ASSUME, OR GUESS" what historical facts a trial judge found in making his or her WRITTEN FINDINGS AND CONCLUSIONS when those FACTUAL FINDINGS ARE INCOMPLETE OR AMBIGUOUS. (STATE v MENDOZA, 365 SW 3d 666, 671 (Tex Crim App 2012); ROBINSON, PD – 0238 – 11, ID. at slip opin, f.n. 3)). Then went on to emphasize, "[F]actual findings are who DID WHAT, WHEN, WHERE, HOW, OR WHY. **THEY ALSO INCLUDE CREDIBILITY DETERMINATIONS.** They do not include legal rulings on 'reasonable suspicion' or 'probable cause'; those are legal conclusions subject to de novo review, not deference." (STATE v SHEPARD, 271 SW 3d 281, 291 (Tex Crim App 2008), Id. at ROBINSON, slip opin f.n. 27).

RELATOR filed a MOTION TO SUPPRESS, prior to trial, any and all evidence stemming from the PRETEXT TRAFFIC STOP, TO THEREBY, INSTITUTE A CUSTODIAL INTERROGATION OF RELATOR ON THE BASIS OF A TIP FROM AN UNIDENTIFIED AND UNRELIABLE INFORMANT, **WITHOUT THE USE OF PROCEDURAL SAFEGAURDS EFFECTIVE TO SUCURE THE PRIVILEGE AGAINST SELF – INCRIMINATION PROVIDED UNDER THE UNITED STATES CONSTITUTION.** MIRANDA v ARIZONA, 384 US 436, 444, 86 S Ct 1602, 16 L Ed 2d 694 (1966). The holding of MIRANDA is codified in Art. 38.22 of the TCCP; JONES v STATE 944 SW 2d 642, 650 n. 11 (Tex Crim App 1996); APPELLANT'S BRIEF, Id. at pgs. 29 – 30; ROBINSON, PD – 0238 – 11, slip opin. Id. at 3).

At a pre – trial hearing on the [RELATOR'S] motion, **THE ONLY WITNESS WAS DETECTIVE CESAR MUNOZ** OF THE MOUNT PLEASANT POLICE DEPARTMENT, MUNOZ testified, **NOTICE THE STRUCTURE OF THE ANSWER,** he observed the vehicle Robinson was driving **"FAILED TO MAKE A——————— (WHAT ?)** USE THEIR TURN SIGNAL AT THAT TIME WHEN IT TURNED ONTO MARGARET FROM NINTH." The **UNDERLINED IS A PREPARATORY STATEMENT** devised between the DISTRICT ATTORNEY AND MUNOZ **IN AN ATTEMPT TO ADD LEGITIMACY TO AN OTHERWISE "UNLAWFUL TRAFFIC STOP,"** to – wit all MUNOZ has to do is hold to this **PREPARATORY STATEMENT AS HIS REASONABLE BELIEF.** (See 6th COURT OF APPEALS, ORIGINAL OPINION, 06-09-00225-CR, Id., at pg. 6).

The MOUNT PLEASANT POLICE DEPARTMENT is SWORN IN TO ,FIRST AND FOREMOST, UPHOLD THE LAWS AND ORDINANCES OF THE CITY OF MOUNT PLEASANT. Therefore, in order to commit a TRAFFIC VIOLATION it has to be AGAINST A LAW OR ORDINANCE OF THE CITY OF MOUNT PLEASANT.

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

D. The ABATED "FINDINGS OF FACT AND CONCLUSION OF LAW" omitting material facts relevant to the testimony given by MOUNT PLEASANT DETECTIVE CESAR MUNOZ AND POLICE OFFICER SIMON RAY PORTER questioning the lawfulness of RELATOR'S CONVICTION, **PRECISELY:**

MUNOZ described **THE INTERSECTION** of Ninth and Margaret as follows:

Where the road actually **"YS"**, there is **"A DEAD END ROAD TO THE LEFT,"** but it is **"A ROADWAY WITH RESIDENCES ON IT,** and **THERE'S A ROAD TO THE RIGHT,** which MARGARET CONTINUES ONTO......

**FIRST,** the **"Y"** being used in this instance gives a complete misconception of the formation of the two streets. **IF** one is to use a **"Y"** to describe mentally this street formation, one would be better informed as to this configuration with the use of a **SMALL "y",** with NINTH STREET BEING THE SMALL LINE ON YOUR LEFT LOOKING AT THE **SMALL>"y'**, and MARGARET STREET BEING THE LONG LINE ON YOUR RIGHT LOOKING AT THE **SMALL "y"<** with the UPPER PORTION ON THE RIGHT OF THE **SMALL "ÿ"<** being THE DEAD END TO MARGARET STREET.

**SECOND, THE DEAD END OF MARGARET** (THE RIGHT UPPER PORTION OF THE **SMALL "y"<**) has **ONE HOME WITH A DRIVEWAY** (AS YOU MAKE THE LEFT HAND TURN OFF NINTH STREET TO MARGARET), **ON THE RIGHT, AND ON THE LEFT THERE IS A RESIDENCE HAVING "NO VEHICULAR ACCESS OTHER THAN PARKING," AS THIS STUB "ONLY RUNS THE LENGTH OF THESE TWO RESIDENCES LOTS" HAVING A BARRACADE AT THIS DEAD END, "WITH NO THROUGH TRAFFIC."**

**THIRD, "THE INTERSECTION,"** IS A MISNOMER, WHEN A PERSON COMES DOWN NINTH STREET TOWARD MARGARET STREET, UNLESS YOU WANT TO VISIT ONE OF THE TWO RESIDENCES ON EITHER SIDE OF THE STUBBED DEAD END TO MARGARET, **WHICH TURNS LEFT OFF NINTH AS IT CHANGES TO MARGARET;** THE NINTH STREET CHANGES TO MARGARET IN THE CURVE TO THE RIGHT, **NO INTERSECTION. PRECISELY,** At the SUPPRESSION HEARING, the defense showed MUNOZ a map, which MUNOZ described as incorrect. When asked, **"[D]oes NINTH STREET 'CURVE INTO' MARGARET DRIVE ?" MUNOZ RESPONDED, "YES IT DOES,** but the way that indicates is incorrect to the actual way the street is. That's incorrect." (See 6th COURT OF APPEALS, supra, Id., at pg. 9-10)(See also, REPORTER'S RECORD, VOLUME 5, EXHIBIT DX - 1; APPELLANT BRIEF, pg 22 at 7).

**FINALLY,** for the best MENTAL PICTURE FOR THE CONFIGURATION OF NINTH AND MARGARET COMBINING; PUT ON A PAIR OF BOOTS, STAND ON YOUR HEAD, LOOK DOWN AT THE BOOTS ON YOUR FEET. YOU'LL SEE THE TOP OF THE BOOTS FROM YOUR TOES, ACROSS THE TOP OF YOUR FOOT TO YOUR ANKLE, THEN UP THE UPPER PART OF THE BOOT TO YOUR KNEES. SEE THAT ? O.K.. **NOW,** NINTH STREET STARTS AT YOUR TOES AND COMES ACROSS THE TOP OF YOUR FOOT AND AT YOUR ANKLE IT GOES UP TO YOUR KNEE AS MARGARET DRIVE (STREET). **HOWEVER,** AT YOUR ANKLE IF YOU GO TO THE HEAL OF THE BOOT IT DEAD ENDS, AS DOES MARGARET DRIVE, **NO INTERSECTION.**

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

D. The ABATED "FINDINGS OF FACT AND CONCLUSION OF LAW" omitting material facts relevant to the testimony given by MOUNT PLEASANT DETECTIVE CESAR MUNOZ AND POLICE OFFICER SIMON RAY PORTER questionong the lawfulness of RELATOR'S CONVICTION, **PRECISELY:**

**NINTH STREET'S NAME CHANGE TO MARGARET DRIVE FROM THE DIRECTION** [RELATOR] **WAS TRAVELING "IS NO MORE THAN A CURVE IN THE 'TWO LANE STREET'",** OR "LANED ROADWAY WHICH IS DIVIDED INTO...TWO...CLEARLY MARKED LANES FOR VEHICULAR TRAVEL" **AND NOT,** "...AN AREA WITHIN WHICH VEHICLES TRAVELING UPON DIFFERENT STREETS AT ANY OTHER ANGEL **'MAY COME IN CONFLICT,'" NOT AN INTERSECTION IN ACCORDANCE WITH CITY CODES OF MT. PLEASANT, TEXAS, CODE OF ORDINANCES, SECTION 70.01, NOR UNDER SECTION 71.030 DOES IT REQUIRE A TURN SIGNAL, AND AS SUCH IT IS "NOT A TRAFFIC VIOLATION UNDER SAID MT PLEASANT CITY CODE OF ORDINANCES."** (See APPENDIX, TAB A: CITY CODES OF MT. PLEASANT, TEXAS; CODE OF ORDINANCES, SECTIONS 70.01 and 71.030)(See also, DEFENSE EXHIBIT 1; and, TAB 2, RELATOR'S SUPPLE-MENTAL DIAGRAM OF NINTH STREET AND MARGARET DRIVE CONFIGURATION).

At the SUPPRESSION HEARING, MUNOZ, "When asked, Does Ninth Street **CURVE INTO** Margaret Drive ? Munoz responded, **YES, IT DOES..."** **THE INCORRECTNESS MUNOZ QUESTIONED WAS,** "...[b]ecause in [the defense exhibit], East Eighth does not run into Margaret, and then you've got East Ninth, and they run parallel to each other..", **THIS IS AT TRIAL.**(See, 6th COURT OF APPEALS, ORIGINAL OPINION, supra, at pg. 10, Id.).

FURTHERMORE, AT TRIAL, "MUNOZ [changed testimony from SUPPRESSION HEARING by] admitting East Ninth Street and Margaret Drive **MERGE** at their **INTERSECTION.** When asked whether there were any **TRAFFIC SIGNS OF 'ANY KIND'** AT THE **INTERSECTION,** MUNOZ responded, 'I don't believe. It's just a ---[**ANOTHER PREPARATORY STATEMENT**] **IT'S AN INTERSECTION."** **"THE RECORD ALSO CONTAINS EVIDENCE THAT THE TRAFFIC FROM 'NINTH STREET DOES MERGE ONTO MARGARET DRIVE.'"**(6th COURT APPEALS, supra, Id., at pg. 10).

AT TRIAL, LAKESHIA WILLIAMS, **"A LICENCED DRIVER IN THE STATE OF TEXAS",** CONFIRMED THERE ARE **NO TRAFFIC SIGNS...AT THIS INTERSECTION,** "....OR WHAT DETECTIVE MUNOZ CONSIDERS TO BE THE INTERSECTION OF NINTH AND ᴹARGARET ?...IT'S JUST A CURVE....JUST CURVES AROUND...NO STOP SIGN OR YIELD SIGN..." Id. at pg. 11.

If the operator is proceeding straight, or following the direct course of the road, a signal is not required. The fact that the street name of the road may change is not necessarily determinative of whether an operator is following the direct course of the road. It is the course of the road and traffic that are determinative. The Texas Tranaportation Code **DOES NOT REQUIRE** an operator **PROCEEDING STRAIGHT THROUGH AN INTERSECTION TO SIGNAL. WHEN A ROAD CURVES, MAHAFFEY** EXPLAINS THAT AN OPERATOR **FOLLOWING**

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

D. The ABATED "FINDINGS OF FACT AND CONCLUSION OF LAW" omitting material facts relevant to the testimony given by MOUNT PLEASANT DETECTIVE CESAR MUNOZ AND POLICE OFFICER SIMON RAY PORTER questioning the lawfulness of RELATOR'S CONVICTION, **PRECISELY:**

THE DIRECT COURSE OF THE ROAD "IS NOT REQUIRED TO SIGNAL." MAHAFFEY, 316 SW 3d at 639. 6th COURT OF APPEALS, supra, Id., at 9.

The defense,...relied upon the Beaumont Court of Appeals' decision in TRAHAN v STATE, 16 SW 3d 146, 147 (Tex App – Beaumont 2000, no pet.), at trial. Similar to MAHAFFEY, the Beaumont court held "the code does not equate moving right or left to a 'turn.'" Id. (concluding defendant **NOT REQUIRED TO SIGNAL EXIT FROM FREEWAY**). [**NO DIFFERENT THAN THE RELATOR'S MOVEMENT FROM NINTH TO MARGARET, "NOT REQUIRED TO SIGNAL EXIT FROM NINTH 'AT THE CURVE INTO MARGARET,' SMALL y EXAMPLE = NINTH/EXIT AT SMALL >y, ENTER INTO MARGARET y< MARGARET LONG SIDE SMALL y, no difference than exiting from freeway."**] The STATE, citing MAHAFFEY, 316 SW 3d at 643, note[d] "the Court of Criminal Appeals has approved of [TRAHAN'S reasoning] to a limited extent, not applicable here." [6th Court of Appeals explains], Other than explaining MAHAFFEY as "holding that a **'MERGE' IS NOT A 'TURN' THAT REQUIRES A SIGNAL UNDER THE TRANSPORTATION CODE,"** THE STATE **[DID] NOT EXPLAIN WHY** THE REASONING OF MAHAFFEY IS NOT APPLICABLE. Although the facts of MAHAFFEY are distinguishable, **THE CLARIFICATION OF THE MEANING OF THE TERM "TURN" IS APPLICABLE TO THE FACTS OF THIS CASE.** 6th COURT OF APPEALS, supra, Id., at 8.

As previously suggested, as MOUNT PLEASANT POLICE DEPARTMENT OFFICERS, both CESAR MUNOZ AND SIMON RAY PORTER, **ARE NOT REQUIRED TO ESTABLISH VIOLATIONS OF THE TEXAS TRANSPORTATION CODES,** HOWEVER, IN ORDER TO **ESTABLISH TRAFFIC VIOLATIONS UPON THE STREETS AND BYWAYS FOR VEHICULAR TRAVEL WITHIN THEIR JURISDICTION THEY ARE TO APPLY THE ESTABLISHED CITY CODE OF ORDINANCES.** NEITHER THEY, THE TRIAL COURT, NOR THE 6th COURT OF APPEALS have utilized the primary reasoning of these said codes to make the affirmative findings needed to establish a **TRAFFIC VIOLATION.** In fact, UNDER MOUNT PLEASANT CITY CODES AND ORDINANCES §70.01 and §77.030, ROBINSON COMMITTED **NO TRAFFIC VIOLATION** AND ANY SUGGESTION TO THE CONTRARY IS AN ABSOLUTE TRAVESTY OF JUSTICE, ABUSE OF DISCRETION, PROSECUTORIAL MISCONDUCT, AND IN DIRECT VIOLATION OF THE CODE OF ETHICS THIS SYSTEM AS OFFICERS OF THE COURTS ARE SWORN TO UPHOLD ESPECIALLY IN SIGHT OF THE FACTS AS REVEALED ABOVE AND THE FOLLOWING, **SPECIFICALLY:**

The definition of **"AN INTERSECTION"** the MOUNT PLEASANT CITY ORDINANCE §70.01 is; "...the area within which vehicles traveling upon different streets joining at any other angel may come in conflict." **THERE IS NO CONFLICT IN A 'MERGE' OR A 'CURVE.'**

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

D. The ABATED "FINDINGS OF FACT AND CONCLUSION OF LAW" omitting material facts relevant to the testimony given by MOUNT PLEASANT DETECTIVE CESAR MUNOZ AND POLICE OFFICER SIMON RAY PORTER questioning the lawfulness of RELATOR'S CONVICTION, **PRECISELY:**

Furthermore, §71.030 of the MOUNT PLEASANT CITY CODES OF ORDINANCES SPECIFIES: STOPPING AND TURN SIGNALS. (A) General. (IN PERTINENT PARTS)

(1) When **ANY OTHER TRAFFIC MAY BE AFFECTED BY SUCH MOVEMENT,** no person shall turn any vehicle without giving a signal of his or her intention to turn right or left....

(4) The signal lamps provided for in this section shall be used to indicate an intention to turn, change lanes, or start from a parked position........

The aforementioned are to be considered the defining factors for a conclusion of a traffic violation within the jurisdiction of the MOUNT PLEASANT DETECTIVE CESAR MUNOZ AND POLICE OFFICER SIMON RAY PORTER, and the defining factor is **"THE CONFLICT WITH TRAFFIC, AND/OR ANY OTHER TRAFFIC AFFECTED BY SUCH MOVEMENT,"** TO **IMPLY A VIOLATION OF THE CITY CODE OF ORDINANCES AS A "TRAFFIC VIOLATION."** (See, CITY CODES OF MT. PLEASANT, TEXAS, CODE OF ORDINANCES, SECTION 70.01 and 71.030, at APPENDIX TAB A)(See also, TAB 2, RELATOR'S SUPPLEMENTAL DIAGRAM OF NINTH STREET AND MARGARET DRIVE CONFIGURATION).

The record contains evidence that at the SUPPRESSION HEARING, the only witness to testify, DETECTIVE CESAR MUNOZ, **TESTIFIED BOTH,** NINTH STREET AND MARGARET DRIVE **"MERGE,"** and LATER TESTIFIES, **"WHEN ASKED, 'DOES NINTH STREET CURVE INTO MARGARET DRIVE ?' MUNOZ RESPONDED, 'YES IT DOES...'"** ISN'T THAT PERJURY ? OR HOW ABOUT NOW WHEN MUNOZ AT TRIAL, .."**ADMITTED EAST NINTH STREET AND MARGARET DRIVE MERGE AT THEIR INTERSECTION."** Either way MUNOZ, **ON THE RECORD ADMITS TWICE THE TWO STREETS "MERGE" AND ONCE THEY "CURVE" INTO EACH OTHER, WITH THE TESTIMONY OF LAKESHIA WILLIAMS TESIFYING THE TWO STREETS "CURVE" INTO EACH OTHER,** THEREFORE, **"..THE OFFICER'S INCORRECT UNDERSTANDING OF THE LAW DOES NOT GIVE RISE TO A REASONABLE SUSPICION,"** as the record and facts of the record reveal. Especially,based on the STATE PROSECUTOR'S, STATE'S PETITION FOR DISCRETIONARY REVIEW, CONFIRMS THE MATTER, SPECIFICALLY, at pg. 8:

"Based on the 6th court's recitation of the trial record, the jury was presented with **NO DISPUTED EVIDENCE** as to how the two roads at issue physically meet. At trial, OFFICER MUNOZ **AGREED THAT NINTH AND MARGARET MERGE AT THEIR INTERSECTION AND THAT THERE ARE NO TRAFFIC SIGNS OF ANY KIND AT THE INTERSECTION.** Slip Op. at 10. The defense introduced a map **SHOWING THAT NINTH AND MARGARET ARE "INDISTINGUISHABLE FROM A SINGLE ROAD EXCEPT FOR THE ASSIGNED NAMES."** Slip Op. at 16. [RELATOR'S] girlfriend confirmed that **NINTH CURVES INTO MARGARET WITHOUT A STOP [MERGE]OR YIELD SIGN.** Slip Op. at 11.

III

## 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

### THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

D. The ABATED "FINDINGS OF FACT AND CONCLUSION OF LAW" omitting material facts relevant to the testimony given by MOUNT PLEASANT DETECTIVE CESAR MUNOZ AND POLICE OFFICER SIMON RAY PORTER questionong the lawfulness of RELATOR'S CONVICTION, **PRECISELY:**

In short, **THE PHYSICAL DESCRIPTION OF HOW NINTH AND MARGARET MEET WAS DEPICTED IN A MAP THAT WAS CORROBORATED BY [BOTH] AT LEAST ONE WITNESS[ES] AND CONTRADICTED BY NONE.** Id. (See also, 6th COURT OF APPEALS, ORIGINAL ANSWER, Id. at pg. 6, supra).

As residents of MOUNT PLEASANT, TEXAS, a reasonable person would tend to believe it to be quite within the realm of possibility that the; HONORABLE JIMMY LEON WHITE, TRIAL JUDGE IN THIS CASE; HONORABLE CHARLES C. BAILEY, DISTRICT ATTORNEY, TRIAL COUNSEL FOR APPELLEE; and, HONORABLE SAM W. RUSSELL, TRIAL COUNSEL FOR [RELATOR]; as either, residents or merchants, **ARE AWARE OF THE TWO STREETS IN QUESTION AND THEIR CONFIGURATION HELPING TO EXPLAIN THE TRIAL JUDGE ABATED REFUSAL TO ADDRESS "SPECIFIC FINDINGS OF FACT RELATING THE [RELATOR'S] USE OF HIS TURN SIGNAL OR THE CHARACTER OF THE ROADWAY; THE TRIAL COURT ALSO DID NOT MAKE A CREDIBILITY DETERMINATION AS TO MUNOZ'S TESTIMONY; MOREOVER, THERE WAS NO SPECIFIC CONCLUSION OF LAW TO THE UNDERLYING QUESTION OF WHETHER MUNOZ HAD THE NECESSARY REASONABLE SUSPICION TO STOP THE [RELATOR] FOR A TRAFFIC VIOLATION."** (See COURT OF CRIMINAL APPEALS, PD-0238-11, Slip Op.)

FURTHERMORE, IT IS QUITE HIGHLY POSSIBLE, AND MORE LIKELY THAN NOT, ALL ARE OR WERE AWARE THE **TWO OFFICERS, DETECTIVE CESAR MUNOZ'S AND SIMON RAY PORTER'S BEING UNDER INVESTIGATION AND EVENTIALLY INDICTED FOR DRUG CRIMES AND/OR PERJURY, AND NOW CONVICTED.** (See, TAB 3, APPENDIX, "OFFICER ARRESTED ON PERJURY CHARGES," dated AUGUST 24, 2010, 12:00 am; See also, APPELLEE'S BRIEF, NO. 06-09-00225-CR, Received in the Court of Appeals Sixth District August 26, 2010, Texarkana, Texas, Debra Autrey, clerk). RELATOR'S mother, Glenda Robinson, attempted to retrieve the Daily Tribune print out from Tribune personnel, however, on first attempt a phone call was made to persons unknown and was denied any information about DETECTIVE CASAR MUNOZ and only after several attempts later was printed out OFFICER SIMON RAY PORTER'S information of ARREST WARRANT, INTERNAL AFFAIRS INVESTIGATION, FELONY CHARGE OF AGGRAVATED PERJURY, WITH RELEASE FROM THE POLICE DEPARTMENT OF MOUNT PLEASANT, TEXAS. The person whom OFFICER SIMON RAY PORTER issued FALSE STATEMENTS UNDER OATH IN A JURY TRIAL was RUTH ANN SHARPER, who happens to be RELATOR'S AUNT, the charge, "two indictments charging her with possession of marihuana and possession of a controlled substance." PORTER QUOTED A STATEMENT ASSUMEDLY MADE BY SHARPER AT THE TITUS JAIL **ON DECEMBER 9, 2009 APPROXIMATELY 2 MONTHS AFTER RELATOR'S JURY TRIAL TO-WIT PORTER TESTIFIED, SEPTEMBER 15/16, 2009.** Id.

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

D. The ABATED "FINDINGS OF FACT AND CONCLUSION OF LAW" omitting material facts relevant to the testimony given by MOUNT PLEASANT DETECTIVE CESAR MUNOZ AND POLICE OFFICER SIMON RAY PORTER questioning the lawfulness of RELATOR'S CONVICTION, **PRECISELY:**

DETECTIVE CESAR MUNOZ,too, was under investigation, indicted on FEDERAL DRUG CHARGES and too was released from the MOUNT PLEASANT POLICE DEPARTMENT, all of which is public information that this RELATOR is unable to retrieve, but was made aware of the investigation through APPELLATE ATTORNEY OF RECORD, L. Charles van Cleef, State Bar No. 00786305, P.O. Box 2432, 431 N. Center Street, Longview, Texas 75606-2432, Phone: (903) 248-8244; Fax: (903) 248-8249, prior to filing RELATOR'S APPEAL NO. 06-09-00225-CR, in the SIXTH DISTRICT COURT OF APPEALS in TEXARKANA, TEXAS, that was submitted JULY 23, 2010, not only to the COURT OF APPEALS, but also to, Charles C. Bailey, Titus County District Attorney, that surely was aware of the ongoing investigations of POLICE OFFICER SIMON RAY PORTER and/or DETECTIVE CESAR MUNOZ. (APPELLANT'S BRIEF, Id. at pg. 38).

This explanation clearly reveals the trial court JUDGES reluctance in the ABATED FINDINGS OF FACT AND CONCLUSION OF LAW to declare any findings of relevance to the traffic stop other than as stated in COURT OF CRIMINAL APPEALS, slip op., n. 3, "1. The Court **FINDS** that on August 25, 2008, Timothy Lee Robinson was stopped by Mt. Pleasant Police Department officers for a traffic violation." The COURT continues, "There were no **SPECIFIC FINDINGS OF FACT** relating to the **APPELLANT'S USE OF HIS TURN SIGNAL OR THE CHARACTER OF THE ROADWAY.** The **TRIAL COURT ALSO DID NOT MAKE A CREDIBILITY DETERMINATION AS TO MUNOZ'S TESTIMONY.** Moreover, **THERE WAS NO SPECIFIC CONCLUSION OF LAW** RELATING TO THE **UNDERLYING QUESTION OF** WHETHER MUNOZ HAD THE NECESSARY **REASONABLE SUSPICION TO STOP** THE APPELLANT **FOR A TRAFFIC VIOLATION.**" Id. at slip op. n. 3. The trial court JUDGE at the time of this ABATEMENT, and it would be within reason to say the DISTRICT ATTORNEY'S OFFICE, as well as a majority of the CITY OF MT. PLEASANT, would be reluctant to give either, DETECTIVE CESAR MUNOZ and/or POLICE OFFICER SIMON RAY PORTER, much if any credibility being made aware of the ongoing investigations into there assumed long standing DRUG INVOLVEMENT AND PERJURY TACTICS WITH ARRESTS TO PROVE SUCH INVOLVEMENT, THAT THE OFFICIALS IN MT. PLEASANT ARE QUITE AWARE OF.

**HOWEVER,** A REASONABLE PERSON might tend to question the DISTRICT ATTORNEY'S OFFICE as to just two days prior to filing APPELLEE'S BRIEF, AUGUST 24, 2010, with the ARREST OF THESE OFFICERS, KNOWING THEIR INVOLVEMENT AND TESTIMONY IN THIS CASE, **WHY WOULD THE DISTRICT ATTORNEY'S OFFICE CONTINUE TO PURSUE THIS CASE, UNLESS THEIR IS AN ALTERIOR MOTIVE, OR AGENDA WITHIN THEIR OFFICE,** FILING APPELLEE'S BRIEF AUGUST 26, 2010.

## 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

## THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

E. The RELEASE of HIRED APPELLATE ATTORNEY; L. Charles van Cleef, State Bar No. 00786305, P.O.Box 2432, 431 N. Center Street, Longview, Texas 75606-2432, Phone: 903-248-8244, Fax: 903-248-8249; and, the COURT'S APPOINTMENT of; Charles Mac Cobb, ATTORNEY-at-LAW, P.O.Box 1134, Mt. Pleasant, Texas 75456; for the precise issues to follow:

RELATOR hired under contract for the entire appellate process, until finality, the LEGAL REPRESENTATION OF, L. Charles van Cleef, for a specified sum of money.

Appellate Attorney L. Charles van Cleef submitted, on JULY 23, 2010, APPELLANT'S BRIEF. On AUGUST 24, 2010 the APPELLEE'S BRIEF was SERVED, VIA FAX NO.: 903-248-8249, on Charles Van Cleef, Van Cleef Law Office, P.C., P.O. Drawer 3267, Longview, Texas 75606.

On JANUARY 13, 2011, the COURT OF APPEALS reversed the conviction in an unpublished opinion. ROBINSON v STATE, NO.: 01-09-00134-CR (Tex. App. - Texarkana, delivered JANUARY 13, 2011). Neither party filed a motion for rehearing. The State's PETITION FOR DISCRETIONARY REVIEW was due on FEBRUARY 14, 2011. STATE'S PETITION FOR DISCRETIONARY REVIEW (PDR), Id. at pg. 2, Statement Of Procedural History.

APPELLATE ATTORNEY Charles Van Cleef was mailed a copy of PDR on FEBRUARY 14, 2011 the same day due, and without any notification for extentions of time, was not filed in the SIXTH COURT OF APPEALS until, FEBRUARY 22, 2011, and not filed in the COURT OF CRIMINAL APPEALS until MAY 03, 2011. STATE'S PDR, Id. at cover page, No. 06-09-00225-CR, PD-00238-11.

RELATOR having no knowledge of the PDR PROCESS taking place, no notification from APPELLATE ATTORNEY Charles Van Cleef, nor notification from either the court systems or the state, thereby, has to assume, as the PDR WAS FILED BY LISA C. McMINN'S STATE PROSECUTING ATTORNEY'S OFFICE by ASSISTANT STATE'S ATTORNEY, JOHN R. MESSINGER, Bar No.: 24053705, that the OFFICE OF CHARLES C. BAILEY, TITUS COUNTY DISTRICT ATTORNEY, 105 W. 1st STREET, STE. 102, MT. PLEASANT, TEXAS 75455-4462, HAD RECUSED THEMSELVES due to their knowledge of the INVESTIGATION AND PROSECUTION OF THE MT. PLEASANT POLICE DETECTIVE CESAR MUNOZ AND OFFICER SIMON RAY PORTER. Furthermore, this lack of RELATOR'S knowledge DENIED HIM DUE PROCESS FOR ANSWERING THE STATE'S PDR, SINCE APPELLATE ATTORNEY Charles Van Cleef failed to either file a response or notify this RELATOR of this PDR PROCESS, which would have clearly brought about a different outcome. Not to mention the UNTIMELY FILING OF THE STATE'S PDR WITHOUT KNOWN EXTENTION OF TIME TO FILE, THEREBY, SHOULD HAVE BEEN DECLARED OF NO FORCE OR EFFECT DUE TO UNTIMELY FILING.

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

E. The <u>RELEASE</u> of <u>HIRED APPELLATE ATTORNEY</u>; L. Charles van Cleef, State Bar No. 00786305, P.O. Box 2432, 431 N. Center Street, Longview, Texas 75606-2432, Phone: 903-248-8244, Fax:903-248-8249; and, the <u>COURT'S APPOINTMENT</u> of; Charles Mac Cobb, Attorney-at-LAW, P.O. Box 1134, Mt. Pleasant, Texas 75456; the precise issues to follow:

The RECORD is clear that HIRED APPELLATE ATTORNEY L. CHARLES van CLEEF; was NOTIFIED of the STATE PROSECUTING ATTORNEY'S intent to file a PDR on <u>FEBRUARY 14, 2011</u> (See STATE'S PDR, Id. at pg. 13, CERTIFICATE OF SERVICE); filed with SIXTH COURT OF APPEALS <u>FEBRUARY 22, 2011</u>, and COURT OF CRIMINAL APPEALS <u>MAY 03, 2011</u>; AWARE OF RELATOR'S IMPRISONMENT IN TDCJ-ID, thereby had a duty and obligation, had attorney of record made a decision not to file said response to the STATE'S PDR, to at least notify RELATOR of said decision to which RELATOR could have filed a response PRO-SE. However, this would have meant releasing said attorney of record from any further obligations under contract to perform, i.e. totality of the appeal process, appeal bound, PDR answer, SUPPLEMENTAL ANSWER ON REMAND, inter-alia.

The TRIAL COURT clearly ABUSED ITS DISCRETION in the release of HIRED APPELLATE ATTORNEY L. Charles van Cleef after ATTORNEYS FILING AND COURT GRANTING APPEAL BOND without any notification to, or response from RELATOR, by a hearing or otherwise, to allow RELATOR to interject the contractual obligations not yet performed, as agreed. This proceeding took place sometime in JULY OR AUGUST, with both, TRIAL COURT AND APPELLATE ATTORNEY fully aware of RELATOR'S prison confinement, thus the purpose for the APPEAL BOND. Furthermore, it cannot be said that APPELLATE ATTORNEY had been released before the due date of RELATOR'S PDR RESPONSE, had the contractual obligation been met between RELATOR AND APPELLATE ATTORNEY, said ATTORNEY would have withdrew sooner than JULY OR AUGUST to retrieve the remainder of his money placed into the **IOLTA TRUST ACCOUNT.**

For the reasons above RELATOR believes the TRIAL COURT ABUSED its DISCRETION, not holding a hearing, or giving notification of intent, to RELEASE HIRED ATTORNEY L. CHARLES van CLEEF who had been contractually hired to see the appeal process through to its completion, RELATOR'S understanding of said contract was to include PDR ANSWER, APPEAL BOND, INTER-ALIA. Had RELATOER been advised of release there would surely been an **OBJECTION ENTERED ON THE GROUNDS LISTED.**

COURT APPOINTED ATTORNEY upon RELATOR PRISON RELEASE, CHARLES MAC COBB, MADE **NO REPRESENTATION FOR RELATOR, NO ANSWER TO STATE SUPPLEMENT ON REMAND, FILED NOTHING, NONE !**

## III
### 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS
### THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

E. The <u>RELEASE</u> of <u>HIRED APPELLATE ATTORNEY</u>; L. Charles van Cleef, State Bar No. 00786305, P.O. Box 2432, 431 N. Center Street, Longview, Texas 75606-2432, Phone: 903-248-8244, Fax: 903-248-8249; and, the <u>COURT'S APPOINTMENT</u> of; Charles Mac Cobb, Attorney-at-LAW, P.O. Box 1134, Mt. Pleasant, Texas 75456; the precise issues to follow:

RELATOR not made aware of <u>HIRED APPELLATE ATTORNEY'S RELEASE</u> until <u>PRISON RELEASE ON APPEAL BOND</u>, as recalled sometime in SEPTEMBER or OCTOBER 2011, being brought before the TRIAL COURT JUDGE, was advised the need to obtain counsel. RELATOR questioned the TRIAL COURT JUDGE'S release on a contractually HIRED ATTORNEY by withdrawal through a COURT ORDER, TO NO AVAIL. RELATOR'S finances had been deminished through the recent imprisonment denying the ability to rehire an attorney, therefore, TRIAL COURT made an APPOINTMENT OF CHARLES MAC COBB.

APPOINTED ATTORNEY, CHARLES MAC COBB, in order to be efficient / effective counsel for this APPEAL PROCESS should have, at a very minimum, filed some form of response to the STATE SUPPLEMENTAL BRIEF ON REMAND. **PARTICULARLY**, to the ISSUE OF **"NO OBJECTION"** TO A **"CHAIN OF CUSTODY TESTIMONY BY WITNESSES, DETECTIVE RAY YOKEL AND KAREN SHUMATE, SPEAKING TO THE ISSUE OF HOW THE ENVELOPE (STATE'S EXHIBIT 2) PROCEDURELY CAME TO HOLD THE DRUGS IN QUESTION."** (SEE, **EXPLAINATION** herein, Id. at pgs 22-23, B. The refusal to revisit the pre-trial ruling on MOTION TO SUPPRESS in light of RE-LITIGATED TRIAL EVIDENCE; See also, RR V 3, P 23; 24-25; 28-29; and 105-112).

RELATOR **CLEARLY DENIED EFFECTIVE ASSISTANCE OF COUNSEL GUARANTEED UNDER, BOTH, THE TEXAS AND UNITED STATES CONSTITUTIONS,** THROUGH THEIR FAILURES TO ADDRESS EITHER THE PDR OR STATE SUPPLEMENTAL ON REMAND. **IT IS A WELL KNOWN FACT IF NOTHING IS FILED ON BEHALF OF A CERTAIN PARTY THE COURT'S JOB IS EASY, THEY RULE OFF THE ONLY DOCUMENTS AND ARGUMENTS THEREIN PRESENTED BEFORE THE COURT.** IN THE IGNORANCE OF THIS ISSUE THE RELATOR HAS AGAIN BEEN IMPRISONED DUE TO A LACK OF REPRESENTATION, QUESTIONING THE APPOINTMENT OF COUNSEL TO DO ABSOLUTELY **NOTHING**, CONSPIRACY TO CONVICT AND IMPRISON ?

F. RELATOR'S 11.07 APPLICATION FOR WRIT OF HABEAS CORPUS, PRECISELY:

RELATOR has clearly revealed the DENIAL OF EFFECTIVE REPRESENTATION OF COUNSEL starting with TRIAL ATTORNEY, HIRED APPELLATE COUNSEL AND THEN THE COURT APPOINTED ATTORNEY **TO DO NOTHING, WASTING TAX PAYERS MONEY TO ASSURE IMPRISONMENT AND AFFIRMATION TO A CONVICTION, DENYING RELATOR'S RIGHTS UNDER THE CONSTITUTIONS OF TEXAS AND THE UNITED STATES TO DUE PROCESS, COUNSEL REPRESENTATION, RIGHT TO ADDRESS GOVERNMENT OVERREACH ON UNLAWFUL TRAFFIC STOP BY OFFICERS, UNDER INVESTIGATION THEN, AND NOW CONVICTIONS OF PERJURY AND/OR DRUG CHARGES, MADE KNOWN TO ALL PARTIES.**

III

## 76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

## THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

F. RELATOR'S 11.07 APPLICATION FOR WRIT OF HABEAS CORPUS, PRECISELY:

On MARCH 15, 2014, RELATOR submitted his 11.07 APPLICATION FOR WRIT OF HABEAS CORPUS to the TITUS COUNTY DISTRICT CLERK to be forwarded to both the TITUS COUNTY DISTRICT ATTORNEY'S OFFICE and the 76th TRIAL COURT OF TITUS COUNTY for response to the two grounds presented, PRECISELY:

GROUND ONE: TRIAL COURT ERRED IN FAILING TO GRANT MOTION TO SUPPRESS; and,

GROUND TWO: DENIAL OF EFFECTIVE ASSISTANCE AS A DIRECT RESULT OF COUNSEL'S FAILURE

TO PRESERVE ERROR FOR REVIEW.

Accompanied with MEMORANDUM BRIEF.

The DISTRICT ATTORNEY'S OFFICE as well as the TRIAL COURT **REFUSED TO RESPOND WITH EITHER AN ANSWER AND/OR ORDER.** FORWARDING the 11.07 APPLICATION TO THE COURT OF CRIMINAL APPEALS.

On APRIL 24, 2014 the 11.07 APPLICATION was received and presented to THE COURT OF CRIMINAL APPEALS, WR-80, 739-02 / TRIAL COURT NO. CR16,079B.

On JUNE 11, 2014 the 11.07 APPLICATION was **DENIED WITHOUT WRITTEN ORDER.**

Upon further review of the documentation available to this RELATOR, there is a contention as previously stated herein at pages 22-23 and 38 at PARTICULARLY, stating the **"NO OBJECTION"** some 87 pages into the trial hearing **WAS IN REGARD TO THE CHAIN OF CUSTODY TESTIMONY BEING GIVEN BY STATE'S WITNESSES, SPECIFICALLY, DETECTIVE RAY YOKEL and KAREN SHUMATE.** See also, RR V 3, P 105 - 112. Compare to RR v 3, P 23, 24 - 25. **"NOT A PRESENTATION OF EVIDENCE THAT HAD BEEN PRESENTED AT BEGINNING OF TRIAL WITH OBJECTION AS HEARSAY AS "..THE STATE WAS ONCE AGAIN ALLOWED TO PLACE THE ALLEGED WRITTEN STATEMENT OF THE APPELLANT 'AND EVIDENCE' DESPITE COUNSEL'S OBJECTION (HEARSAY) ..."** RR V 3, P 23, 24-25, Id.

RELATOR does not have access to the entire record of this case due to confinement. HOWEVER, with the documentation acquired, if it is not the contention laid out above, it is as the GROUNDS in RELATOR'S 11.07 APPLICATION SUGGEST, SPECIFICALLY; When the complained of evidence was offered, trial counsel, rather than urge his pre-trial motion to suppress, stated, NO OBJECTION, THEREBY THE APPEAL COURT REFUSED TO REVISIT THE ERROR AS THE ERROR WAS NOT PRESERVED. Likewise, the denial of the MOTION TO SUPPRESS was in error. This failure to properly preserve the error for review to the APPEAL COURT would have obviously brought about a different proceeding, had counsel objected. However, RELATOR does not concede counsel **STATED NO OBJECTION TO EVIDENCE.**

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

F. RELATOR 'S 11.07 APPLICATION FOR WRIT OF HABEAS CORPUS, PRECISELY:

At the conclusion of the SUPPRESSION HEARING the COURT determined that probable cause existed for the stop and that the defendant consented to the search of the vehicle. RR, V 2, P 42, Ibid. The COURT indicated that it would prepare findings of fact and conclusions to be filed in this case  the undersigned finds no evidence that such was done). Ibid. APPELLANT'S BRIEF, Id. at page 12.

The SIXTH COURT OF APPEALS **ABATED THE APPEAL AND ORDERED THE TRIAL COURT TO MAKE A FINDINGS OF FACT** and overruled RELATOR'S THIRD POINT OF ERROR AS MOOT. SIXTH COURT OF APPEALS, MEMORANDUM OPINION, Id. at page 2, f.n. 1. **NOTE NO MENTION OF CONCLUSION OF LAW.** Id. REVERSED AND REMANDED FOR NEW TRIAL.

After remand, the **ONLY FINDING RELEVANT TO THE TRAFFIC STOP STATED:** "1. The COURT **FINDS** that on August 25, 2008, Timothy Lee Robinson was stopped by Mt. Pleasant Police department officers for a traffic violation." There were **NO SPECIFIC FINDINGS OF FACT RELATING TO THE APPELLANT'S USE OF HIS TURN SIGNAL OR THE CHARACTER OF THE ROADWAY.** The trial court **ALSO DID NOT MAKE A CREDIBILITY DETERMINATION AS TO MUNOZ'S TESTIMONY.** Moreover, **THERE WAS NO SPECIFIC CONCLUSION OF LAW** relating to the underlying **QUESTION OF WHETHER MUNOZ HAD THE NECESSARY REASONABLE SUSPICION TO STOP APPELLANT FOR A TRAFFIC VIOLATION.** TEXAS COURT OF CRIMINAL APPEALS, Slip Opinion B, PD-0238-11, f.n. 3, Id.

There are some very clear and specific reasons why both the TRIAL COURT JUDGE, at the ABATEMENT, and the TITUS COUNTY DISTRICT ATTORNEY, CHARLES C. BAILEY, **REFUSE TO ADDRESS THE CONTROVERTED, PREVIOUSLY UNRESOLVED FACTS MATERIAL TO THE LEGALITY OF THE RELATOR'S CONFINEMENT.** SPECIFICALLY;

BOTH, HON. JIMMY LEON WHITE, TRIAL JUDGE, AND CHARLES C. BAILEY, DISTRICT ATTORNEY, are, or were at time of trial and abatement, residents of MT. Pleasant. As residents it is highly likely both are, or were, **AWARE OF THE CHARACTER OF THE ROADWAY, NINTH STREET AND MARGARET DRIVE, AS WERE/ARE DETECTIVE CESAR MUNOZ AND OFFICER SIMON RAY PORTER.** NINTH STREET AND MARGARET DRIVE ARE A **TWO LANE ROADWAY, TRAFFIC ON ONE SIDE OF THE CURVED BLACKTOP BACK STREET, GOING ONE DIRECTION, ON THE OTHER SIDE GOING THE OPPOSITE DIRECTION, THERE IS NO MERGE LANE, TO SCOOT OVER INTO ANOTHER LANE, IT'S A CURVE "SIMPLY FOLLOWING THE 'DIRECT COURSE' OF THE ROAD AND OF THE TRAFFIC ON THAT WINDING ROAD."** MAHAFFEY v STATE, 316 SW 3d 633, 638 - 643 (Tex. Crim. App. 2010; see also SIXTH COURT OF APPEALS, REVERSE AND REMAND OPINION, AT page 7, Id.)(See also, DEFENSE EXHIBIT 1; and TAB 2, RELATOR'S SUPPLEMENTAL DIAGRAM NINTH & MARGARET CONFIG.)

III

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

F. RELATOR'S 11.07 APPLICATION FOR WRIT OF HABEAS CORPUS, PRECISELY:

Whether a driver is required to activate a turn signal **IS A QUESTION OF LAW FOR THE TRIAL JUDGE TO DECIDE.** It is a question of statutory, **OR ORDINANCE,** interpretation and application of the **LAW TO THE FACTS. THE JUDGE DECIDES THE APPLICATION OF LAW TO FACTS** (APPELLEE BRIEF, page 16 of 25).

TEXAS CODE CRIMINAL PROCEDURE (TCCP) ART. 11.07 b, in pertinent part states, "... the attorney representing the state...shall answer the application not later than the 15th day after the date the copy of the application is received..."

TCCP ART. 11.07 c, in pertinent part states, "Within 20 days of the expiration of the time in which the state is allowed to answer, it shall be the duty of the convicting court to determine whether there are controverted, previously unresolved facts material to the legality of the applicant's confinement."

The STATE can't have it both ways, either the ATTORNEY OF RECORD at trial failed to preserve the ERROR by stating "NO OBJECTION" as RULED BY THE SIXTH COURT OF APPEALS, OR, as RELATOR STATES in the 11.07 APPLICATION, RELATOR WAS **DENIED EFFECTIVE ASSISTANCE OF COUNSEL "FOR THE FAILURE TO PRESERVE THE ERROR FOR APPEAL PURPOSES."**

RELATOR further asserts, under FEDERAL LAW this circumstantial evidence, of record, herein stated, attached hereto, and through the actions of the participants stated herein, is sufficient to prove the existance of **"A CONSPIRACY TO UNLAWFULLY AFFIRM THE CONVICTION TO CONFINE RELATOR."** FURTHERMORE, the **AGREEMENT IS INFERRED** from the concert actions among the alleged participants, i.e., DISTRICT ATTORNEY'S OFFICE, TRIAL JUDGE, TRIAL ATTORNEY, HIRED APPELLATE ATTORNEY, APPOINTED APPELLATE ATTORNEY UPON RELEASE ON APPEAL BOND, ET.AL., AND ARE VOLUNTARY PARTICIPANTS AS INFERRED FROM THE COLLATION OF CIRCUMSTANCES (18 USCA § 371; see also, US v THON, 917 F 2d 170, Id.).

The PARTICIPANTS hereof are criminally responsible for **"THE CONSPIRACY"** while acting with the intent to promote and/or assist **"THE CONSPIRACY ALLEGED."** PARTICIPANTS have solicited, encouraged, directed, aided, and/or attempted to aid the OTHER PARTICIPANTS in the commission of **SAID CONSPIRACY;** and/or having **A LEGAL DUTY TO PREVENT** the commission of **SAID CONSPIRACY PARTICIPANTS** did act with intent to promote and/or assist **SAID CONSPIRACY,** THEREBY, PARTICIPANTS FAILED to make a reasonable effort to prevent the **COMMISSION OF SAID CONSPIRACY** (Tex. Pen. Code (TPC) § 7.02).

RELATOR'S FINAL ASSERTION, it is no defense that THE PARTICIPANTS belong to a

76th JUDICIAL DISTRICT COURT OF TITUS COUNTY, TEXAS

THE TRIAL COURT ERRED IN ITS ANALYSIS CONCERNING:

F. RELATOR'S 11.07 APPLICATION FOR WRIT OF HABEAS CORPUS, PRECISELY:

CLASS OF PERSONS that by definition of the offense IS LEGALLY INCAPABLE OF COMMITTING **SAID CONSPIRACY IN AN INDIVIDUAL CAPACITY**; and/or that SAID PARTICIPANTS **FOR WHOSE CONDUCT THE OTHER PARTICIPANTS IS CRIMINALLY RESPONSIBLE... "IS IMMUNE FROM PROSECUTION"** (TPC § 7.03).

IV

THE COURT OF APPEALS SIXTH APPELLATE DISTRICT OF TEXAS, AT TEXARKANA

THE SIXTH COURT OF APPEALS ERRED IN ITS ANALYSIS CONCERNING:

A. APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND SUBMITTED BY TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, PRECISELY:

1) THE ATTORNEY FOR APPELLEE was to be, and as revealed on cover of APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND, THE STATE OF TEXAS, STATE PROSECUTING ATTORNEY LISA C. McMINN AND ASSISTANT STATE'S ATTORNEY JOHN R. MESSINGER, the attorney's who had filed STATE'S PETITION FOR DISCRETIONARY REVIEW.

If there was to be any further filings, such as APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND it was to be filed by the ATTORNEY FOR APPELLEE, i.e. LISA Mc MINN and/or JOHN R. MESSINGER, for the fact of the matter being; a) it was to be considered HYBRID – REPRESENTATION, and any filings as such were to be as nothing for review before the COURT, THEREBY HAVING NO FORCE OR EFFECT; and, b) the TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, in light of DETECTIVE CESAR MUNOZ AND OFFICER SIMON RAY PORTER being INDICTED AND CONVICTED OF PERJURY AND DRUG OFFENSES, in said county was to RECUSE THEMSELVES from any other proceedings in this case, especially, when the OFFICER'S were the ARRESTING OFFICER'S TESTIFYING for the TITUS COUNTY DISTRICT ATTORNEY OFFICE, WHO WERE BEING INVESTIGATED AND EVENTUALLY INDICTED AND CONVICTED OF PERJURY AND DRUG OFFENSES (see TAB 3, OFFICER ARRESTED ON FELONY PERJURY CHARGES, OFFICER SIMON RAY PORTER; DETECTIVE CESAR MUNOZ can be found in MT. PLEASANT TRIBUNE PAPER, however, upon request the staff made a phone call about release and refused to print out on CESAR MUNOZ).

2) Based on APPELLANT'S BRIEF, due to incarceration RELATOR has no access to complete record, the TITUS COUNTY DISTRICT ATTORNEY OFFICE has again MISCHARACTERIZED THE FACTS TO OBTAIN A FAVORABLE RULING FROM THE COURT. APPELLANT'S BRIEF page 13, at C. Trial Testimony, states, "..., the State was once again allowed to place the alleged **WRITTEN STATEMENT OF THE APPELLANT** and **EVIDENCE DESPITE DEFENSE COUNSEL'S OBJECTION**

THE COURT OF APPEALS SIXTH APPELLATE DISTRICT OF TEXAS, AT TEXARKANA

THE SIXTH COURT OF APPEALS ERRED IN ITS ANALYSIS CONCERNING:

A. APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND SUBMITTED BY TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, PRECISELY: (#2, continuation)

(hearsay);..." RR V 3, P 23, 24 - 25, Ibid. **THE ENVELOPE** in which the suspected cocaine was placed (State's Exhibit 2) and a DVD (State's Exhibit 3) were **ALSO ADMITTED**, without objection. RR V 3, P 28 - 29, Ibid. This RECORD REVEALS at the beginning of trial the **WRITTEN STATEMENT AND EVIDENCE(the cocaine) WAS CLEARLY INTRODUCED DESPITE COUNSEL'S OBJECTION (HEARSAY).**

In APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND at page 7 of 12, the TITUS COUNTY DISTRICT ATTORNEY OFFICE states, "Subsequently, the State offered as **STATE'S EXHIBIT 2** the controlled substance, the subject of Robinson's objection in his motion to suppress. RR V 3, P 110, L 22 - P 112, L 8. With the benefit of Munoz's characterization of the intersection, counsel for Robinson asserted, 'No Objection[,]' to the admission of **STATE'S EXHIBIT 2.** RR V 3, P 112, L 10. The evidence was received. RR V 3, P 112, L 11." These 3 sentences are very misleading, specifically, at the trial the evidence (the controlled substance)had been removed from **THE ENVELOPE (STATE'S EXHIBIT 2** in which the suspected cocaine was placed, Id. at APPELLANT'S BRIEF, page 13, and stated herein above)(REFERENCING SENTENCE 1, "Subsequently,..."). Furthermore, at this point in the trial STATE'S EXHIBIT 2 (THE ENVELOPE) RR V 3, P 105 - 112, **IS TESTIMONY FOR THE CHAIN OF CUSTODY OVER "THE ENVELOPE" (STATE'S EXHIBIT 2),** THE NATURE OF THE CONTRABAND, and CONTRABAND WEIGHT, BY KAREN SHUMATE, THE RECIPIENT OF **THE ENVELOPE (STATE'S EXHIBIT 2)** in which the suspected cocaine had been placed for shipment to THE TEXAS DEPT. OF PUBLIC SAFETY CRIME LAB from DETECTIVE RAY YOKEL, who had placed the contraband in **THE ENVELOPE (STATE'S EXHIBIT 2)** and " CHAIN OF CUSTODY WITNESSES."(DETAILED HEREIN at pages 22, 23, and 27); REFERENCE TO SENTENCE 2, "With the benefit...", **THE "NO OBJECTION[,]"** was to **"THE ENVELOPE (STATE'S EXHIBIT 2) AS TO CHAIN OF CUSTODY TESTIMONY.";** REFERENCE TO SENTENCE 3, "**THE EVIDENCE WAS RECEIVED. RR V 3, P 112, L 11." WAS THE ENVELOPE (STATE'S EXHIBIT 2) AFTER THE CHAIN OF CUSTODY TESTIMONY,** THAT WAS THE EVIDENCE RECEIVED ! **DISTRICT ATTORNEY INTRODUCED EVIDENCE AND STATEMENT AT RR V 3, p 23-25.**

**WRITTEN STATEMENT AND EVIDENCE ENTERED AT RR V 3, P 23, 24 - 25. WITH "OBJECTION."**

**PROCEDURAL CHAIN OF CUSTODY TESTIMONY OVER "THE ENVELOPE (STATE'S EXHIBIT 2)"** WITH "THE ENVELOPE RECEIVED AS EVIDENCE TO CHAIN OF CUSTODY," AT RR V 3, P 112. WITHOUT "OBJECTION TO CHAIN OF CUSTODY TESTIMONY AND 'THE ENVELOPE' PREPARATION AND RECEIPT PROCEDURES." 87 pages INTO TRIAL BEFORE INTRODUCTION OF EVIDENCE ?

IV

THE COURT OF APPEALS SIXTH APPELLATE DISTRICT OF TEXAS, AT TEXARKANA

THE SIXTH COURT OF APPEALS ERRED IN ITS ANALYSIS CONCERNING:

A. APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND SUBMITTED BY TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, PRECISELY:

3) Again, in APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND at page 7 of 12, the TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, in REFERENCE TO MISCHARACTERIZED SENTENCE 1, SPECIFICALLY STATING; "Subsequently, the State offered as **STATE'S EXHIBIT 2 'THE CONTROLLED SUBSTANCE,'** the subject of Robinson's objection in his motion to suppress." This is an **"INTENT TO DECEIVE AND WITH THE KNOWLEDGE THIS IS TESTIMONY OF THE CHAIN OF CUSTODY WITH 'STATE'S EXHIBIT 2' BEING 'THE ENVELOPE' NOT 'THE CONTROLLED SUBSTANCE' OFFERED AND PLACED AS EVIDENCE."** This is a false statement made by a DISTRICT ATTORNEY who under oath of office is sworn to uphold the truth and dignity for that office. Furthermore, this FALSE STATEMENT was made during and in connection with this official proceeding and has affected the course and outcome of this official proceeding, the statement was/is clearly material to this outcome. See, TEXAS PENAL CODE (TPC) §§§. 37.02, 37.03, and 37.04.

This has become a pattern, practice and procedure of the TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, particularly with the perjured testimony given by MT. PLEASANT DETECTIVE CESAR MUNOZ, WHO CAME UNDER INVESTIGATION WITH PARTNER, OFFICER SIMON RAY PORTER, ON PERJURY AND DRUG CHARGES, BOTH OF WHOM HAVE NOW BEEN CONVICTED FOR SAID CHARGES. See TAB C, OFFICER SIMON PORTER FELONY ARREST FOR PERJURY.

DETECTIVE MUNOZ AND OFFICER PORTER ARE ANYTHING BUT CREDIBLE OR TRUSTWORTHY revealed through their testimony at trial, particularly:

MUNOZ TESTIMONY: (APPELLANT'S BRIEF at page 14 and 15) "When he stopped Appellant in his driveway, Appellant immediately exited (on the driver's side). Ibid. at RR V 3, P 44. The **PASSENGERS ALSO QUICKLY EXITED** on the passenger size(sic)(where the contraband was found). Ibid. **NOW COMPARE,**

PORTER TESTIMONY: Detective (Sic) Porter,...,testified...,that the Appellant immediately exited the vehicle when he stopped and began to walk away, and that Appellant was immediately placed in handcuffs. Ibid. at RR V 3, P 91-92. He **TESIFIED THAT THE VEHICLE OCCUPANTS WERE THEN "REMOVED FROM THE CAR."** Ibid. at RR V 3, P 93.

MUNOZ TESTIMONY: ...testified that the Appellant **ADMITTED OWNERSHIP OF THE COCAINE ON VIDEO** in Detective Porter's patrol car, Ibid. at RR V 3, P 50, 57-58, and **THAT NO OTHER PERSON CLAIMED OWNERSHIP,** Ibid at RR V 3, P 50. MUNOZ **HAD TO ADMIT, IN LIGHT OF THE VIDEO,** that Appellant **INITIALLY SAID THAT "ITS (THE CONTRABAND) NOT MINE."** Ibid. RR V3, P75.

## THE COURT OF APPEALS SIXTH APPELLATE DISTRICT OF TEXAS, AT TEXARKANA

### THE SIXTH COURT OF APPEALS ERRED IN ITS ANALYSIS CONCERNING:

A. APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND SUBMITTED BY TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, PRECISELY: (#3 continued).

FURTHERMORE as to the statement, .."**NO OTHER PERSON CLAIMED OWNERSHIP.**"(OF CONTRABAND): MUNOZ WAS REQUIRED TO find the portion of the video wherein Detective Porter (who transported the Appellant from the arrest in a patrol car) that **"SHE SAID, 'NO, IT'S MINE.**" Ibid. RR V 3, P 75. The **ONLY FEMALE AT THE SCENE...WHO EXITED THE VEHICLE ON THE SIDE WHERE THE COCAINE WAS FOUND.** Id.

PORTER TESTIMONY; He acknowledged that he told Appellant that **MS WILLIAMS DID, IN FACT, CLAIM OWNERSHIP.** Ibid. RR V 3, P 101.

LAKISHA WILLIAMS TESTIMONY: She told the officers **NOT TO TAKE THE APPELLANT TO JAIL AND, INSTEAD, "TAKE ME. IT'S (THE CONTRABAND) MINE.**" Ibid. RR V3, P 127.

OFFICER NICHOLS TESTIMONY: He **NEVER HEARD THE APPELLANT STATE THE CONTRABAND BELONGED TO HIM.** Ibid. RR V 3, P 157. He **WAS AWARE THAT MS WILLIAMS CLAIMED THAT THE CONTRABAND BELONGED TO HER.** Ibid. RR V 3, P 158.

It is made clear by the testimonies of; OFFICER SIMON RAY PORTER; OFFICER NICHOLS; and LAKISHA WILLIAMS; that at the scene of arrest LAKISHA WILLIAMS had **"ADMITTED OWNERSHIP OF THE COCAINE,**" therefore, MUNOZ'S TESTIMONY **"THAT NO OTHER PERSON CLAIMED OWNERSHIP," was** made with the knowledge of the statements meaning as an intentional deception under oath, during and in connection with the official proceeding of the trial, clearly the statement was material and could have affected the course and/or outcome of the trial before the jury. TPC §§ 37.02, 37.03, 37.04. PERJURY / MATERIALITY.

While MUNOZ retracted his false statement before the completion of his testimony it was not done until it became manifest that the falsity of the statement was exposed by way of the video (STATE'S EXHIBIT 3), during and in connection with the official proceeding of trial before jury, under oath. TPC § 37.05, RETRACTION.

This was but a continuation of false testimony in the official proceeding by MUNOZ that began at the SUPPRESSION HEARING in which MUNOZ was the lone witness, SPECIFICALLY:

On SEPTEMBER 15, 2009, the TRIAL COURT held a SUPPRESSION HEARING. RR V 2, P 1. One witness tesified – CESAR MUNOZ. RR V2, P 1 – 41. Officer Munoz testified, at the hearing on the motion to suppress, he observed the vehicle ROBINSON was driving "failed to make a --- use **THEIR TURN SIGNAL** at the time when **IT TURNED ONTO** MARGARET FROM NINTH." (DISTRICT ATTORNEY PREPARATORY STATEMENT)(SIXTH COURT OF APPEALS, ORIGINAL MEMORANDUM OPINION, No. 06-09-00225-CR, at page 6, Id.).

## IV

THE COURT OF APPEALS SIXTH APPELLATE DISTRICT OF TEXAS, AT TEXARKANA

THE SIXTH COURT OF APPEALS ERRED IN ITS ANALYSIS CONCERNING:

A. APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND SUBMITTED BY TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, PRECISELY: (#3 continued)

At the SUPPRESSION HEARING, the defense showed MUNOZ a map, which MUNOZ described as incorrect. When asked, "DOES NINTH STREET **CURVE INTO** MARGARET DRIVE ?" MUNOZ RESPONDED, **"YES IT DOES**, but the way that indicates is incorrect to the actual way the street is..." According to MUNOZ, the defense exhibit was incorrect, "[b]ecuase in [DEFENSE EXHIBIT 1], East Eighth does not run into MARGARET, and then you've got East Ninth, and they run parallel to each other." SIXTH COURT OF APPEALS, supra, Id. at page 10-11.

The record also contains **EVIDENCE** that the **TRAFFIC FROM NINTH STREET 'DOES MERGE ONTO'** MARGARET DRIVE. The defense introduced a map **THAT SUGGESTS NINTH STREET 'MERGES' WITH MARGARET DRIVE.** The defense exhibit appears to be photocopied from a commercial atlas. supra, at 10, Id.

At TRIAL, MUNOZ testified Robinson **FAILED TO SIGNAL A TURN** at the intersection of NINTH AND MARGARET in Mount Pleasant, Texas. **MUNOZ ADMITTED** EAST NINTH STREET and MARGARET DRIVE **MERGE AT THEIR INTERSECTION.** supra, at 10, Id.

While the STATE PROSECUTING ATTORNEY in the STATE'S PETITION FOR DISCRETIONARY REVIEW (PDR) makes their attempt to clean up the **PERJURED STATEMENT OF MUNOZ AS TO THE** USE OF THE TERM **"MERGE"** SPECIFICALLY STATING:

"TERMS USED **BY THE WITNESSES** DO NOT APPEAR TO BE USED IN ANY TECHNICAL SENSE. FOR EXAMPLE, THERE IS NO INDICATION THAT THE OFFICER MEANT 'MERGE' AS THIS COURT USED IT IN MAHAFFEY." PDR AT 8, f.n. 3, Id. see also TAB 2, RELATOR'S SUPPLEMENTAL DAIGRAM OF NINTH STREET AND MARGARET DRIVE CONFIGURATION, Id.

**HOWEVER, THE SIXTH COURT OF APPEALS' USE OF THE TERM "MERGE" DID APPEAR TO BE IN A TECHNICAL SENSE AND AS AN INDICATION THAT THE OFFICER MEANT "MERGE" AS THE COURT OF CRIMINAL APPEALS USED IT IN MAHAFFEY.** ESPECIALLY, when it continues from Slip. Op. 10, stating; The defense introduced a map showing that Ninth and Margaret are "indistinguishable from a single road except for the assigned names." Slip. Op. at 16. Officer Munoz did not challenge the map's depiction of the intersection of Ninth and Margaret. Slip. Op. at 16. Appellant's girlfriend confirmed that Ninth **CURVES INTO** Margaret without a stop or yield sign. Slip. Op. at 11. PDR at 8, Id.

Even THE STATE PROSECUTING ATTORNEY in the PDR concedes, "In short, the physical description of how Ninth and Margaret **MEET WAS DEPICTED IN A MAP THAT WAS CORROBORATED BY AT LEAST ONE WITNESS "AND CONTRADICTED BY NONE.'"** PDR at 8, Id.

The TITUS COUNTY DISTRICT ATTORNEY is in direct violation of DUE PROCESS CLAUSE of the 14th Amendment, Prosecutorial Misconduct, known intentional use of false statements.

THE COURT OF APPEALS SIXTH APPELLATE DISTRICT OF TEXAS, AT TEXARKANA

THE SIXTH COURT OF APPEALS ERRED IN ITS ANALYSIS CONCERNING:

A. APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND SUBMITTED BY TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, PRECISELY: (#3 continued)

When the STATE PROSECUTING ATTORNEY'S OFFICE, in AUSTIN, TEXAS, filed a PDR on behalf of DAVID COLLEY, TITUS COUNTY ASSISTANT DISTRICT ATTORNEY of MOUNT PLEASANT, TEXAS, it was to be for RECUSAL PURPOSES explained herein at page 42 (A)(1)(b). HOWEVER, the STATE PROSECUTING ATTORNEY by filing the PDR then was to become the ATTORNEY FOR THE TITUS COUNTY DISTRICT ATTORNEY OFFICE with **ANY FUTURE FILINGS** to be performed by STATE PROSECUTING ATTORNEY OFFICE, in AUSTIN, and **ANY FUTURE FILINGS BY THE TITUS COUNTY DISTRICT ATTORNEY'S OFFICE WAS TO BE CONSIDERED "HYBRID — REPRESENTATION**, as explained herein at page 42 (A)(1)(a). See PDR, APPEAL FROM TITUS COUNTY, PD-0238-11, No. 06-09-0025-CR, February 22, 2011, COURT OF CRIMINAL APPEALS filied MAY 03, 2011; see also, APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND, filed NOVEMBER 19, 2012.

FURTHERMORE, the TITUS COUNTY DISTRICT ATTORNEY has with the INTENT TO DECEIVE AND KNOWLEDGE OF STATEMENTS FALSITY GIVEN UNDER OATH MADE DURING AND IN CONNECTION WITH AN OFFICIAL PROCEEDING, has contrived a conviction through the pretense of a trial which in truth was used as a means to deprive this RELATOR OF LIBERTY through the said deception of both the trial court and jury by said presentation of testimony known to be perjured by OFFICER'S KNOWN TO BE UNDER INVESTIGATION, INDICTMENT, ARREST, WITH CONVICTIONS JUST DAYS BEFORE FILING APPELLEE'S BRIEF with the SIXTH COURT OF APPEALS, AUGUST 26, 2010, COMPARE TO ATTACHMENT TAB 3, OFFICER ARRESTED ON FELONY PERJURY CHARGE, with RELATOR UNABLE to obtain CESAR MUNOZ'S ARREST FOR FELONY DRUG CHARGES.

With the TITUS COUNTY DISTRICT ATTORNEY'S known use of perjured testimony for the configuration of the assumed intersection of NINTH STREET and MARGARET DRIVE (which determined if a signal was necessary) by two officers, particularly, DETECTIVE CESAR MUNOZ and OFFICER SIMON RAY PORTER, who were under investigation, indicted, arrested, and convicted of felony perjury and drug charges is EXCULPATORY EVIDENCE THE TITUS COUNTY DISTRICT ATTORNEY'S OFFICE **HAD A DUTY TO DISCLOSE TO THE DEFENSE FOR WHICH THE STANDARD OF MATERIALITY GAVE RISE TO SAID DUTY.** Those determinations were very relevant on whether the officer could have reasonably believed such a signal was required and the STATE WAS RELIEVED of establishing that the detention was reasonable. See OURSBOURN v. STATE, 288 SW 3d 65, 70 (Tex. App. - HOUSTON [1st Dist.] 2009, no pet.)(finding egregious harm because State was relieved of burden of establishing voluntariness of statement). There is a reasonable likelihood that this false testimony could have effected the judgement of the jury. AGURS, 427 US at 103, 96 S CT at 2397. The jury

IV

THE COURT OF APPEALS SIXTH APPELLATE DISTRICT OF TEXAS, AT TEXARKANA

THE SIXTH COURT OF APPEALS ERRED IN ITS ANALYSIS CONCERNING:

A. APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND SUBMITTED BY TITUS COUNTY DISTRICT ATTORNEY'S OFFICE, PRECISELY:  (#3 continued)

was unaware that any evidence obtained as a result of an illegal detention could not be considered for any purpose. See ORIGINAL SIXTH COURT OF APPELAS, MEMORANDUM OPINION, No. 06-09-00225-CR, at page 21; See herein throughout.

AUTHORITIES

Evidence tainted by unlawful police action is traditionally barred as fruit of the poisonous tree. See SEGURA v UNITED STATES, 468 US 769, 804 (1984); WONG SUN v UNITED STATES, 468 US 471 (1963). Assuming the detention was illegal, there is a clear causal connection between the detention and the discovery of the drugs. The State does not allege that the discovery of the drugs or Robinson's subsequent confession was sufficiently attenuated from the alleged illegal detention to purge the taint of the alleged illegal detention. BROWN v ILLINIOS, 422 US 590 (1975); BELL v STATE, 724 SW 2d 780 (Tex. Crim. App. 1986). ORIGINAL SIXTH COURT OF APPEALS, supra, at 21, Id.

In U.S. v AGURS, 427 US 97, 96 S Ct 2392, 49 L Ed 2d 342 (1976) the SUPREME COURT was called to determine whether THE PROSECUTOR HAS A DUTY in absense of specific request TO DISCLOSE EXCULPATORY EVIDENCE TO THE DEFENSE, and if so WHAT STANDARD OF MATERIALITY GIVES RISE TO THAT DUTY. AGURS, 427 US at 107, 96 S Ct at 2399. To resolve the issue the COURT RECOGNIZED 3 **STANDARDS OF MATERIALITY. RELATOR'S INTEREST LIES IN 1st STANDARD.**

FIRST, in the case of a PROSECUTOR'S KNOWING USE OF PERJURED TESTIMONY, **THE CONVICTION WILL BE REVERSED "IF THERE IS ANY REASONABLE LIKELIHOOD THAT THE FALSE TESTIMONY COULD HAVE EFFECTED THE JUDGEMENT OF THE JURY."** AGURS, 427 US at 103, 96 S Ct at 2397. RELATOR has revealed this PERJURED / FALSE TESTIMONY throughout the record available, and shown herein throughout.

The holding in BRADY requires disclosure only of evidence that is both favorable to the accused and material either to guilt or to punishment. BAGLEY, 478 US at 674, 105 S Ct 3379; BRADY, 373 US ___, 83 S Ct ____.

In order to invoke the BRADY DOCTRINE the accused must present evidence that: 1) the **PROSECUTION SUPPRESSED OR WITHHELD EVIDENCE;** 2) this **EVIDENCE WOULD HAVE BEEN FAVORABLE TO THE ACCUSED;** and, 3) this **EVIDENCE WOULD HAVE BEEN MATERIAL TO THE ACCUSED'S DEFENSE.** MOORE v ILL., 408 US 786, 794-95, 92 S Ct 2562, 2567-68, 33 L Ed 2d 706 (1972); MULLEN v STATE, 722 SW 2d 808, 815. **WHILE THE ADMISSION OF PREVIOUSLY UNDISCLOSED EVIDENCE IS REVERSIBLE ERROR.**

IV

THE COURT OF APPEALS SIXTH APPELLATE DISTRICT OF TEXAS, AT TEXARKANA

THE SIXTH COURT OF APPEALS ERRED IN ITS ANALYSIS CONCERNING:

A. APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND SUBMITTED BY TITUS COUNTY DISTRICT ATTORNEY'S
   OFFICE, PRECISELY:   (#3 continued)

This ruling is an extention of MOONEY v HOLOHAN, 294 US 103, 112, 55 S Ct 340, 342, 79
L Ed 791, where the (SUPREME) COURT RULED ON WHAT NON - DISCLOSURE BY A PROSECUTOR
VIOLATES DUE PROCESS.

It is a requirement that cannot be deemed to be satisfied by mere notice and hearing
if a STATE HAS CONTRIVED A CONVICTION THROUGH THE PRETENSE OF A TRIAL WHICH IN TRUTH
IS USED AS A MEANS OF DEPRIVING A DEFENDANT OF LIBERTY THROUGH DELIBERATE DECEPTION OF
COURT AND JURY BY THE PRESENTATION OF TESTIMONY KNOWN TO BE PERJURED. Such a contrivance
by A STATE TO PROCURE A CONVICTION AND IMPRISONMENT IS AS INCONSISTENT WITH RUDIMENTARY
DEMANDS OF JUSTICE AS IS THE OBTAINING OF A LIKE RESULT BY INTIMIDATION.

In PYLE v KANSAS, 317 US 213, 215-16, 63 S Ct 177, 178, 87 L Ed 214 THE U.S. SUPREME
COURT phrased THE RULE IN BROADER TERMS:
"PETITIONER'S PAPERS ARE INEXPERTLY DRAWN, BUT THEY DO SET FORTH ALLEGATIONS THAT HIS
IMPRISONMENT RESULTED FROM PERJURED TESTIMONY, KNOWINGLY USED BY STATE AUTHORITIES TO
OBTAIN HIS CONVICTION AND FROM THE DELIBERATE SUPPRESSION BY THOSE SAME AUTHORITIES OF
EVIDENCE FAVORABLE TO HIM. These allegations SUFFICIENTLY CHARGE A DEPRIVATION OF
RIGHTS GUARANTEED BY THE FEDERAL CONSTITUTION AND IF PROVEN WOULD ENTITLE PETITIONER
TO RELEASE FROM HIS PRESENT CUSTODY." MOONEY v HOLOHAN, 294 US 103, 55 S Ct 340, 79 L
Ed 791.

[373 US 87] The 3rd Circuit in the BALDI case construed that statement in PYLE v
KANSAS to MEAN THAT THE 'SUPPRESSION EVIDENCE FAVORABLE' TO THE ACCUSED WAS ITSELF
SUFFICIENT TO AMOUNT TO A DENIAL OF DUE PROCESS.

In NAPUE v ILL., 360 US 263, 269, 74 S Ct 1173, __ L Ed 2d 1217, THE U.S. SUPREME
COURT extended the test formulated in MOONEY v HOLOHAN when they said: "The same result
obtains WHEN THE STATE, ALTHOUGH NOT SOLICITING FALSE EVIDENCE, ALLOWS IT TO BE
UNCORRECTED WHEN IT APPEARS." and see / ALCOSTA v TEXAS, 355 US 28, 78 S Ct 103, 2 L Ed
2d 9; WILDE v WYOMING, 362 US 607, 80 S Ct 900, 4 L Ed 2d 985. Cf. DURLEY v MAYO, 351
US 277, 285, 76 S Ct 806, 811, 100 L Ed 1178 [dissenting opin.].

V

The SIXTH COURT OF APPEALS ERRED IN CONCLUDING that ROBINSON FAILED TO PRESERVE FOR
APPEAL THE ISSUE OF WHETHER THE CONTRABAND SEIZED IN THE SEARCH WAS ADMISSIBLE; when
THE RECORD REVEALS WRITTEN STATEMENT AND EVIDENCE, DESPITE DEFENSE'S OBJECTION (HEARSAY)
PLACED AS EVIDENCE, THEN "THE ENVELOPE"[STATE'S EXHIBIT 2] AND A DVD[STATE'S EXHIBIT 3]
ARE ADMITTED WITHOUT OBJECTION. SEE herein at pages 7-8, Id.

V
(CONTINUED)

**FURTHERMORE, THE "NO OBJECTION" REFERENCED FOR THIS CONCLUSION BY THE COURT OF APPEALS IS IN RELATION TO THE "CHAIN OF CUSTODY, NATURE OF THE CONTRABAND, AND THE WEIGHT OF CONTRABAND," IN WHICH THERE WAS "NO OBJECTION."** See herein at pages 7-8, Id.

The 76th TRIAL COURT ERRED "ABUSING ITS DISCRETION" IN REFUSAL TO RE-OPEN SUPPRESSION HEARING, ADDRESS CREDIBILITY OF OFFICER MUNOZ TESTIMONY, ADDRESS AND APPLY LAW TO FACT AS TO WHETHER RELATOR WAS TO APPLY TURN SIGNAL AT THE MEETING OF THE TWO ROADWAYS, RELEASING CONTRACTUALLY HIRED APPELLATE ATTORNEY THEREBY FORCING APPOINTED APPELLATE ATTORNEY WHO DID ABSOLUTELY NOTHING AS TO REPRESENTATION CONSTITUTIONALLY GUARANTEED, AND REFUSAL TO ACKNOWLEDGE 11.07 APPLICATION AS TO THE INEFFECTIVENESS OF COUNSEL EXPRESSED HEREIN AND AS RELATED TO 11.07 APPLICATION.

The TITUS COUNTY DISTRICT ATTORNEY'S OFFICE has "ABUSED ITS DISCRETION" REFUSING TO ANSWER 11.07 APPLICATION, COMMITTED "PROSECUTORIAL MISCONDUCT TO MALICIOUSLY PROSECUTE" RELATOR THROUGH PERJURED STATEMENTS OF OFFICER'S WHO WERE INVESTIGATED, INDICTED, ARRESTED, AND CONVICTED OF FELONY CHARGES FOR PERJURY AND DRUGS, KNOWING STATEMENTS IN REFERENCE TO THE CONFIGURATION OF THE DISPUTED ROADWAYS IS FALSE, ESPECIALLY AS RESIDENTS OF MT. PLEASANT, TEXAS, THEN TO CONTINUE WITH A MISREPRESENTATION OF AN IMPLIED "NO OBJECTION" TO EVIDENCE WHEN STATED IN REFERENCE TO A "CHAIN OF CUSTODY TESTIMONY."

CONCLUSION AND PRAYER

For the foregoing reasons, this COURT should GRANT RELATOR'S ORIGINAL PETITION FOR WRIT OF MANDAMUS. This COURT should issue said writ ORDERING THE SIXTH COURT OF APPEALS to WITHDRAW THE PANEL'S OPINION DATED DECEMBER 13, 2012, and ISSUE A NEW OPINION REVERSING RELATOR'S CONVICTION AND ORDERING HIS ACQUITTAL.

PRAYER

WHEREFORE, RELATOR PRAYS, based on the foregoing arguments, as well as those arguments asserted in RELATOR'S BRIEF ON APPEAL, this COURT SHOULD GRANT RELATOR'S ORIGINAL PETITION FOR WRIT OF MANDAMUS. THIS COURT should issue a writ ORDERING THE SIXTH COURT OF APPEALS AT TEXARKANA to REVERSE THE JUDGEMENT AND ORDERING TIMOTHY LEE ROBINSON'S ACQUITTAL AND IMMEDIATE RELEASE FROM TDCJ-ID POWLEDGE UNIT, located at 1400 FM 3452, ANDERSON COUNTY, PALESTINE, TEXAS.

RESPECTFULLY SUBMITTED,

TIMOTHY LEE ROBINSON #1633311
POWLEDGE UNIT T/C O - 22
1400 FM 3452
PALESTINE, TEXAS 75803 - 2350

50

A P P E N D I X

T A B  1

C I T Y   C O D E S

O F

M O U N T   P L E A S A N T,   T E X A S

C O D E   O F   O R D I N A N C E S

S E C T I O N S

7 0 . 0 1   a n d   7 1 . 0 3 0

( H I G H L I G H T I N G   I N T E R S E C T I O N   )

AND

(S T O P P I N G   A N D   T U R N I N G   S I G N A L S)

EVEN THOUGH THE STATE NOW CONCEDES THAT, "AT TRIAL, MUNOZ TESTIFIED THAT

EAST NINTH STREET MERGES, OR CONTINUES, INTO MARGARET DRIVE AT THEIR INTERSECTION."

(APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND)

# CITY OF MOUNT PLEASANT, TEXAS CODE OF ORDINANCES

2009 S-6 Supplement contains:
Local legislation current through Ord. 2009-15, passed 10-6-09



Published by:
**American Legal Publishing Corporation**
432 Walnut Street, 12th Floor
Cincinnati, Ohio 45202
Tel: (800) 445-5588
Fax: (513) 763-3562
E-Mail: customerservice@amlegal.com
Internet: http://www.amlegal.com

Disclaimer:
This Code of Ordinances and/or any other documents that appear on this site may not reflect the most current legislation adopted by the Municipality. American Legal Publishing Corporation provides these documents for informational purposes only. These documents should not be relied upon as the definitive authority for local legislation. Additionally, the formatting and pagination of the posted documents varies from the formatting and pagination of the official copy. The official printed copy of a Code of Ordinances should be consulted prior to any action being taken.

For further information regarding the official version of any of this Code of Ordinances or other documents posted on this site, please contact the Municipality directly or contact American Legal Publishing toll-free at 800-445-5588.

© 2010 American Legal Publishing Corporation
techsupport@amlegal.com
1.800.445.5588.

# GENERAL PROVISIONS

## § 70.01 DEFINITIONS.

For the purpose of this title, the following definitions shall apply unless the context clearly indicates or requires a different meaning.

*ALL TERRAIN VEHICLE.* A motor vehicle having a saddle for the use of the rider, designed to propel itself with three or more tires in contact with the ground, designed by the manufacturer for off-highway use.

*ALLEY.* A public way in the city extending either partly or through any city block in the rear of city lots and in a direction generally from avenue to avenue not more than 20 feet in width and capable of being traversed by a vehicle.

*AUTHORIZED EMERGENCY VEHICLE.* Vehicles of the Fire Department (fire patrol), police vehicles, public and private ambulances for which permits have been issued by the State Board of Health, emergency vehicles of city departments or public service corporations as are designated or authorized by the City Council and private vehicles operated by volunteer firefighters while answering a fire alarm.

*BUSINESS DISTRICT.* The territory contiguous to and including a roadway when, within any 600 feet along such roadway, there are buildings in use for business or industrial purposes which occupy 300 feet of frontage on one side or 300 feet collectively on both sides of the roadway.

*BUS.* A commercial vehicle carrying passengers for hire and operating over and along a fixed route.

*BUS STOP.* A section of the roadway along the edge thereof, authorized by order of the City Council, marked by signs reading "bus stop" as a place for the sole use and convenience of the general public to board and depart from any bus.

*CROSSWALK.* That part of a roadway at any intersection included within the connection of the lateral lines of the sidewalks on opposite sides of the street, whether marked or not, measured from the curbs or in the absence of curbs, from the edges of the traversable roadway. The word *CROSSWALK* also includes any portion of a roadway at an intersection or elsewhere distinctly indicated for pedestrian crossing by lines or other markings on the surface.

*DRIVEWAY, PRIVATE.* Any entrance or exit over the sidewalk or sidewalk area of any street affording a means of ingress or egress for vehicles to or from any private property or the entrance or exit of any private garage into or from any alley.

*DRIVEWAY, PUBLIC.* Any entrance or exit over the sidewalk or sidewalk area of any street affording a means of ingress or egress for vehicles to or from any public property.

*DRIVER.* That person who drives or is in actual physical control of the movements of a vehicle.

*DIGGING OUT.* The practice of starting any motor vehicle from a standing position by applying a sudden burst of power, recognized by spinning rear wheels and noise of tires on the surface of the roadway.

*INTERSECTION.* The area embraced within the prolongation or connection of the lateral curb lines, or if none, then the lateral boundary lines of the roadways of two streets which join one another at, or approximately at, right angles or the area within which vehicles traveling upon different streets joining at any other angle may come in conflict. Where a street includes two roadways, 30 feet or more apart, then every crossing of each roadway of such divided street by an intersecting street shall be regarded as a separate intersection. In the event such intersecting street also includes two roadways 30 feet or more apart, then every crossing of two roadways of such streets shall be regarded as a separate intersection.

*LANED ROADWAY.* A roadway which is divided into two or more clearly marked lanes for vehicular traffic.

*LIMITED-ACCESS OR CONTROL-ACCESS HIGHWAY.* Every highway, street or roadway in respect to which owners or occupants of abutting property or lands and other persons have no legal right of access to or from the same except at such points only and in such manner as may be determined by the public authority having jurisdiction over such highway, street or roadway.

*LOADING ZONE.* That portion of any roadway set apart, marked and numbered for the sole use of the public as a place for loading or unloading passengers, merchandise or other cargo.

*MOTORCYCLE.* Every motor vehicle having a saddle for the use of the rider and designed to travel on not more than three wheels in contact with the ground but excluding a tractor.

*MOTOR VEHICLE.* Every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires but not operated upon rails.

*OFFICIAL TRAFFIC-CONTROL DEVICES.* All signs, signals, markings and devices not inconsistent with this chapter placed or erected by authority of a public body or official having jurisdiction for the purpose of regulating, warning or guiding traffic.

*NO PARKING ZONE.* A space on the roadway adjacent to the curb, whether marked by official signs or not, in which no vehicle may be parked.

*PARK or PARKING.* The standing of a vehicle, whether occupied or not, otherwise than a temporary stopping of such vehicle for the purpose of and while actually engaged in loading or unloading passengers, merchandise or other cargo, except an involuntary stopping of such vehicle by reason of mechanical failure or direction of a police officer.

*PARKING STALL or PARKING SPACE.* That portion or section of a roadway adjacent to the curbing or edge, set apart, marked and bounded by lines painted or marked upon the surface of the roadway and extending into the roadway for the use of parking vehicles; or that portion of any alley marked by official signs showing such space to be a parking zone.

*PEDESTRIAN.* Any person afoot.

*POLICE OFFICER.* Any member of the Police Department of the city authorized by law to make arrests in traffic offenses.

*PUBLIC PROPERTY.* Property owned or leased by the city or political subdivision of the city.

*RESIDENCE DISTRICT.* The territory contiguous to and including a street not comprising a

business district, when the property on such street for a distance of 300 feet or more is, in the main, improved with residences or residences and buildings in use for business.

*RIGHT-OF-WAY.* The privilege of immediate use of the roadway.

*ROADWAY.* That portion of a street improved, designed or ordinarily used for vehicular travel. In the event a street includes two or more separate roadways, the term *ROADWAY* shall refer to any such roadway separately but not to all such roadways collectively.

*SAFETY ZONE.* The area or space officially set apart within a roadway for the exclusive use of pedestrians and which is protected or is so marked or indicated by adequate signs as to be plainly visible at all times while set apart as a safety zone.

*SIDEWALK.* That portion of a street between the curb lines, or the lateral lines of a roadway, and the adjacent property lines intended for the use of pedestrians.

*STOP.* When required, means complete cessation of movement.

*STOP, STOPPING* or *STANDING.* When prohibited, means any stopping or standing of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal.

*STREET* or *HIGHWAY.* The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel.

*TRAFFIC.* Pedestrians, ridden or herded animals, vehicles and other conveyances, either singly or together, while using any street for purposes of travel.

*TRAFFIC-CONTROL SIGNAL.* Any device, whether manually, electrically or mechanically operated, by which traffic is alternately directed to stop and to proceed.

*TRUCK.* A motor vehicle designed primarily for the transportation of cargo.

*U-TURN.* The turning or causing the turning of a vehicle, so that when such turn is completed that such vehicle will be headed in the opposite direction from that in which it was headed before such turning was begun, whether or not such vehicle is pulled into a driveway or any space beyond the curb line of the street.

*VEHICLE.* Any device in, upon or by which any person or property may be or is transported upon any street within the corporate limits of the city, except devices moved by human power or used exclusively upon stationary rails or tracks.

('87 Code, § 17-151)

*Statutory reference:*

> *Similar provisions, see Tex. Rev. Civ. Stat., Art. 6701d, §§ 1-20;*

> *Uniform Traffic Act, see Tex. Rev. Civ. Stat., Art. 6701d*

# § 71.030 STOPPING AND TURNING SIGNALS.

(A)   *General.*

(1)   When any other traffic may be affected by such movement, no person shall turn any vehicle without giving a signal of his or her intention to turn right or left. Such signal shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning.

(2)   No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal to the driver of any vehicle immediately to the rear, when there is opportunity to give such signal.

(3)   A stop or turn signal required by this section shall be given by means of the hand and arm or by a signal lamp or mechanical signal device of a type approved by the State Department of Public Safety; provided however, that when the body of a vehicle or the body and load of a vehicle projects 24 inches or more to the left of the center of the steering wheel, or under any condition when a hand and arm signal would not be visible both to the front and rear of the vehicle, the vehicle must be equipped with and the signals must be given by such turn-indicating lamp or device.

(4)   The signal lamps provided for in this section shall be used to indicate an intention to turn, change lanes or start from a parked position and shall not be flashed on a moving vehicle as a courtesy or "do pass" signal to operators of other vehicles approaching from the rear.

(`87 Code, § 17-207)

(B)   *Manner of giving with hand and arm.* All signals required by division (A) of this section, when given by hand and arm, shall be given from the left side of the vehicle in the following manner and such signals shall indicate as follows:

(1)   *Left turn.* Hand and arm extended horizontally;

(2)   *Right turn.* Hand and arm extended upward;

(3)   *Stop or decrease speed.* Hand and arm extended downward.

(`87 Code, § 17-208)

***Statutory reference:***

*Similar provisions, see Tex. Transportation Code, §§ 545.103 through 545.107*

A P P E N D I X

T A B   2


R E L A T O R ' S   S U P P L E M E N T A L

D I A G R A M   O F

N I N T H   S T R E E T   A N D   M A R G A R E T   D R I V E

C O N F I G U R A T I O N


(REFERENCED IN RELATOR'S ORIGINAL PETITION FOR WRIT OF MANDAMUS, PAGES 30 – 35)


FOR "Y" "y" THEORY HOLD DIAGRAM WITH NORTH, ON THE RIGHT, POINTING TO GROUND.

FOR BOOT, HEEL, ANKLE, THIGH THEORY HOLD WITH NORTH POINTING UP AND ----- LINES.



APPENDIX

TAB 3

SIMON RAY PORTER

OFFICER ARRESTED

ON

FELONY PERJURY CHARGE

# Officer arrested on felony perjury charge



Officer Simon Ray Porter

Posted: Tuesday, August 24, 2010 12:00 am

**By CASEY BUECHEL - Tribune Staff Writer**

A Mount Pleasant Police Department officer has been arrested on a local felony charge of aggravated perjury. Simon Ray Porter, 25, of Mount Pleasant, turned himself over to and was arrested by MPPD officers Lt. Kyle Holcomb and Sgt. Ray Barrett Monday afternoon at the office of Pct. 2 Justice of the Peace Paula Dyke, who arraigned Porter in her office and set his bond at $10,000.

The arrest came after Porter was indicted on the charge presented to the Titus County Grand Jury Monday morning by Titus County District Attorney Charles "Chuck" Bailey. Warrant number CR17064 was issued for his arrest Monday afternoon.

After his arrest and arraignment at Dyke's office at approximately 5:15 p.m., Holcomb transported Porter to the Titus County Jail where he paid his bond and was released after going through the booking process. .

Porter had been on paid administrative leave for several weeks after the MPPD found that he was the subject of an investigation.

"The police department cannot comment on this case as it is not our case to comment on," said Captain Rob Vine in a press release issued Monday afternoon.

Vine referred any further comment to Bailey, saying only, "What we do know is that Porter is now awaiting a trial date.

"We, as a department, recognize the severity of this charge and appreciate the implications it carries with it.

"When we first learned of the allegation against Porter, an internal affairs investigation was opened immediately and he was placed on administrative leave," said Vine.

"As a result of this investigation, and the indictment handed down today, Porter's employment with this department has been effectively terminated," Vine added.

"Our mission statement is 'to protect our citizens and maintain law enforcement excellence' and for those officers and employees who are still standing tall and fulfilling their oath of office, I thank the citizens of this city for giving us the opportunity to do just that," said Vine.

"I concur with Captain Vine's assessment of arrest and investigation into Simon Porter yesterday," said MPPD Chief J.C. "Jay" Burch in a telephone interview Tuesday morning.

According to the indictment, number CR17064, Porter is accused of issuing a false statement under oath in the jury trial of Ruth Ann Sharper, cause numbers 15,529 and 15, 530, which were the trials Sharper faced before a jury on, "two indictments charging her with possession of marihuana and possession of a controlled substance."

During the trial, Porter allegedly quoted a statement made by Sharper that, "she stated to me that she planned to tell them that she was just holding it...," while he talked with her at the Titus County Jail on December 9, 2009.

Bailey, in a telephone interview Tuesday morning, declined to release the name of the agency who investigated the charge against Porter.

Reached Monday afternoon by phone, Porter himself declined to comment on the charge and indictment.

NO.: _____

IN RE TIMOTHY LEE ROBINSON                    IN THE COURT OF CRIMINAL APPEALS
RELATOR / PRO-SE

                                              FOR THE STATE OF TEXAS, AUSTIN


UNSWORN DECLARATION


I, TIMOTHY LEE ROBINSON, TDCJ-ID NO. 1633311, RELATOR PRO-SE, for the matters stated herein, to include: RELATOR'S ORIGINAL PETITION FOR WRIT OF MANDAMUS with attachments TAB(S) 1-3; CERTIFICATE OF SERVICE; and, AFFIDAVIT OF COMPLAINT FOR "A CONSPIRACY TO UNLAWFULLY AFFIRM THE CONVICTION TO CONFINE RELATOR."

RELATOR being confined in THE STATE OF TEXAS entitles the use of this UNSWORN DECLARATION, under both, FEDERAL LAW (28 USCA § 1746) and STATE LAW (VTCA CIV PRAC AND REM.S CODE §§ 132.001 - 132.003), to declare under penalty of perjury, and RELATOR DOES SO DELARE, IN PLACE OF; A WRITTEN DECLARATION, VERIFICATION, CERTIFICATION, OATH, OR AFFIDAVIT SWORN BEFORE A NOTARY PUBLIC, that the facts deposed, facts of record claimed herein, to include documentation listed supra, are true and correct facts deposed and facts of record claimed, under penalty of perjury by this RELATOR.

THEREFORE, through this "UNSWORN DECLARATION," BY THE LAWS OF TEXAS, the facts deposed, claimed of record, and as stated, ARE TO BE CONSIDERED VERIFIED, CERTIFIED, AND SWORN TO UNDER PENALTY OF PERJURY BY THIS RELATOR PRO-SE, AND ARE NOT ATTAINABLE DUE TO INCARCERATION.

FURTHER RELATOR SAYETH NOT.


THIS UNSWORN DECLARATION LISTING ALL DOCUMENTATION ATTACHED ARE SIGNED AND TO BE CONSIDERED FIELD THIS __6__ DAY OF __MARCH_____, ~~~.2015

                                    _Timothy Robinson #1633311_
                                    TIMOTHY LEE ROBINSON #1633311
                                    POWLEDGE UNIT T/C   O - 22
                                    1400 FM 3452
                                    PALESTINE, TEXAS 75803 - 2350


1

NO.: _____

IN RE TIMOTHY LEE ROBINSON                    IN THE COURT OF CRIMINAL APPEALS
        RELATOR / PRO-SE

                                              FOR THE STATE OF TEXAS, AUSTIN


                          CERTIFICATE OF SERVICE


     I, TIMOTHY LEE ROBINSON, RELATOR PRO-SE herein, CERTIFY that the following entities have been served with: RELATOR'S ORIGINAL PETITION FOR WRIT OF MANDAMUS with attachments TAB(S) 1-3; UNSWORN DECLARATION; AFFIDAVIT OF COMPLAINT FOR "A CONSPIRACY TO UNLAWFULLY AFFIRM THE CONVICTION TO CONFINE RELATOR," and this CERTIFICATE, BY U.S. MAIL delivery first class postage pre-paid:

ATTORNEY GENERAL'S OFFICE, CRIMINAL PROSECUTION DIVISION, P.O. BOX 12548, AUSTIN, TEXAS 78711 - 2548;

HON. ABEL ACOSTA, CLERK, TEXAS COURT OF CRIMINAL APPEALS, P.O. BOX 12308, AUSTIN, TEXAS 78711;

HON. LISA C. McMINN, STATE PROSECUTING ATTORNEY, P.O. BOX 13046, AUSTIN, TEXAS 78711;

COURT OF APPEALS, SIXTH APPELLATE DISTRICT OF TEXAS, BI-STATE JUSTICE BLDG., 100 N. STATE LINE AVE. #20, TEXARKANA, TEXAS 75501;

HON. DISTRICT JUDGE, 76th JUDICIAL DISTRICT COURT, P.O. BOX 1306, MOUNT PLEASANT, TEXAS 75456 - 1306; and,

HON. CHARLES C. BAILEY, TITUS COUNTY DISTRICT ATTORNEY, P.O. BOX 249, MOUNT PLEASANT, TEXAS 75456;

therefore by this CERTIFICATION all documentation listed herein are true and correct copies of the foregoing instruments.

SIGNED AND SUBMITTED THIS  6  DAY OF  MARCH                   ,  2015

                                        _Timothy Robinson_ # 1633311
                                        TIMOTHY LEE ROBINSON #1633311
                                        POWLEDGE UNIT T/C  O - 22
                                        1400 FM 3452
                                        PALESTINE, TEXAS 75803 - 2350


                                 1

IN THE MATTERS OF:                              IN THE ATTORNEY GENERAL OFFICE FOR
TIMOTHY LEE ROBINSON v THE STATE OF TEXAS
CAUSE NO.(S):
76th DISTRICT TRIAL COURT: CR-16,097 & (A/B);      THE STATE OF TEXAS, AUSTIN.
TEXARKANA SIXTH COURT OF APPEALS: 06-09-00225-CR;
COURT OF CRIMINAL APPEALS: PD-0238-11 &
                          WR-80, 739-01 & 02

            ******************************************

THE STATE OF TEXAS          §          §          §          §          §


COUNTY OF ANDERSON          §          §          §          §          §


            ******************************************


                    AFFIDAVIT OF COMPLAINT FOR
          A CONSPIRACY TO UNLAWFULLY AFFIRM THE CONVICTION
                       TO CONFINE RELATOR


     My name is TIMOTHY LEE ROBINSON, TDCJ-ID NO. 1633311, AFFIANT PRO-SE for the
matters as listed above and deposed herein, currently confined in the TDCJ-ID POWLEDGE
UNIT T/C, DORM - O, BUNK 22, located at 1400 FM 3452, ANDERSON COUNTY, PALESTINE, TEXAS
75803 - 2350.
     AFFIANT is:
1) A UNITED STATES citizen born in LUBBOCK, TEXAS on 3/20/1978, current age 36 years old;
2) Capable to accurately perceive, recall, recount the facts based on personal knowledge
   as said facts are true and correct; and,
3) Competent to testify to the matters of fact.
     AFFIANT for the matters stated herein has included as EXHIBITS true and correct
copies of the self proving originals, as follows:
1) RELATOR'S ORIGINAL PETITION FOR WRIT OF MANDAMUS with attachments TAB(S) 1 - 3;
2) CERTIFICATE OF SERVICE;
3) UNSWORN DECLARATION; and,
4) All other documentation of relevance is NOT ATTAINABLE DUE TO CONFINEMENT and REQUEST
   JUDICIAL NOTICE BE TAKEN.
     AFFIANT being confined in THE STATE OF TEXAS entitles the use of the attached
UNSWORN DECLARATION; under both, FEDERAL LAW (28 USCA § 1746) and TEXAS LAW (VTCA CIV
PRAC AND REM.S CODE §§§ 132.001 - 132.003); "IN PLACE OF: A WRITTEN DECLARATION,
VERIFICATION, CERTIFICATION, OATH, OR AFFIDAVIT SWORN BEFORE A NOTARY PUBLIC;" to
declare under penalty of perjury that the facts deposed, facts of record claimed herein,

                                    1

with documentation of fact listed supra, are true and correct facts deposed, and facts of record claimed, under penalty of perjury by this AFFIANT.

THEREFORE, BY THE LAWS OF TEXAS, the facts deposed, claimed of record, listed in attached documentation, and as claimed herein ARE TO BE CONSIDERED VERIFIED, CERTIFIED, AND SWORN TO UNDER PENALTY OF PERJURY BY THIS AFFIANT PRO-SE.

AFFIANT asserts under FEDERAL LAW circumstantial evidence is sufficient to prove existance of CONSPIRACY. Agreement may be infered from concert action among alleged participants and voluntary participants may be infered from a collation of circumstances. 18 USCA 371; see also, US v THON, 917 F 2d 170, Id.

PARTICIPANTS listed herein have chosen to enter into A CONSPIRACY TO UNLAWFULLY CONFIRM THE CONVICTION TO CONFINE RELATOR (AFFIANT), whether by calculated intent and design, or by their combined error, incompetance, apathy and ignorance, have collectively, whether, either through their acts of commission and/or ommission, have entered into a CONSPIRACY to subject this AFFIANT to CONSTITUTIONAL DEPRIVATIONS AND INJURIES thereby inflicting grievous losses of the AFFIANT'S protected life, liberty and property interest by and through PARTICIPANTS blatant violations and lack of requisite process before depriving AFFIANT of those interest.

PARTICIPANTS collective acts, as combined in PARTICIPANTS CONSPIRACY and as utilized in a judicial process that as designed, structured, implemented as currently practiced in PARTICIPANTS oppressive, abusive, and grossly prejudicial application to this AFFIANT is totally lacking in even a facsimile of reasonable procedural safegaurds that are CONSTITUTIONALLY sufficient to protect against unjustified deprivations of AFFIANT'S FUNDEMENTAL RIGHTS and RIGHT TO DUE PROCESS.

PARTICIPANTS collective ACTS/CONSPIRACY have resulted in violations that rise to the level of A SUBSTANTIAL DEFECT. Thereby subjecting AFFIANT to the deprivation of AFFIANT'S FUNDEMENTAL DUE PROCESS RIGHTS. Resulting in A COMPLETE MISCARRIAGE OF JUSTICE that is inconsistant with FAIR PROCEDURE; TO THE SUBSTANTIAL DETRIMENT AND INJURY OF THIS AFFIANT.

PARTICIPANTS hereof are criminally responsible for "THE CONSPIRACY" while acting with the intent to promote and/or assist "THE CONSPIRACY ALLEGED." PARTICIPANTS have solicited, encouraged, directed, aided, and/or attempted to aid the OTHER PARTICIPANTS in the commission of SAID CONSPIRACY; and/or having A LEGAL DUTY TO PREVENT the commission of SAID CONSPIRACY, PARTICIPANTS did act with intent to promote and/or assist SAID CONSPIRACY, THEREBY, PARTICIPANTS FAILED to make A REASONABLE EFFORT TO PREVENT THE COMMISSION OF SAID COMSPIRACY. (TEXAS PENAL CODE (TPC) § 7.02).

AFFIANT ASSERTS, it is NO DEFENSE that THE PARTICIPANTS belong to a CLASS OF PERSONS THAT BY DEFINITION OF THE OFFENSE IS LEGALLY INCAPABLE OF COMMITTING SAID CONSPIRACY IN AN INDIVIDUAL CAPICITY; and/or that SAID PARTICIPANTS FOR WHOSE CONDUCT THE OTHER PARTICIPANTS ARE CRIMINALLY RESPONSIBLE ARE IMMUNE FROM PROSECUTION. (TPC § 7.03).

PARTICIPANTS, listed below, as PUBLIC SERVANTS have chose to enter into "A CONSPIRACY TO UNLAWFULLY AFFIRM THE CONVICTION TO CONFINE RELATOR (AFFIANT)," with the INTENT, KNOWLEDGE, AND RECKLESS voluntary engagement in conduct that include overt acts and ommissions infered from the conscious disregard for the substantial and unjustifiable risk that AFFIANT COULD BE UNLAWFULLY CONVICTED AND IMPRISONED THROUGH A VIOLATION OF SAFEGAURDS AGAINST UNLAWFUL TRAFFIC STOPS, PERJURED TESTIMONY, INEFFECTIVE ASSISTANCE OF COUNSEL (TRIAL / HIRED APPELLATE / APPOINTED APPELLATE), MALICIOUS PROSECUTION, PROSECUTORIAL MISCONDUCT, DENIAL TO FAIR AND IMPARTIAL TRIAL, AND ARBITRARY ABUSIVE AUTHORITY OVER: SUPPRESSION HEARINGS, ISSUANCE OF ABATEMENTS, OPINIONS, ORDERS, AND MANDATES. This is a risk of such a degree that its disregard constitutes a gross devaition from the standard that a PUBLIC SERVANT would exercise under all circumstances as viewed from this AFFIANT'S standpoint.

PARTICIPANTS

EX - MOUNT PLEASANT, TEXAS POLICE OFFICERS:

DETECTIVE CESAR MUNOZ, CONTACT UNAVAILABLE DUE TO INDICTMENT, ARREST AND CONVICTION FOR FELONY DRUG CHARGES; and,

OFFICER SIMON RAY PORTER, CONTACT UNAVAILABLE DUE TO INDICTMENT, ARREST AND CONVICTION FOR FELONY PERJURY CHARGES. See attached TAB 3.

MOUNT PLEASANT, TEXAS DISTRICT ATTORNEY AND TRIAL COUNSEL FOR APPELLEE:

CHARLES C. BAILEY, P.O. BOX 249, MOUNT PLEASANT, TEXAS 75456; and,

ASSISTANT DISTRICT ATTORNEY (APPELLEE BRIEF / APPELLEE SUPPLEMENTAL BRIEF ON REMAND):

DAVID COLLEY, TX. BAR NO. 24007027, PHONE: (903) 577-6726; FAX: (903) 577-6729.

AFFIANT'S APPOINTED TRIAL ATTORNEY:

SAM W. RUSSELL, P.O. BOX 1223, MOUNT PLEASANT, TEXAS 75456-1223.

76th DISTRICT TRIAL JUDGE (DECEASED):

JIMMY LEON WHITE, P.O. BOX 1306, MOUNT PLESANT, TEXAS 75456-1306.

AFFIANT'S CONTRACTUALLY HIRED APPELLATE ATTORNEY:

L. CHARLES van CLEEF, TX. BAR NO. 00786305, P.O. BOX 2432, N. CENTER STREET, LONGVIEW, TEXAS 75606-1432; PHONE: (903) 248-8244; FAX: (903) 248-8249.

THE COURT OF APPEALS SIXTH APPELLATE DISTRICT OF TEXAS, AT TEXARKANA: (ORIGINAL / REMAND) BEFORE MORRISS, C.J., AND CARTER AND MOSELEY, J.J.; MEMORANDUM OPINION BY JUSTICE CARTER, BI-STATE JUSTICE BLDG., 100 N. STATE LINE AVE. #20, TEXARKANA, TEXAS 75501.

STATE PROSECUTING ATTORNEY:

LISA C. McMINN, TX. BAR NO. 13803300, P.O. BOX 13046, AUSTIN, TEXAS 78711, PHONE: (512) 463-1660; FAX: (512) 463-5724; and,

ASSISTANT STATE'S ATTORNEY: (PETITION FOR DISCRETIONARY REVIEW (PDR))

JOHN R. MESSINGER, TX. BAR NO. 24053705.

TEXAS COURT OF CRIMINAL APPEALS, AT AUSTIN:

CLERK OF THE COURT: LOUISE PEARSON; and,

UNKNOWN JUSTICE(S) DELIVERYING OPINION IN, PD-0238-11, from TITUS COUNTY- 06-09-00225-CR;

P.O. BOX 12308, CAPITOL STATION, AUSTIN, TEXAS 78711.

In the matter and means explained thus far, the PARTICIPANTS listed have chose to enter into A CONSPIRACY TO UNLAWFULLY AFFIRM THE CONVICTION TO CONFINE RELATOR (AFFIANT), either by calculated intent and design, or by their combined error, incompetance, apathy and ignorance, have collectively, whether, either through their acts of commission and/or ommission, have entered into the said CONSPIRACY deposed as follows by this AFFIANT'S COMPLAINT:

AFFIANT is presently confined on the testimony of two MOUNT PLEASANT POLICE OFFICERS, specifically, DETECTIVE CESAR MUNOZ, "ONLY WITNESS TO TESTIFY AT SUPPRESSION HEARING," and OFFICER SIMON RAY PORTER, who where investigated, indicted, arrested, and convicted for perjury and drug charges in the time frame of this AFFIANT'S, TRIAL, CONVICTION, APPEAL, REVERSAL OF CONVICTION, APPEAL BOND RELEASE, AND AFFIRMATION TO RE-INSTATE CONVICTION BY MEANS OF A MISLEADING STATEMENT IMPLIED BY TITUS COUNTY ASSISTANT DISTRICT ATTORNEY, DAVID COLLEY, AND LACK OF EFFECTIVE COUNSEL DUE TO RELEASE OF CONTRACTUALLY HIRED APPELLATE COUNSEL BY 76TH TRIAL COURT WITHOUT NOTICE AND APPOINTMENT OF APPELLATE COUNSEL AT APPEAL BOND HEARING WHO FILED "NOTHING."

AFFIANT DEPOSES:

On August 25, 2008, AFFIANT was returning to MOUNT PLEASANT, TEXAS after a few days of visitation to various places. AFFIANT was on his way to LAKISHA WILLIAMS residence on MARGARET DRIVE, AFFIANT'S girlfriend. LAKISHA had rented the car for the trip, a black Dodge Charger. Upon arrival to MOUNT PLEASANT we came in on NINTH STREET which is a residential street of black top with a width that if cars are parked on both sides at a residence you have to get in the middle of the street to continue down the street, and if a car is coming from the other direction when cars are parked at two opposite residences one will have to wait for the other to pass between the parked cars. This is a description of both NINTH STREET and MARGARET DRIVE as to their width. Neither street have a center line or stripe in the middle of the street. This is a description for the configuration of both streets.

AFFIANT drove down NINTH STREET following the direct course of the street that curves into MARGARET DRIVE. At this CURVE there are NO MERGE SIGN, STOP SIGN, YIELD SIGN, STOP LIGHT, FLASHING YELLOW LIGHT, **NO INDICATION TO BE AN INTERSECTION, "ONLY A CURVE INTO MARGARET DRIVE WHEN COMING FROM NINTH STREET."** However, a person coming up MARGARET DRIVE toward NINTH STREET has a different perspective as there are two options.

4

MARGARET DRIVE coming toward NINTH STREET comes to a dead end as if the planners of this subdivision had or has intention to extend at a later date. This dead end is within 150 to 200 feet of the curve that continues from MARGARET DRIVE changing into NINTH STREET. This dead end has one home on each side of the street, with only one home having an accessible driveway to MARGARET DRIVE at this dead end. At this dead end there is a baracade with trees grown up behind it, movement on this dead end other than the two residents of either side of this dead end would be questionable. Therefore, as stated , there are two options when on MARGARET DRIVE coming toward NINTH STREET, you either continue going straight coming to a dead end in front of the residence on the right with a baracade in front of you, or you curve to the left which is now to be considered NINTH STREET as in this curve the **STREETS CHANGE NAMES** with the only signs being the street names MARGARET DRIVE and NINTH STREET or visa-versa.

AFFIANT therefore took the curve where the streets change names from NINTH STREET and was now on MARGARET DRIVE going to LAKISHA WILLIAMS address at 511 MARGARET DRIVE. Upon entering the driveway a car pulled in behind the rental car AFFIANT is driving and DETECTIVE MUNOZ exits the drivers door of this vehicle, having NO OVER HEAD LIGHTS, POLICE INSIGNIA, NOR A SOUNDING SIREN, NOTHING TO MAKE ONE BELIEVE IT TO BE A POLICE CAR, while MUNOZ has drawn his weapon pointing straight at this AFFIANT shouting for everyone to put their hands outside the vehicle, to which all comply. MUNOZ, alone at this moment walks up to the vehicle, gun still drawn, shouting for AFFIANT to step out of the vehicle with his hands in the air. AFFIANT complies, and at this time MUNOZ takes a black plastic tie strap pulling AFFIANT'S hands behind him, telling AFFIANT he is being detained. At this moment a police car pulls up and OFFICER SIMON RAY PORTER comes up to MUNOZ, with MUNOZ telling OFFICER PORTER to take AFFIANT toward the homes front door from the drivers door of the car, and all of a sudden, now MUNOZ smells marijuana, while yet another police car arrives with OFFICER NICHOLS being directed by DETECTIVE MUNOZ to remove the passengers from the car and detain them so he can search the car for drugs, assuming he has probable cause due to his assumed smell of marijuana and further claims of finding **"RESIDUE AND LEAFY SUBSTANCE"** RETAINING NOTHING AS EVIDENCE FOR PROBABLE CAUSE, **NOR DID MUNOZ ISSUE ANY FORM OF CITATION AND/OR TICKET, NOR HAS THERE BEEN 'ANY PROOF OF A TRAFFIC VIOLATION' FOR WHICH THIS ASSUMED TRAFFIC STOP WAS TO BE MADE."** MUNOZ makes an extensive search of the vehicle for which he finds nothing inside the vehicle. After this lengthy and extensive search of the vehicle which reveals NOTHING, while MUNOZ has yet to acknowledge his reasoning for this unauthorized search and detainment of AFFIANT, LAKISHA WILLIAMS, AND AFFIANT'S BROTHER, TRACY HARRIS, AFFIANT has continually been detained a good length from the car on the drivers side and his passengers have been detained as well in cite of all officers.

5

MUNOZ after searching for a good length of time with other officers on the scene now steps to the front of the vehicle he has been searching and makes a phone call just out of hearing range for this AFFIANT to distinguish what the conversation was detailing. However, after hanging up on this call he(MUNOZ) announces, "I know its here. Where is it ?" No one replies to his question, so he continues the search again. After a little while longer DETECTIVE ROBERT VINE pulls up to the scene across the street and ask "Whats that under the car ?" MUNOZ has searched the car doors wide open, trunk open, hood open, for nearly 45 minutes to one hour finding nothing, makes a phone call and claims I know its here, now another DETECTIVE arrives and the drugs appear under the car, on the passengers side where AFFIANT has never been through the duration of this search. AFFIANT was detained the full duration on the drivers side of the car, with his hands tie strapped behind him, and under full observation of numerous officers on the scene, and was at NO TIME ANYWHERE NEAR WHERE THE DRUGS WERE FOUND UNDER THE CAR. ALL THE SEARCH IS ON THE STATE'S EXHIBIT 3 (VIDEO), REVEALING MUNOZ VEHICLE DESCRIPTION, POSITION OF LAKISHA WILLIAMS AND TRACY HARRIS (PASSENGERS), AND NUMEROUS OFFICERS AT THE SCENE, WITH AFFIANT OUT OF THE FRAME OF RECORDING TO THE LEFT OF THE SCENE, AND AT "NO TIME DURING THE SEARCH WAS AFFIANT OBSERVED NEAR THE CAR ESPECIALLY, NEAR THE PASSENGERS SIDE REAR OF THE CAR."

AFFIANT AND PASSENGERS upon the officers find of the drugs at the rear passengers side of the car, were taken to the police stattion. PASSENGERS WERE QUESTIONED and later released. AFFIANT was questioned and asked to sign a typed out confession by OFFICER SIMON RAY PORTER and DETECTIVE CESAR MUNOZ. AFFIANT DECLINED TO SIGN CONFESSION and was arrested for "POSSESSION WITH INTENT TO DELIVER, COCAINE," without ANY CITATION OR TRAFFIC TICKET FOR "ANY TRAFFIC VIOLATION."

AFFIANT was appointed TRIAL ATTORNEY SAM W. RUSSELL and shortly after bonded out of jail. A short time after bonding out of jail AFFIANT went to talk with appointed attorney in his office in MOUNT PLEASANT. During this visit AFFIANT was informed of DISCOVERY ITEMS, such as DETECTIVE CESAR MUNOZ'S POLICE REPORT AND THE POLICE VIDEO THE STATE INTRODUCED AS STATE'S EXHIBIT 3. ATTORNEY RUSSELL showed the video to the AFFIANT then read DETECTIVE CESAR MUNOZ'S POLICE REPORT which specifically stated MUNOZ HAD BEEN WAITING FOR 2 DAYS FOR AFFIANT, when this AFFIANT heard this he ask, "Let me read the report," and attorney complied. The next QUESTION WAS TO ATTORNEY, "IF HE HAD BEEN WAITING 2 DAYS WHY DIDN'T HE GET A SEARCH WARRANT ?" Attorney agreed this was a VERY GOOD QUESTION. This question and the observation that AFFIANT is CLEARLY NOWHERE IN VIEW OF THE VEHICLE BEING SEARCHED, LET ALONE NOWHERE NEAR THE PASSENGERS SIDE REAR OF THE CAR WHERE THE DRUGS WERE FOUND, AND NO PROOF THAT A TRAFFIC VIOLATION HAD BEEN COMMITTED, NO CITATION, TICKET OR VIDEO, NOR WAS ANY PRESERVATION OF ASSUMED PARAPHERNALIA ASSUMEDLY OBSERVED AT THE SCENE TO CLAIM PROBABLE CAUSE TO JUSTIFY SEARCH, was the reasoning to pursue a trial for an unlawful arrest, search and seizure, ATTORNEY AGREED.

Furthermore, while AFFIANT does consider LAKISHA WILLIAMS his girlfriend and does stay at HER RESIDENCE from time to time AT 511 MARGARET DRIVE, MOUNT PLEASANT, TEXAS, AFFAINT'S RESIDENCE IS LOCATED AT 1006 EAST FIRST STREET, MOUNT PLEASANT, TEXAS as DRIVER'S LICENSE NO. 24796126 will confirm, as well as numerous persons will attest.

AFFIANT asserts, from the repeated structuring of numerous answers to the questions concerning and in reference to, street configuration, assumed traffic violation and need for turn signal, as recalled seemed to be preparatory in nature, as if nothing more than a half truth prepared for specific questions. It was revealed throughout the record MUNOZ was less than truthful in his answers and credibility is clearly in question when their was an investigation, indictment, arrest, and conviction for drug charges while AFFIANT'S trial, conviction, appeal, etc. are still in process. Further the testimony of OFFICER SIMON RAY PORTER is clearly in question when his investigation, indictment, arrest, and conviction for felony perjury were revealed.

AFFIANT asserts at the SUPPRESSION HEARING the statement of this AFFIANT was not signed by the AFFIANT, just as it was revealed that the statements of LAKISHA WILLIAMS and TRACY HARRIS had been FORGED WITH SIGNATURES COMPARED BY THE JUDGE **DID NOT MATCH**, AND WERE NOT ALLOWED TO BE ADMITTED AS EVIDENCE. **STATE'S EXHIBIT 1 THE TYPED STATEMENT WAS NOT SIGNED NOR GIVEN BY THIS AFFIANT.**

AFFIANT asserts as recalled, at trial, the jury was not clear as to the traffic stop during deliberation and asked to see the video of the traffic stop, court took a recess. After some time had passed AFFIANT and members of the family decided to go back into the court room. This attempt was obstructed by a balliff stating we were not allowed in yet. A few moments later we were allowed to go into the court room and as we entered observed MUNOZ exiting the jury room. When balliff was questioned about this observation he stated MUNOZ had to show the jurors how to operate the LAP TOP. AFFIANT complained that MUNOZ was not to be allowed in there with the juror's, to no avail, with ATTORNEY SAM W. RUSSELL , addressing this very issue with DISTRICT ATTORNEY CHARLES C. BAILEY, stating "THIS IS NOT TO BE HAPPENING," yet it went no further than the addressal. **NO DVD WAS EVER ENTERED AS STATE'S EVIDENCE OF A TRAFFIC STOP, SO WHAT WAS MUNOZ DOING ?**

With all these irregularities and improprieties AFFIANT was eventually convicted, sentenced, and subjected to confinement in the TDCJ-ID.

AFFIANT hired APPELLATE ATTORNEY L. CHARLES van CLEEF, contractually to see to the APPEAL PROCESS THROUGH ITS ENTIRETY. AFFIANT'S BRIEF was filed at an uncertain date with submission to CHARLES C. BAILEY on FRIDAY JULY 23, 2010.

AFFIANT has attached, inter alia, APPENDIX, TAB 3, OFFICER ARRESTED ON FELONY PERJURY CHARGE. Page 2 states, "According to the indictment, number CR17064, Porter is accused of issuing a false statement under oath in the jury trial of RUTH ANN SHARPER,... while

he talked with her at the TITUS COUNTY JAIL on DECEMBER 9, 2009," not quite 3 months after AFFIANT'S TRIAL by jury to which OFFICER SIMON RAY PORTER gave testimony as a primary witness. It is also an important fact as RUTH ANN SHARPER is the AUNT of this AFFIANT. CHARLES C. BAILEY, TITUS COUNTY DISTRICT ATTORNEY, was aware of the agency that made this investigation and as DISTRICT ATTORNEY was aware of any indictment proceedings before the GRAND JURY in the cases of DETECTIVE CESAR MUNOZ and OFFICER SIMON RAY PORTER.

AFOREMENTIONED in mind, AFFIANT asserts that the filing of APPELLEE'S BRIEF on ORIGINAL APPEAL was constructed, having full knowledge of both DETECTIVE CESAR MUNOZ'S and OFFICER SIMON RAY PORTER'S questionable reliability, trustworthiness, and ethical procedures, by the same DISTRICT ATTORNEY'S OFFICE who was to recuse themselves as a prejudice toward AFFIANT was established in and through the officers' testimonies for a TRAFFIC VIOLATION, NEVER COMMITTED AND/OR ESTABLISHED AS COMMITTING, WITH NO TRAFFIC TICKET, CITATION, OR VIDEO TO ESTABLISH TRAFFIC VIOLATION FOR A LAWFUL TRAFFIC STOP TO MAKE A LAWFUL SEARCH AND SEIZURE. APPELLEE'S ORIGINAL BRIEF was FAXED to HIRED APPELLATE ATTORNEY CHARLES van CLEEF, AUGUST 24 2010, and, filed and received in THE SIXTH COURT OF APPEALS, at TEXARKANA, AUGUST 26, 2010, while OFFICER SIMON RAY PORTER, THE OFFICER ARRESTED ON FELONY PERJURY CHARGE, was POSTED IN THE TRIBUNE PAPER, AUGUST 24, 2010.

In the APPEAL BRIEFS, THE APPELLEE'S and THE APPELLANT'S, there are many discrepancies used in a deceptive manner. The APPELLEE for instance says MUNOZ attempted a traffic stop by turning on his lights and activated his siren. APPELLANT'S BRIEF however states MUNOZ used his personal vehicle, which coincides with the STATE'S EXHIBIT 3, THE DVD. This instance is further relied upon in the SIXTH COURT OF APPEALS ORIGINAL MEMORANDUM OPINION as MUNOZ activated his overhead lights which is clearly not true. NINTH STREET and MARGARET DRIVE are labeled and confirmed as an intersection which is in complete opposition to the CITY OF MOUNT PLEASANT, TEXAS, CODE OF ORDINANCES as there is NO CONFLICTING VEHICLE TRAFFIC AT **THIS CURVE FOLLOWING THE DIRECT COURSE OF THE ROADWAY.**

FURTHERMORE, THE SIXTH COURT OF APPEALS abated the case to the TRIAL COURT TO ENTER A WRITTEN FINDINGS OF FACT AND CONCLUSION OF LAW. This AFFAINT had claimed that the TRIAL COURT had erred by not making these findings with regard to AFFIANT'S alleged confessions, especially the ASSUMED WRITTEN CONFESSION (TYPED AND FORGED NAME FOR AFFIANT'S SIGNATURE) as AFFIANT had made NO WRITTEN STATEMENT NOR SIGNED SUCH. This was a similar situation that had occurred with LAKISHA WILLIAMS and TRACY HARRIS were the STATE, DISTRICT ATTORNEY, had attempted to introduce typed statements of assumed confessions where the trial judge through out because the personal signatures did not match. HOWEVER, if the TRAFFIC STOP WAS UNLAWFUL THE STATEMENTS WERE INADMISSABLE. There was, on abated remand, only one finding relevant to the TRAFFIC STOP that stated

8

the TRIAL COURT had found on AUGUST 25, 2008, AFFIANT was stopped by MOUNT PLEASANT POLICE DEPARTMENT officers for a TRAFFIC VIOLATION. NO SPECIFIC FINDINGS OF FACT RELATING TO AFFIANT'S USE OF HIS TURN SIGNAL OR THE CHARACTER OF THE ROADWAY. NOR DID THE COURT MAKE A CREDIBILITY DETERMINATION AS TO MUNOZ'S TESTIMONY. MOREOVER, THERE WAS NO SPECIFIC CONCLUSION OF LAW RELATING TO THE UNDERLYING QUESTION OF WHETHER MUNOZ HAD THE NECESSARY REASONABLE SUSPICION TO STOP AFFIANT FOR A TRAFFIC VIOLATION. TO THESE ISSUES THE COURT OF CRIMINAL APPEALS WAS IN AGREEMENT, INTER ALIA, AND **REMANDED ON AFFIANT'S FIRST POINT OF ERROR,** SEPTEMBER 19, 2012, AND WAS NOT A **MOOT ISSUE** as ruled in the SIXTH COURT OF APPEALS.

THE SIXTH COURT OF APPEALS, in ORIGINAL OPINION, made numerous mischaracterizations such as: MUNOZ ACTIVATED HIS OVERHEAD LIGHTS, FOUND RESIDUAL AMOUNTS OF MARIJUANA AND A HOLLOWED OUT CIGAR, ROBINSON CLAIMED POSSESSION OF THE DRUG, SIGNED A **WRITTEN CONFESSION,** USED A TEXAS TRANSPORTATION CODE TO DETERMINE AN ASSUMED TRAFFIC VIOLATION OF A MUNICIPAL ORDINANCE AND TO CHARACTERIZE THE MEANING OF AN **INTERSECTION** WHEN THE ORDINANCE IS TO BE THE DETERMINING FACTOR FOR CITY VIOLATIONS. As was revealed in STATE'S EXHIBIT 3 the DVD / VIDEO. MUNOZ has NO OVERHEAD LIGHTS; EVIDENCE NOR TESTIMONY ever prove A FINDING OF MARIJUANA OR HOLLOWED OUT CIGAR, HEARSAY ONLY; AFFIANT, as was PROVEN BY MUNOZ from the DVD and TESTIMONY OF MUNOZ, DID NOT CLAIM POSSESSION, HOWEVER, A PASSENGER DID; AND, WITHIN the meaning of MOUNT PLEASANT, CITY ORDINANCE, NINTH STREET FROM **THE MODE OF TRAVEL AFFIANT WAS INCURRING AT THE CHANGE OF THE NAME TO MARGARET DRIVE "DOES NOT COME INTO CONFLICT WITH ANY VEHICLES TRAVELING UPON THE STREET, IT'S MERELY A CURVE IN THE STREET WITH NO NEED OF A TURN SIGNAL, NOR SHOULD IT BE CONSIDERED AN INTERSECTION,"** under MOUNT PLEASANT, TEXAS, CODE OF ORDINANCE, GENERAL PROVISIONS § 70.01 DEFINITIONS, at INTERSECTION. Appendix, TAB 1. The "Y" "y" theory is an issue too, as revealed in attached documents. FURTHER, the APPEAL was from the 76th JUDICIAL DISTRICT COURT, **NOT THE 276th.** HOWEVER, THIS COURT DID REVERSE AND REMAND TO TRIAL COURT. This is but a few issues from the SIXTH COURT OF APPEALS that reveals their reluctance to use the record of the TRIAL but tend to rely upon the presentation of the, in this case, DISTRICT ATTORNEY'S NARATIVE AS FACTS. See the ORIGINAL SIXTH COURT OF APPEALS OPINION, APPELLEE'S BRIEF, and AFFIANT'S ORIGINAL BRIEF for confirmation and compare to the transcripts.

The SIXTH COURT OF APPEALS did reverse and remand for further proceedings, decided JANUARY 13, 2011.

The TITUS COUNTY DISTRICT ATTORNEY'S OFFICE did not file a MOTION FOR REHEARING, nor did this AFFIANT. However, the STATE PROSECUTING ATTORNEY, LISA C. McMINN, through ASSISTANT STATE'S ATTORNEY of AUSTIN, TEXAS, decided to file a PETITION FOR DISCRETIONARY REVIEW (PDR) that was due on FEBRUARY 14, 2011 and NOT FILED IN THE SIXTH COURT OF APPEALS until FEBRUARY 22, 2011, and COURT OF CRIMINAL APPEALS MAY 03, 2011.

9

AFFIANT was never made aware of this PDR FILING although the CONTRACTUALLY HIRED ATTORNEY, CHARLES van CLEEF had been notified, assumedly, by U.S. Mail, in accordance with the CERTIFICATE OF SERVICE found attached to said PDR,on FEBRUARY 14, 2011, same day due to be filed.

The STATE'S ATTORNEY admits it does not have access to the record at that time and the statement of facts is paraphrased from the COURT OF APPEALS' rendition of the facts and the STATE'S BRIEF to that court. Still not using the record for facts that reveal MUNOZ'S CAR CLEARLY HAS NO LIGHTS,AND QUESTIONABLE SIREN, as STATE'S EXHIBIT 3, the DVD clearly shows. Furthermore, AFFIANT questions any facts from the PDR as the STATEMENT OF PROCEDURAL HISTORY reveals NO. 01-09-00134-CR, when in fact the number is NO. 06-09-00225-CR, ROBINSON v STATE. The STATE'S ATTORNEY reveals OFFICER MUNOZ at trial agreed that the streets in question do "MERGE" and that there are no traffic signs of any kind "AT THE INTERSECTION," this is probably because there is "NO INTERSECTION." The point to be drawn is MUNOZ WAS LESS THAT TRUTHFUL THROUGHOUT THE ENTIRE TRIAL AND SUPPRESSION HEARING, and this should be cause for concern considering his ARREST AND CONVICTION, ALONG WITH HIS PARTNER, OFFICER SIMON RAY PORTER, **BOTH ARRESTING OFFICER'S IN AFFIANT'S CASE,** HAVE BEEN ARRESTED ON FELONY DRUG AND PERJURY CHARGES WITH THE INVESTIGATION TO SAID CHARGES ESTABLISHED DURING THIS AFFIANT'S ARREST, TRIAL, CONVICTION, APPEAL, THE ENTIRE PROCESS OF TIME, ESPECIALLY THE ARREST OF SIMON RAY PORTER AND INDICTMENT **2 DAYS PRIOR TO APPELLEE'S ORIGINAL BRIEF BEING FILED.** PORTER ARREST, AUGUST 24, 2010, APPELLEE'S ORIGINAL BRIEF, AUGUST 26, 2010, filed in SIXTH COURT OF APPEALS. AUGUST 24, 2010, was a Tuesday and on that morning a telephone interview was established with CHARLES C. BAILEY, TITUS COUNTY DISTRICT ATTORNEY, through the TRIBUNE NEWS PAPER in said interview BAILEY declined to release the name of the agency who investigated the charge against SIMON RAY PORTER, an arresting testifying officer in AFFIANT'S case.

With the reverse and remand to the TRIAL COURT, some time in JULY OR AUGUST 2011, unbeknown to this AFFIANT at said time and without hearing or notice, CONTRACTUALLY HIRED ATTORNEY, CHARLES van CLEEF, was allowed to withdraw to retrieve his IOLTA ACCOUNT without filing a response to the STATE FILED PDR AND/OR NOTIFICATION OF SAID FILING BY THE STATE, OR THE TRIAL COURT ALLOWING WITHDRAWAL FROM CASE. This ATTORNEY WAS CONTRACTUALLY OBLIGATED TO CONTINUE THE APPEAL PROCESS, TO INCLUDE THIS PDR RESPONSE, AND AS HIRED FOR SUCH A MATTER THE TRIAL COURT ABUSED ITS DISCRETION TO RELEASE HIRED ATTORNEY WITHOUT A HEARING AND/ AFFIANT PRESENT TO ADDRESS SUCH ISSUES, THEREBY DENYING THE DUE PROCESS FOR SUCH A MATTER. FURTHERMORE, it can't be said HIRED ATTORNEY was released before notice was given on PDR as said ATTORNEY filed, and the TRIAL COURT accepted the MOTION FOR APPEAL BOND. At said BOND HEARING was when AFFIANT was made aware that the TRIAL COURT had released HIRED ATTORNEY, stating one was needed before said release on bond. AFFIANT made the TRIAL COURT aware that unable to HIRE ANOTHER ATTORNEY, due to bond money spent for release, the COURT APPOINTED CHARLES MAC COBB.

The APPOINTMENT OF CHARLES MAC COBB, and release on APPEAL BOND, was sometime in SEPTEMBER / OCTOBER 2011.

The COURT OF CRIMINAL APPEALS clearly sees the issues of the matters involved in the questioned facts addressed and that the TRIAL COURT should have reconsidered its original ruling on AFFIANT'S MOTION TO SUPPRESS IN LIGHT OF THE LATER TESTIMONY at both the MOTION TO SUPPRESS HEARING AND AT TRIAL - JUST AS AFFIANT REQUESTED THE TRIAL COURT TO DO DURING THE JURY CHARGE CONFERENCE. Furthermore, the COURT OF APPEALS was not required to defer to **MUNOZ'S OPINION** with respect to the legal significance of historical facts, as the COURT OF CRIMINAL APPEALS **OBSERVED FROM THE RECORD.** The COURT OF CRIMINAL APPEALS thought it appropriate to remand the cause to the COURT OF APPEALS FOR CONSIDERATION OF THE AFFIANT'S FIRST POINT OF ERROR AND GUIDED THE COURT OF APPEALS TO ARTICLE 38.23 (a), that "no evidence obtained by an officer...in violation of any provision of the CONSTITUTION or laws...shall be admitted against the accused" at trial, and MAHAFFEY II, 364 SW 3d 908 (Tex. Crim. App. 2012), DELIVERED AND PUBLISHED SEPTEMBER 19, 2012.

However, the COURT OF CRIMINAL APPEALS is too indoctrinated with the misrepresentations by the COURT OF APPEALS AND DISTRICT ATTORNEY / APPELLEE particularly the portion of the traffic stop where "MUNOZ WAS TO HAVE ACTIVATED HIS OVERHEAD LIGHTS TO INITIATE A TRAFFIC STOP," which clearly could not have happened as STATE'S EXHIBIT 3 the DVD reveals there are **NO OVERHEAD LIGHTS ON MUNOZ'S CAR IN SAID DVD.** Furthermore, upon careful examination of said DVD one will notice a difference in the configuration and shape of the drugs observed under the car, on the DVD, and the actual drugs offered into evidence at trial. With the officers of arrest DETECTIVE CESAR MUNOZ and OFFICER SIMON RAY PORTER, being investigated, charged, and convicted of both felony perjury and /or felony drug charges, as key witnesses for the state while the state has been aware of said investigation, indictment, arrests, and conviction, one might question the full intent behind this farce of a trial and conviction.

Which brings us to the DISTRICT ATTORNEY / APPELLEE, after the STATE PROSECUTING ATTORNEY OFFICE HAD BECOME THE ATTORNEY OF RECORD IN ITS FILING OF THE PDR, WHICH IF AFFIANT WAS TO ATTEMPT SUCH A MOVE IT WOULD BE **CALLED HYBRID REPRESENTATION,** NONETHELESS DAVID COLLEY, who failed to even personally sign off on the then submitted **APPELLEE'S SUPPLEMENTAL BRIEF ON REMAND,** to which APPOINTED ATTORNEY OF RECORD CHARLES MAC COBB on NOVEMBER 19, 2012 was served with a copy via HAND DELIVERY, and still failed to PURSUE ANY FORM OF REBUTTAL, **SUCH AS THE "NO OBJECTION" THE STATE RELIES UPON FOR THE COURT OF APPEALS TO RULE ON, WITHOUT INVESTIGATION BY THE COURT OF APPEALS INTO THE RECORD, IS A "NO OBJECTION TO TESTIMONY REFERENCING THE CHAIN OF CUSTODY, PARTICULARLY 'THE ENVELOPE' AS STATES EXHIBIT 2,"** AS THE APPELLANT'S BRIEF (ORIGINAL) REVEALS STATE WAS ALLOWED TO PLACE THE ALLEGED WRITTEN STATEMENT... AND EVIDENCEDESPITE DEFENSE COUNSEL'S **OBJECTION (HEARSAY)** at RR V 3, p 23-25. The **"NO OBJECTION" THE STATE IS**

11

ATTEMPTING TO ESTABLISH FOR "THE STATE OFFERED THE CONTROLLED SUBSTANCE AS 'STATE'S EXHIBIT 2,'" when in fact at this point in the trial RR V 3, P 105 - 112, was the TESTIMONY OF DETECTIVE RAY YOKEL BAGGING AND DELIVERYING "THE ENVELOPE, STATE'S EXHIBIT 2" TO THE TEXAS DEPT. OF PUBLIC SAFETY WHERE KAREN SHUMATE "TESTIFIES TO THE ACCEPTANCE OF STATE'S EXHIBIT 2 (THE ENVELOPE) AND THE PROCEDURES OF EXAMINING THE PROPER SEALING LABELS, THE OPENING OF STATE'S EXHIBIT 2 (THE ENVELOPE), THE NATURE OF THE CONTENTS FOUND INSIDE STATE'S EXHIBIT 2 (THE ENVELOPE), THE WEIGHT OF THE CONTENTS INSIDE STATE'S EXHIBIT 2 (THE ENVELOPE), AND THE ENVELOPES (STATE'S EXHIBIT 2) RESEALING PROCEDURE FROM HER LAB TO THE PRESENTATION OF STATE'S EXHIBIT 2 (THE ENVELOPE) TO THE COURT ROOM," A CHAIN OF CUSTODY HEARING OF PROTOCOL.

THEREFORE THE RULING OF THE SIXTH COURT OF APPEALS IS IN ERROR "THAT AFFAINT FAILED TO PRESERVE FOR APPEAL THE ISSUE OF WHETHER THE CONTRABAND SEIZED WAS ADMISSABLE.."

THE STATE HAS INTENTIONALLY, WILLFULLY, AND MALICIOUSLY LEAD THE APPEAL COURT TO AN IMPRESSION THAT AT THE POINT CLAIMED IN THIS TRIAL THE "STATE'S EXHIBIT 2 (THE ENVELOPE) WAS THE CONTROLLED SUBSTANCE (AT RR V 3, P 105 - 112) WHEN IN FACT THE 'CONTROLLED SUBSTANCE (EVIDENCE)' WAS OFFERED AT THE BEGINNING OF TRIAL FOR WHICH TRIAL ATTORNEY OBJECTED TO BOTH THE EVIDENCE (THE CONTROLLED SUBSTANCE) AND THE ALLEGED WRITTEN STATEMENT (AT RR V 3, P 23 - 25, compare to above, 82 - 85 pages later)." AFFIANT'S HIRED APPELLATE ATTORNEY IN HIS BRIEF WRITES THAT "THE ENVELOPE IN WHICH THE SUSPECTED COCAINE WAS PLACED (STATE'S EXHIBIT 2) AND A DVD (STATE'S EXHIBIT 3) WERE ALSO ADMITTED "WITHOUT OBJECTION," WHICH LEAVES THE QUESTION "WHAT WAS STATE'S EXHIBIT 1 ?"

In conclusion, AFFIANT filed an 11.07 APPLICATION FOR WRIT OF HABEAS CORPUS, the STATE REFUSED TO ANSWER AND THE TRIAL COURT REFUSED TO ANSWER, then they forwarded the APPLICATION TO THE COURT OF CRIMINAL APPEALS for which they DENIED WITHOUT WRITTEN ORDER, with AFFIANT MAKING THE PARTICULAR CLAIM WHICH IF AS STATE HAS STATED TRIAL ATTORNEY STATED "NO OBJECTION" TO THE EVIDENCE BEING ADMITTED AT TRIAL AND NOW AS THE COURT OF APPEALS HAS CLAIMED BY DOING SO HAS FAILED TO PRESERVE ERROR FOR REVIEW, AFFIANT HAS BEEN DENIED EFFECTIVE ASSISTANCE OF COUNSEL AS PROVEN BY THE STATE AND THE COURT OF APPEALS. THEREFORE, THE STATE AND THE COURT OF APPEALS CAN'T HAVE IT BOTH WAYS AND EITHER WAY AFFIANT IS ENTITLED TO REVERSE AND REMAND FOR NEW TRIAL AND/OR IN THE ALTERNATIVE ACQUITTAL AS NO EVIDENCE WAS EVER FOUND IN THE CARE, CUSTODY, AND CONTROL OF THIS AFFIANT,AS TO THE CRIME AS CLAIMED,IS TO HAVE BEEN CONSIDERED ACTUALLY INNOCENT.

AFFIANT HAS READ AND UNDERSTANDS THE FACTS CLAIMED HEREIN AS TYPED, AND NOW REQUEST THIS ATTORNEY GENERAL OFFICE TO INVESTIGATE THE INFORMALITIES RENDERED FOR CONSPIRACY CLAIMED FROM THIS AFFIDAVIT AND ATTACHED MANDAMUS WITH APPENDIXES LISTED AS TAB(S) 1 - 3, with CERTIFICATE OF SERVICE and UNSWORN DECLARATION.
FURTHER AFFIANT SAYETH NOT.

_Timothy Robinson #163331l_
TIMOTHY LEE ROBINSON #1633311

THIS MY NEW ADDRESS: TIMOTHY LEE ROBINSON
TDCJ # 1633311, E. GROSSBRENNER UNIT
5100 S. F.M. 1329 SAN DIEGO, TX 78384
THANK YOU...

IF YALL HAVE ANYTHING TO MAIL ME MAIL IT
TO THIS ADDRESS PLEASE. I SENT ONE TO YALL
AND ONE TO TITUS COUNTY ALSO.

**RECEIVED IN**
COURT OF CRIMINAL APPEALS

MAR 17 2015

Abel Acosta, Clerk